ROBYN FASS WANG (SBN 194006)
robynfasswang@gmail.com
LAW OFFICES OF ROBYN FASS WANG
1442A Walnut Street #229
Berkeley, California 94709
Telephone:  510.637.9349

Attorney for Plaintiff
JACOB PAYNE

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### MERCED DIVISION

| | |
|---|---|
| JACOB PAYNE,<br><br>                   Plaintiff,<br><br>          v.<br><br>MERCED COUNTY PUBLIC DEFENDER'S OFFICE, a public entity, MICHAEL PRO, an individual, ERIC DUMARS, an individual, DAVID ELGIN, an individual, VINCENT ANDRADE, an individual, ANTHONY GREEN, an individual, MERCED COUNTY BOARD OF SUPERVISORS, a public entity, and COUNTY OF MERCED, a public entity.<br><br>                   Defendants. | Case No. 22-78<br><br>**COMPLAINT FOR DAMAGES**<br><br>**CIVIL RIGHTS VIOLATIONS PURSUANT TO 42 U.S.C. § 1983, *ET SEQ.***<br><br>**1.  DELIBERATE INDIFFERENCE TO CONSTITUTIONAL VIOLATIONS**<br><br>**2.  MUNICIPAL LIABILITY FOR CONSTITUTIONAL VIOLATIONS**<br><br>**3.  CONSPIRACY TO COMMIT CONSTITUTIONAL VIOLATIONS**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff Jacob Payne, who complains, avers, and alleges as follows:

**INTRODUCTION**

1.      Jacob Payne always believed a jury would see the truth: he is not a "sexually violent predator." That is why, for more than eleven years, while he was held without a trial on a petition for civil commitment under California Welfare and Institutions Code section 6600 *et. seq.*, he demanded that his court-appointed Alternate Public Defender bring him to trial. His attorney refused, or did not bother, in violation of his right to due process under the Fourteenth Amendment of the United States Constitution. And during this period, despite repeated opportunities, no other state actor came to his aid: the Superior Court repeatedly continued his case for more than a decade without finding good cause and the prosecutors responsible for his case were apparently content that Mr. Payne was detained, with or without a proper legal determination that he met the criteria for civil commitment.

2.      In 2007, the Merced County Superior Court detained Mr. Payne on a petition alleging Mr. Payne qualified as a sexually violent predator ("SVP") per California Welfare and Institutions Code section 6600 *et. seq.* The court appointed Merced County's Alternate Public Defender, Merced Defense Associates.

3.      Over the next eleven years, Mr. Payne's Alternate Public Defender did only one thing, but he did it twice: he represented Mr. Payne at a probable cause hearing, and then at a second probable cause hearing after the first probable cause finding was invalidated. The Alternate Public Defender allowed the court to take two years to issue a ruling on the second probable cause hearing while Mr. Payne continued to suffer, inexplicably, in custody.

4.      In eleven years, the Alternate Public Defender never even visited Mr. Payne at Coalinga State Hospital, where the state detained him in violation of his constitutional rights.

5.      In November 2018, when the Alternate Public Defender finally declared a conflict after 11 years of continuances, the court appointed Attorney Doug C. Foster. Mr. Foster set the matter for trial.

6.      On February 4, 2020, less than a year-and-a-half after Mr. Foster was appointed, a jury vindicated Mr. Payne as he said they would, finding the Petition was not true.

1

7.      Under California Welfare and Institutions Code Section 6600, *et seq.*, the Sexually Violent Predator Act (SVPA), "the state can civilly commit individuals found to be SVPs after they conclude their prison terms." *People v. DeCasas*, 54 Cal. App. 5th 785, 802 (2020) (citations omitted). The dual purposes of the SVPA "are to protect the public from dangerous felony offenders with mental disorders and to provide mental health treatment for their disorders." *People v. Superior Court (Vasquez)*, 27 Cal. App. 5th 36, 42 (2018), *reh'g den.* (Sept. 27, 2018), *rev. den.* (Dec. 19, 2018). If the trial court finds probable cause, an alleged SVP is entitled to

> a trial by jury, the assistance of counsel, the right to retain experts or professional persons to perform an examination on his or her behalf, and have access to all relevant medical and psychological records and reports. In the case of a person who is indigent, the court shall appoint counsel to assist him or her, and, upon the person's request, assist the person in obtaining an expert or professional person to perform an examination or participate in the trial on the person's behalf.

*Vasquez*, 27 Cal. App. at 42 (citing former § 6603, subd. (a)).[1] "A unanimous verdict shall be required in any jury trial." (citing former § 6603, subd. (d)). Proof at trial that a person is an SVP must be beyond a reasonable doubt." *Id.* (citing § 6604).

8.      The SVPA also requires a trial at a meaningful time. *People v. Litmon*, 162 Cal. App. 4th 383 (2008). Delays caused by the defense attorney are attributed to the state rather than to the respondent when there is a breakdown in the defense system. *See Vasquez*, 27 Cal. App. 5th at 56. California courts have found due process violations where the state was responsible for delays of three, five, and twelve years. *People v. Superior Court (Vasquez)*, 27 Cal. App. 5th at 56. *In re Terrance Butler*, 55 Cal. App. 5th 614 (2020); *People v. DeCasas*, 54 Cal. App. 5th 785 (2020).

9.      Mr. Payne was detained for more than thirteen years before he was released from detention—after being found not to be an SVP by a jury. Had a trial taken place earlier—even if Mr. Payne had been found to be an SVP and had been committed as such—he would have been entitled to petition the court for release every year thereafter. Cal. & Welf. & Inst. Code, §§ 6604,

---

[1] All statutory references are to California's Welfare and Institutions Code unless otherwise noted.

6604.9, 6608(a). However, because Mr. Payne never received the trial he repeatedly requested, he was never eligible to petition for his release.

10.     The Merced County Public Defender, their deputies, and the County of Merced and its agents, failed to carry out their statutory and ethical duties to Mr. Payne, in violation of his constitutional rights under 42 U.S.C. § 1983, *et seq.*. The present action ("Action") brings to light the complete systemic breakdown and failure of the Merced County Public Defender's Office, the County of Merced, the County of Merced Board of Supervisors, and the individually named defendants (collectively, the "Defendants") to carry out their statutory and ethical duties, and the injustice caused by these Defendants with respect to a large number of individuals who have been detained for decades without ever having their case adjudicated at trial as required by the United States Constitution.

11.     Mr. Payne is entitled to compensation for the more than 11 years of his life that he lost because of Defendants' violation of and deliberate indifference to his civil rights. Mr. Payne is also entitled to punitive damages to deter future similar conduct, and to ensure that other similarly situated public officials carry out their obligations under the Constitution of the United States.

12.     Only when Mr. Payne was appointed conflict counsel did he finally get the jury trial to which he was entitled and which he had demanded for 11 years.  That jury ultimately found the truth: that Mr. Payne was not an SVP.  However, justice delayed is justice denied, and the jury verdict does not erase more than a decade of unconstitutional detention. It is for that intentional delay that Mr. Payne seeks redress.

**JURISDICTION AND VENUE**

13.     This civil action alleges violations of the Fourteenth Amendment of the United States Constitution as protected by 42 United States Code (U.S.C.) §§ 1983, 1985, and 1988. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

14.     Venue is proper in this Court under 28 U.S.C. § 1391(b), because all incidents, events, and occurrences giving rise to this action occurred in the County of Merced, California.

**DIVISIONAL ASSIGNMENT**

15.     Venue is proper in this Court pursuant to Local Rule 120(d) because all incidents, events, and occurrences giving rise to this action occurred in the County of Merced, California.

**PARTIES**

**A.     Plaintiff**

16.     At all relevant times, Plaintiff Jacob Payne is and was a resident of Merced, California, although for a portion he was detained under a Petition pursuant to California Welfare and Institutions Code section 6600 *et. seq* at Coalinga State Hospital ("CSH") in Fresno County.

**B.     Defendants**

    **1.     Defendant Michael Pro**

17.     On information and belief, defendant Michael Pro was the Merced County Public Defender ("PD") until 2012. In his role as PD, he was vested by law with the responsibility of administering and supervising the representation of indigent defendants in Merced County at all stages of civil detention and criminal proceedings. On information and belief, at all times relevant to this Action, Michael Pro was a resident of the County of Merced.

18.     Michael Pro had a duty to ensure that competent and diligent counsel were available for indigent defendants if the PD had a conflict of interest and that Mr. Payne's case was timely tried.

19.     With respect to all alleged conduct taking place between 2007 and 2012, Michael Pro acted under the color of law and in the course and scope of his employment with Merced County. He was a high-ranking administrator and policymaker. At no point did he appear as counsel for Mr. Payne or otherwise represent him. His liability is based on his role as administrator of the Public Defender's office, as well as his acquiescence in the unconstitutional practices which resulted in Mr. Payne's harm and damages as alleged in this Action.

20.     As the Merced County Public Defender, Michael Pro:

        a.     Developed, adopted, ratified, implemented, modified, abolished, revoked, and rescinded customs, practices, procedures and policies of the Public Defender's Office;

b.  Developed and implemented training programs for deputy public defenders;

c.  Secured budget allocations for specific units, personnel needs, and cases within his office;

d.  Declared that the Public Defender's Office was unavailable and thereby directed the court to appoint the Alternate Defender or other conflict attorneys;

e.  Declared conflicts of interest; and

f.  Possessed the power to undertake all necessary measures to ensure that any public defender case would be brought to trial in a timely manner.

21.     Michael Pro monitored the civil commitment proceedings of Jacob Payne from 2007 until he retired as Public Defender in 2012. On information and belief, he had specific knowledge of the proceedings and was deliberately indifferent to Mr. Payne's prolonged detention and the resulting violation of his civil rights.

22.     Michael Pro is sued in his personal capacity as a supervisory and administrative employee for his own culpable action or inaction in the training, supervision and/or control of his subordinates. He is also sued in his personal capacity for his acquiescence in the constitutional deprivations and for the conduct that showed a reckless or callous indifference to Mr. Payne's rights. He acquiesced to and ratified his subordinates' practices and policies, which he knew or should have known would inflict a constitutional violation upon Mr. Payne and others similarly situated.

**2.     Defendant Eric Dumars**

23.     On information and belief, defendant Eric Dumars was the Merced County Public Defender in 2013, and Chief Deputy Public Defender in 2011. In his roles as Public Defender and Chief Deputy, he was vested by law with the responsibility of administering and supervising the representation of indigent defendants in Merced County at all stages of civil detention and criminal proceedings. On information and belief, at all times relevant to this Action, Eric Dumars was a resident of the County of Merced.

24.    Eric Dumars had a duty to ensure that competent and diligent counsel were available for indigent defendants if the PD had a conflict of interest and that Mr. Payne's case was timely tried.

25.    With respect to all alleged conduct taking place between about 2011-2013, Eric Dumars acted under the color of law and in the course and scope of his employment with Merced County. He was a high-ranking administrator and policymaker. At no point did he appear as counsel for Mr. Payne or otherwise represent him. His liability is based on his role as administrator of the Public Defender's office, as well as his acquiescence in the unconstitutional practices which resulted in Mr. Payne's harm and damages as alleged in this Action.

26.    As the Merced County Public Defender, Eric Dumars:

    a.    Developed, adopted, ratified, implemented, modified, abolished, revoked, and rescinded customs, practices, procedures and policies of the Public Defender's Office;

    b.    Developed and implemented training programs for deputy public defenders;

    c.    Secured budget allocations for specific units, personnel needs, and cases within his office;

    d.    Declared that the Public Defender's Office was unavailable and thereby directed the court to appoint the Alternate Defender or other conflict attorneys;

    e.    Declared conflicts of interest; and

    f.    Possessed the power to undertake all necessary measures to ensure that any public defender case would be brought to trial in a timely manner.

27.    Eric Dumars monitored the civil commitment proceedings of Jacob Payne until he retired as Public Defender in 2012. On information and belief, he had specific knowledge of the proceedings and was deliberately indifferent to Mr. Payne's prolonged detention and the resulting violation of his civil rights.

28.     Eric Dumars is sued in his personal capacity as a supervisory and administrative employee for his own culpable action or inaction in the training, supervision and/or control of his subordinates. He is also sued in his personal capacity for his acquiescence in the constitutional deprivations and for the conduct that showed a reckless or callous indifference to Mr. Payne's rights. He acquiesced to and ratified his subordinates' practices and policies, which he knew or should have known would inflict a constitutional violation upon Mr. Payne and others similarly situated.

### 3.     David Elgin

29.     On information and belief, defendant David Elgin was the Merced County Public Defender from 2014 to 2018. In his role as Public Defender, he was vested by law with the responsibility of administering and supervising the representation of indigent defendants in Merced County at all stages of civil detention and criminal proceedings. On information and belief, at all times relevant to this Action, David Elgin was a resident of the County of Merced.

30.     David Elgin had a duty to ensure that competent and diligent counsel were available for indigent defendants if the PD had a conflict of interest and that Mr. Payne's case was timely tried.

31.     With respect to all alleged conduct taking place between 2014 and 2018, David Elgin acted under the color of law and in the course and scope of his employment with Merced County. He was a high-ranking administrator and policymaker. At no point did he appear as counsel for Mr. Payne or otherwise represent him. His liability is based on his role as administrator of the Public Defender's office, as well as his acquiescence in the unconstitutional practices which resulted in Mr. Payne's harm and damages as alleged in this Action.

32.     As the Merced County Public Defender, David Elgin:

    a.  Developed, adopted, ratified, implemented, modified, abolished, revoked, and rescinded customs, practices, procedures and policies of the Public Defender's Office;

    b.  Developed and implemented training programs for deputy public defenders;

  c. Secured budget allocations for specific units, personnel needs, and cases within his office;

  d. Declared that the Public Defender's Office was unavailable and thereby directed the court to appoint the Alternate Defender or other conflict attorneys;

  e. Declared conflicts of interest; and

  f. Possessed the power to undertake all necessary measures to ensure that any public defender case would be brought to trial in a timely manner.

33. David Elgin monitored the civil commitment proceedings of Jacob Payne from 2014 until he retired as Public Defender in 2018. On information and belief, he had specific knowledge of the proceedings and was deliberately indifferent to Mr. Payne's prolonged detention and the resulting violation of his civil rights.

34. David Elgin is sued in his personal capacity as a supervisory and administrative employee for his own culpable action or inaction in the training, supervision and/or control of his subordinates. He is also sued in his personal capacity for his acquiescence in the constitutional deprivations and for the conduct that showed a reckless or callous indifference to Mr. Payne's rights. He acquiesced to and ratified his subordinates' practices and policies, which he knew or should have known would inflict a constitutional violation upon Mr. Payne and others similarly situated.

### 4. Defendant Vincent Andrade

35. On information and belief, defendant Vincent Andrade presently is and has been the Public Defender of Merced County since his appointment to that position in December 2019. In 2019 he was Interim Public Defender, and since at least 2010 he was Chief Deputy Public Defender. He is and was vested by law with the responsibility of administering and supervising the representation of indigent defendants in Merced County at all stages of civil detention and criminal proceedings. On information and belief, at all times relevant to this Action, Vincent Andrade was a resident of the County of Merced.

36.    Vincent Andrade had a duty to ensure that competent and diligent counsel were available for indigent defendants if the PD had a conflict of interest and that Mr. Payne's case was timely tried.

37.    With respect to all alleged conduct, Vincent Andrade acted under the color of law and in the course and scope of his employment with Merced County. He was and is a high-ranking administrator and policy maker. At no point did he appear as counsel for Mr. Payne or otherwise represent him. Mr. Andrade's' liability is based on his role as administrator of the Public Defender's office, as well as his acquiescence in the unconstitutional practices which resulted in Mr. Payne's harm and damages as alleged in this Action.

38.    As the Merced County Public Defender, Vincent Andrade:

   a.  Developed, adopted, ratified, implemented, modified, abolished, revoked, and rescinded customs, practices, procedures and policies of the Public Defender's Office;

   b.  Developed and implemented training programs for deputy public defenders;

   c.  Secured budget allocations for specific units, personnel needs, and cases within his office;

   d.  Declared that the Public Defender's Office was unavailable and thereby directed the court to appoint the Alternate Defender or other conflict attorneys;

   e.  Declared conflicts of interest; and

   f.  Possessed the power to undertake all necessary measures to ensure that any public defender case would be brought to trial in a timely manner.

39.    Vincent Andrade monitored the civil commitment proceedings of Jacob Payne until November 2019, when conflict counsel was appointed. On information and belief, he had specific knowledge of the proceedings and was deliberately indifferent to Mr. Payne's prolonged detention and the resulting violation of his civil rights.

40.     Vincent Andrade is sued in his personal capacity as a supervisory and
administrative official for his own culpable action or inaction in the training, supervision and/or
control of his subordinates. He is also sued in his personal capacity for his acquiescence in the
constitutional deprivations and for the conduct that showed a reckless or callous indifference to
Mr. Payne's rights. He acquiesced to and ratified his subordinates' practices and policies which
he knew or should have known would inflict a constitutional violation upon Mr. Payne and others
similarly situated.

### 5.     Defendant Anthony Green

41.     On information and belief, since 2018 Defendant Anthony Green served as Chief
Deputy Public Defender. Anthony Green was vested by law with the responsibility of
administering and supervising the representation of indigent defendants in Merced County at all
stages of civil detention and criminal proceedings. On information and belief, at all relevant
times, Anthony Green was a resident of Merced County.

42.     Anthony Green had a duty to ensure that competent and diligent counsel were
available for indigent defendants if the PD had a conflict of interest and that Mr. Payne's case
was timely tried.

43.     With respect to all alleged conduct, Anthony Green acted under the color of law
and in the course and scope of his employment with Merced County. Mr. Green acted as an
administrator of the Public Defender's Office. At no point did Mr. Green appear as counsel for
Mr. Payne in the underlying proceedings or otherwise represent Mr. Payne. Liability against this
defendant is based on his role as administrator as well as his acquiescence in unconstitutional
practices, which resulted in Mr. Payne's harm and damages as alleged in this Action.

44.     As Chief Deputy Public Defender, Anthony Green:

    a.   Developed, adopted, ratified, implemented, modified, abolished, revoked,
and rescinded customs, practices, procedures and policies of the Public
Defender's Office;

    b.   Developed and implemented training programs for deputy public
defenders;

  c. Secured budget allocations for specific units, personnel needs, and cases within his office;

  d. Declared that the Public Defender's Office was unavailable and thereby directed the court to appoint the Alternate Defender or other conflict attorneys;

  e. Declared conflicts of interest; and

  f. Possessed the power to undertake all necessary measures to ensure that any public defender case would be brought to trial in a timely manner.

45. Anthony Green monitored the civil commitment proceedings of Jacob Payne until November 2019, when conflict counsel was appointed. He had specific knowledge of the proceedings and was deliberately indifferent to Mr. Payne's prolonged detention and the resulting violation of his civil rights.

46. Anthony Green is sued in his personal capacity as a supervisory official for his own culpable action or inaction in the training, supervision, and/or control of his subordinates as well as for his indifference to the constitutional violations. He is also sued in his personal capacity for his acquiescence in the constitutional deprivations which this complaint alleges and for conduct carried out by him that showed a reckless or callous indifference to the rights of others, including Mr. Payne. Anthony Green's affirmative conduct, involves his acquiescence to and ratification of specific practices and policies carried out by his subordinates which he knew or should have known would inflict a constitutional violation upon Mr. Payne and others similarly situated.

### 6. Merced County Public Defender's Office

47. The mission of the Merced Public Defender's Office "is to provide effective advocacy for the accused. All of our clients are treated in a way that recognizes their fundamental dignity and humanity, qualities that survive all accusations and judgments."[2]

---

[2] Merced County Public Defender, https://www.co.Merced.ca.us/departments/public-defender, last visited Feb. 1, 2022.

48.     At all times mentioned herein, Defendant Merced County Public Defender's Office was a public entity, and subdivision of Merced County, duly organized and existing under and by virtue of the laws of the State of California and the Charter of Merced County, with the capacity to sue and be sued. The Merced County Public Defender's Office is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents, departments, subdivisions and units.

49.     Merced County Public Defender's Office had a duty to ensure that competent and diligent counsel were available for indigent defendants if the PD had a conflict of interest and that Mr. Payne's case was timely tried.

50.     "Individuals unable to obtain private counsel are daily appointed skilled and dedicated attorney's [sic] from our office."[3]

### 7.     Defendant Merced County Board of Supervisors 2007-2020

51.     The Merced Public Defender's Office is a Department of Merced County.[4]

52.     Merced County contracted with the Alternate Public Defender ("Alternate PD"), Merced Defense Associates ("MDA"), to provide legal defense to indigent civil commitment respondents in cases where the Merced Public Defender declared a conflict. Merced County was responsible for ensuring that the Alternate PD provided competent, diligent counsel to indigent defendants.

53.     The Merced County Board of Supervisors is the legislative and executive body of Merced County government with the capacity to sue and be sued. The duties of the Board of Supervisors of Merced County include appointing County officers and employees, except elected officials, and adopting an annual budget, administering contracts, and "exercise[ing] policy review and oversight of County programs." [5]

54.     With respect to all conduct alleged herein, the Board of Supervisors acted under the color of law.

---

[3] Id.

[4] Merced County, https://www.co.merced.ca.us/2346/Government, last visited February 1, 2022.

[5] Merced Board of Supervisors, https://www.co.merced.ca.us/61/Board-of-Supervisors, last visited February 1, 2022.

55.    Per its responsibilities to manage, supervise and administer the Public Defender's Office and its contract with the Alternate PD, the Board of Supervisors had the authority to:

    a.   ensure sufficient budget allocations to the PD and Alternate PD such that their caseload could be properly administered and their clients' cases could be diligently pursued;

    b.   instruct the PD and Alternate PD to declare that the PD or Alternate PD is "unavailable" or "conflicted" and thereby have a case assigned to the Alternate PD or to a private panel attorney;

    c.   ensure that the PD and Alternate PD did not declare a conflict where none existed;

    d.   ensure that competent and diligent Alternate PDs or private attorneys were available for indigent defendants if the PD or Alternate PD had an actual conflict; and

    e.   develop and implement specific training programs for all personnel in the Public Defender's Office.

56.    On information and belief, the Board of Supervisors received regular memoranda, emails, reports, budget requests, and other written correspondence and documents from members of the Merced Public Defender's Office and the Alternate PD regarding the management and operation of defense attorneys, including the status of the civil detention proceedings of Mr. Payne, and others similarly situated. The Board of Supervisors, as spelled out herein below, was deliberately indifferent to the violation of Mr. Payne and other similarly situated detainee's civil rights. As such, the Board of Supervisors was aware of or should have been aware of Mr. Payne's SVPA case, the long delay in getting his case to trial, and the unconstitutional customs and practices which caused the delays in getting Mr. Payne and other similarly situated detainees' case to trial.

57.    The affirmative conduct of the members of the Board of Supervisors who served during the period of Mr. Payne's detention from 2007 to 2020, as described herein below, includes its acquiescence to and ratification of specific conduct and policies of the Merced Public

1    Defender's Office and the Alternate PD, which this defendant knew, or should have known,

2    would inflict a constitutional violation upon Mr. Payne and other similarly situated persons.

3                    **8.    Defendant County of Merced**

4          58.    At all times mentioned herein, defendant County of Merced is and was a public

5    entity duly organized and existing under and by virtue of the laws of the State of California, with

6    the capacity to sue and be sued. Defendant County of Merced is responsible for the actions,

7    omissions, policies, procedures, practices and customs of its various agents, departments,

8    subdivisions and agencies.

9          59.    The Merced Public Defender's Office is a department of Merced County.[6]

10         60.    Merced County contracted with the Alternate PD to provide legal defense to

11   indigent civil commitment respondents in cases where the Merced Public Defender declared a

12   conflict and was responsible for ensuring that the Alternate PD or a private attorney provided

13   competent, diligent counsel to indigent defendants.Defendant County of Merced operates,

14   manages, directs and/or controls the Public Defender's Office, which is also a separate public

15   entity, and is responsible for ensuring that the PD or Alternate PD provides competent, diligent

16   counsel to indigent defendants.

17         61.    According to the California State Bar, indigent defense contracts between a county

18   and a contracted provider of indigent defense services "should not be based on any compensation

19   system that does not realistically assess the cost of providing competent representation." THE

20   STATE BAR OF CALIFORNIA GUIDELINES ON INDIGENT DEFENSE SERVICES DELIVERY SYSTEMS

21   (2006), p. 33. The size and characteristics of the pool of available attorneys should never "be

22   permitted to justify qualifications so minimal that quality representation is endangered," and in

23   counties in which there is a public defender and a contract/assigned conflict counsel system,

24   "resources of the public defender and the program can be shared by providing joint trainings to

25   the extent practicable. . . Program funding should be sufficient to provide training resources free

26   of charge to program attorneys." *See id.* at pp. 13-19. Merced County's Alternate PD, MDA,

27   failed to meet these standards.

28   ───────────────
     [6] Merced County, https://www.co.Merced.ca.us/home, last visited February 1, 2022.

62.    Per its responsibilities to manage, supervise and administer its contract with MDA, or any other Alternate PD, the County had the authority and duty to:

      a.  ensure that competent and diligent court-appointed alternate counsel were available for indigent defendants if the PD's Office had an actual conflict;

      b.  develop and implement specific training programs for all Alternate PD attorneys, including those with SVP classification credentials;

      c.  provide sufficient funding to those training programs;

      d.  instruct the Alternate PD to replace or reassign personnel within the program where complaints about attorney performance or caseloads arose;

      e.  instruct MDA or other Alternate PD to adhere to the State Bar guidelines for the provision of indigent legal defense services, specifically to monitor the caseloads of the SVP attorneys;

      f.  institute policies to ensure that SVP detainees were regularly brought to court for hearings, or to otherwise ensure that SVP detainees were in court or that they would appear by video conference;

      g.  ensure MDA attorneys did not waive SVP client/detainees' appearances at hearings without securing their authority to do so; and

      h.  order or otherwise undertake all necessary measures to ensure that any SVP case handled by MDA would be brought to trial in a timely manner.

63.    At all times relevant to the facts alleged herein, Defendant County of Merced was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its departments, subdivisions, employees, and contractors, including the PD's Office and the Alternate PD, MDA, complied with those guidelines and with the Constitution of the United States.

**CALIFORNIA'S SEXUALLY VIOLENT PREDATOR ACT:
HEALTH & WELFARE CODE SECTION 6600, *ET SEQ.***

64.    California Welfare and Institutions Code Section 6600, *et seq.*, the Sexually Violent Predator Act ("SVPA") "authorizes the involuntary civil commitment of a person who

has completed a prison term but is found to be a sexually violent predator ("SVP")." *E.g. State Dep't of State Hosps. V. Superior Court*, 61 Cal. 4th 339, 344 (2015). (All cites to code sections below are to Welfare and Institutions Code unless otherwise specified.) The dual purposes of the SVPA "are to protect the public from dangerous felony offenders with mental disorders and to provide mental health treatment for their disorders." *State Dep't*, 61 Cal. 4th at 344. "The statutory scheme establishes a multiple-level review for inmates who may be SVPs." *Id.* (footnotes omitted). Ultimately, if the requisite number of evaluators agree after a standardized assessment "'that [a] person has a diagnosed mental disorder so that he or He is likely to engage in acts of sexual violence without appropriate treatment and custody, the Director of Mental Health . . . forward[s] a request for a petition for commitment' to the designated counsel of the county in which the inmate was convicted." *Id.* at 345 (citing Former § 6601, subd. (d), now subd. (i)).

65.    Under Section 6601, subd. (i), each county's board of supervisors is required to designate either the district attorney or the county counsel to pursue SVPA civil commitment actions. In Merced County, the Board of Supervisors has designated the Office of the District Attorney. If the standard of the initial required assessment is met, amongst other things, the district attorney files a petition for commitment and the Superior Court orders the respondent held pending a PCH which shall commence within ten days. *Id.*; § 6601.5. The Superior Court then conducts a hearing to determine whether there is probable cause that the accused person is likely to be an SVP. § 6602.

66.    If the Superior Court finds there is no probable cause after a hearing per Section 6602, or if the trier of fact finds the petition is not proven beyond a reasonable doubt after a trial, the court dismisses the petition and orders its subject to be released. § 6604.

67.    "[I]f the court finds probable cause . . . the court orders a trial to determine whether the person is an SVP under Section 6600." *Reilly v. Superior Court*, 57 Cal. 4th 641, 647 (2013). Pending trial, the person can be detained at the State Hospital.  § 6602.5. "Though civil in nature, this trial contains a number of procedural safeguards commonly associated with criminal trials, including the alleged SVP's right to a jury trial, to assistance of counsel, and to a

1     unanimous jury finding that he or He is an SVP beyond a reasonable doubt before he or He may

2     be committed." *E.g.*, *Reilly*, 57 Cal. 4th at 647 (internal statutory citations omitted). Upon the

3     alleged SVP's request, appointed counsel shall help the person obtain an independent expert to

4     evaluate him or participate in his trial. § 6603(a).  However, while "[t]he constitutional

5     requirement of due process. . .  applies to SVPA commitment proceedings and requires a trial

6     within a meaningful time," the "SVPA does not specify a time within which a trial must be held

7     after the court makes a probable cause finding." *DeCasas*, 54 Cal. App. 5th 785 (2020) (citations

8     and internal quotation marks omitted).

9        68.     A person ultimately found by a jury trial to be an SVP is "committed for an

10    indeterminate term to the custody of [the State Department of State Hospitals (DSH)] for

11    appropriate treatment and confinement in a secure facility."  *Id.* Notably, only once a person is

12    civilly committed for an indeterminate amount of time pursuant to a jury trial are they entitled to

13    annual independent examinations "to assess whether the person is still likely to engage in

14    sexually violent criminal behavior if discharged."  *See State Dep't*, 61 Cal. 4th at 344 (citing

15    § 6605, subd. (a)). Additionally, even if the annual evaluation says the SVP is still likely to

16    commit a predatory violent sexual offense, the SVP can petition the court each year to order an

17    independent evaluation to challenge that finding. § 6608.

18                  **FACTUAL AND PROCEDURAL BACKGROUND**

19        69.     A jury found the SVPA Petition against Mr. Payne was not true on February 4,

20    2020. The Merced County Superior Court ordered DSH to release Mr. Payne, ending thirteen

21    years of unlawful pre-trial detention.

22        70.     On June 22, 1999, Mr. Payne admitted a charge of California Penal Code (PC)

23    section 290, failing to register as a sex offender, for a negotiated sentence of six years in prison.

24    He was not advised that his prison commitment or a subsequent parole violation would result in

25    screening under the SVPA.

26        71.     Leaving prison after a parole violation, Mr. Payne was screened and referred to the

27    DA, who on February 7, 2007, filed the Petition alleging Mr. Payne met the criteria of sexually

28

violent predator ("SVP") on the basis of an earlier conviction for PC section 288(a). The conviction occurred in 1992, when Mr. Payne was 19. Mr. Payne denied the Petition.

72.    The PD declared a conflict, and the court appointed the Alternate Public Defender, MDA, (Cindy Morse and Thomas Pfeiff, partners), to represent Mr. Payne. Merced County contracted with the Alternate PD to provide legal defense to indigent criminal defendants and respondents in civil commitment proceedings when the PD had a conflict.

73.    The court detained Mr. Payne pursuant to the SVPA. Attorney William Davis, appearing for the Alternate PD, waived time for the probable cause hearing ("PCH") and continued the case from time to time for five months. On July 13, 2007, Mr. Davis submitted the PCH on the state's written evaluations and other documents. Mr. Davis did not cross examine witnesses or object to hearsay contained in the evaluations.

74.    The court found probable cause. Mr. Payne was not advised of his right to a reasonably timely trial or the right to appear in court when his case was called. The court detained Mr. Payne, ordered him transported to CSH, and set a trial date for September 4, 2007.

75.    The court vacated the trial and continued the matter from time to time with no objections, no good cause requested, and no good cause shown. Periodically,  the court called the case for routine status conferences on the record. Mr. Davis waived Mr. Payne's appearance almost every time. Mr. Davis himself failed to appear on occasion.

76.    On information and belief, Defendant County, Board of Supervisors, Public Defender's Office, and individuals knew or should have known Mr. Payne did not agree to these continuances, and the continuances were not in his interest.

77.    On information and belief, the Alternate PD's contract was negotiated with consideration for the number of cases on which the court would appoint the Alternate PD. The prolonging of Mr. Payne's case contributed to the Alternate PD in maintaining an appearance of a greater number of cases.

78.    Judge Marc Garcia presided as the judicial officer at, at least, thirty-four status conferences. On at least twenty-two occasions Judge Garcia continued the case for another status conference with no good cause requested or shown. On one date, May 5, 2011, Judge Garcia

continued the case for a status conference, with the minute order stating, "Attorney Davis still awaiting confirmation of experts." On eleven separate dates, Judge Garcia set the case for probable cause hearing. No good cause was shown for continuing the probable cause hearing eleven times.

79.    During this period Judge Garcia, a former partner at the Alternate PD, was receiving monthly payments of $4,516 from the MDA's contract as the Merced County Alternate Defender. Neither Judge Garcia nor the Alternate PD disclosed Judge Garcia's financial interest in MDA to Mr. Payne.

80.    Mr. Payne called Mr. Davis by telephone and demanded a speedy trial many times. Some of these trial requests were noted on the record. In eleven years of representing Mr. Payne, his Alternate PD, William Davis, never visited him at Coalinga State Hospital, which is less than 100 miles from Merced.

81.    Although the case was pending, the court did not order the court reporter to preserve notes of the records of the appearances.  Consequently, the notes of some of the appearances have been destroyed, and transcripts cannot be prepared.

82.    In about 2012, the court ordered a new PCH under *In re Ronje*, 179 Cal.App.4th 509 (2009), which held that the protocol used in Mr. Payne's SVPA evaluations was invalid. Then, the court continued the new PCH from time to time—for four years.

83.    In 2015, the Commission of Judicial Performance initiated formal proceedings against Judge Garcia for violating the Judicial Code of Ethics for accepting payments from the Alternate PD and not disclosing them. Defendants did not notify Mr. Payne.

84.    The court heard the second PCH on September 15, 2016, nine years into Mr. Payne's detention. By this time, one of the state's evaluators, Dr. Sidhu, had found that Mr. Payne did not meet criteria for SVP. After concluding the evidence, but without issuing a ruling, with no objection by counsel and no good cause, the court continued the matter from time to time for two more years.

85.    In 2017, Merced County did not renew MDA's contract and offered the Alternate Defender contract to Ciummo and Associates. Neither Defendants nor MDA notified Mr. Payne.

86.    With no explanation for the intervening two years without a decision on the PCH, the court ruled on July 21, 2018, finding probable cause.

87.    On November 27, 2018, Mr. Davis declared a conflict of interest, and the court appointed Contract Public Defender Douglas C. Foster. Mr. Foster brought a motion to dismiss, alleging the delay of eleven years from petition to probable cause finding violated Mr. Payne's right to due process. The court denied the motion.

88.    But the the court did set the matter for trial on Mr. Foster's request. On February 4, 2020, a jury returned the verdict. The Petition per Welf. & Inst. 6600 was not true. Mr. Payne is not an SVP.

**A.    Mr. Payne Was, Unfortunately, the Rule, Not the Exception.**

89.    A September 2020 report by the California Sex Offender Management Board (CASOMB), titled Sexually Violent Predator Project: Introduction & Duration of SVP Detainee Status notes that "[t]he total number of individuals ever committed as SVPs represents less than 1% of all individuals registered as sexual offenders in California." Yet "California's SVP program has more inpatients than any of the 21 states with 'Sexually Violent Predator' laws."[7]  The report goes on to state:

> The current census of nearly 1,000 total SVPs represents roughly 15% of the national total and is comprised of detainee (WIC6602, Probable Cause) and fully committed (WIC6604) categories. ***California has the highest number of detainees nationally, representing nearly half its total SVP population***. Not just the number of detainees is exceptional, but also the duration of detainee status is much longer than that of other states with SVP programs.[8]

90.    Perhaps as a result, the California Sex Offender Management Board's Year-End Report to Legislature 2020 recommends a number of changes to the implementation of California's SVP law and states:

> California's number and duration of detainees make its Sexually Violent Predator (SVP) law implementation highly atypical

---

[7] CALIFORNIA SEX OFFENDER MANAGEMENT BOARD, SEXUALLY VIOLENT PREDATOR PROJECT: INTRODUCTION & DURATION OF SVP DETAINEE STATUS, at 1, Sept. 2020, *available at* CASOMB_SVP_Intro_and_Detainee_Status_FINAL_2021-05 (citations omitted, emphasis added).

[8] *Id.* (emphasis added).

COMPLAINT; CASE NO. 22-78

compared to other states with similar laws, and severely compromises its efficiency and efficacy. ***It gives rise to procedural due process concerns.*** It takes an extraordinarily long time for individuals to get processed through SVP commitment proceedings, while being involuntarily detained past their prison sentence, all at an excessive cost. For the portion of detainees that will go on to get committed, the lengthy duration of proceedings is time wasted where they could have applied themselves meaningfully in treatment. ***For the portion of detainees that eventually do not get committed, the years lost to pending commitment proceedings are an unfair and unnecessary loss of liberty***.

. . .

CASOMB finds the efficacy and efficiency of California's SVP program are severely compromised by having too many detainees that are held for too long pending trials. . . ."[9]

91.    Notably, the CASOMB Year-End Report found that "[t]he detainees at the state hospital awaiting commitment proceedings have been there for an average of six years, and twenty-five percent (25%) have been there more than 10-years [citation]. Roughly, six out of ten detainees [only slightly more than half] have been eventually fully committed."[10]

92.    In its 2021 California Sex Offender Management Board's Year-End Report to Legislature 2021, "CASOMB makes known its stance that the duration of detainee status for individuals with sexual offenses subjected to civil commitment proceedings is excessive and problematic, wasting state resources, and undermining the efficacy of SVP as an intervention to enhance community safety."[11]  CASOMB recommends the following:

Requirements for the use of "good cause" continuances should be strengthened to mitigate the problem of lengthy duration of detainee status. These actions are needed so that those who meet SVP criteria will be more quickly committed, and those that do not meet commitment criteria will be more quickly released, and with more parole time remaining to assist their community reintegration. Shortening the duration of detainee status will increase the treatment completion rate, the quality of treatment engagement, and the therapeutic milieu in the SVP Sexual Offense Treatment Program.

---

[9] CALIFORNIA SEX OFFENDER MANAGEMENT BOARD, YEAR-END REPORT TO LEGISLATURE 2020, at 22-23, Feb. 2021, *available at* 2020_CASOMB_Annual_Report.pdf.

[10] *Id.* at 23.

[11] California Sex Offender Management Board, Year-End Report to Legislature 2021, at 18, Feb. 2021, *available at* https://casomb.org/index.cfm?pid=1214.

*Id.* The report notes that consistent with its earlier recommendations, "there has been a slight decrease in the number of [pre-trial] detainees," such that "[c]urrently detainees represent forty-three (43%) and fully committed individuals represent fifty-seven (57%) of the population at DSH pursuant to the SVP law." *Id.* at 19. This means that 43% of the approximately 900 individuals currently detained in state psychiatric hospitals on the basis of the SVPA have not yet had a trial. *See id.* at 18-19.

**B.    Mr. Payne Experienced Significant Physical and Emotional Distress as a Result of His Unconstitutional Thirteen-Year Detention.**

93.    Mr. Payne was the victim of serious assaults while detained at CSH, which caused him to suffer PTSD.

94.    Because Mr. Payne had never been brought to trial, he was not eligible to petition annually for conditional or unconditional release per §§ 6604, 6604.9, 6608(a).

95.    During the first few years of Mr. Payne's detention, his wife visited him at CSH. Later, she received a terminal cancer diagnosis and was no longer able to visit. She died soon after he was released.

96.    As a result of his experience at CSH Mr. Payne suffered significant physical and emotional distress.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**(DELIBERATE INDIFFERENCE CAUSING A CONSTITUTIONAL VIOLATION OF RIGHTS PURSUANT TO 42 U.S.C. § 1983 —AGAINST DEFENDANTS MERCED COUNTY PUBLIC DEFENDER'S OFFICE AND MERCED COUNTY BOARD OF SUPERVISORS)**

97.    Plaintiff hereby incorporates and realleges each and every allegation set forth above as though fully set forth herein.

98.    This action is brought pursuant to 42 U.S.C. § 1983 for violation of Mr. Payne's due process rights under the Fourteenth Amendment.

99.    Defendants Michael Pro, Eric Dumars, David Elgin, Vincent Andrade, Anthony Green, the Merced County Public Defender's Office, and the Merced County Board of Supervisors, are sued herein as administrators of the Merced County Public Defender's Office.

100.    Defendants Michael Pro, Eric Dumars, David Elgin, Vincent Andrade, Anthony Green did not represent Mr. Payne as a trial attorney or appear as counsel for Mr. Payne in any of the SVPA proceedings described herein. As such, liability against these defendants is not based on these defendants acting within the scope of legal representation of Mr. Payne.

101.    Defendants Michael Pro, Eric Dumars, David Elgin, Vincent Andrade, Anthony Green, pursuant to policies and practices, failed to inform Mr. Payne of his right to a speedy trial, failed to inform Mr. Payne of his right to appear on his own behalf, failed to meaningfully challenge Mr. Payne's civil commitment, failed to object to hearsay relied on at Mr. Payne's PCHs, failed to timely bring Mr. Payne's SVPA petition to trial, failed to institute training programs for SVPA attorneys to ensure that Mr. Payne's trial would take place in a timely manner, and failed to ensure that he received competent and diligent counsel, let alone "recognize [his] fundamental dignity and humanity" as promised by the PD. By thus abandoning their ethical and statutory duty to Plaintiff, said defendants allowed Plaintiff to be held as a pre-trial detainee for such an inordinately long period of time that his due process rights were violated.

102.    On information and belief, Defendants Michael Pro, Eric Dumars, David Elgin, Vincent Andrade, Anthony Green, were specifically aware that their subordinates and Alternate PDs were not providing diligent counsel to their SVPA clients and that the failure to bring those clients to trial violated their constitutional rights. Defendants failed to act to prevent the attorneys of the Merced County Public Defender's Office and Alternate PDs to engage in the acts and omissions described herein, which they reasonably should have known would deprive Mr. Payne and other similarly situated SVPA clients of their rights. As a direct result of the deliberate indifference of these defendants, Mr. Payne endured thirteen years in detention waiting for his case to come to trial before it was finally defeated.

103.    Defendants Michael Pro, Eric Dumars, David Elgin, Vincent Andrade, and Anthony Green, had a duty to ensure that indigent clients in Merced County received diligent and

competent representation after the Public Defender declared a conflict. They were specifically aware that the Alternate PD was not providing diligent counsel to their SVPA clients and that the failure to bring those clients to trial violated their constitutional rights. Defendants failed to act to prevent the attorneys of the Alternate PD from engaging in the acts and omissions described herein, which they reasonably should have known would deprive Mr. Payne and other similarly situated SVPA clients of their rights. As a direct result of the deliberate indifference of these defendants, Mr. Payne endured thirteen years in detention waiting for his case to come to trial before it was finally defeated.

104.    While the Petition against Mr. Payne was pending, there existed within the Public Defender's Office various customs and practices, as alleged herein, which caused the delay in Mr. Payne's case being brought to trial and which caused Mr. Payne to unnecessarily spend more than a decade as a pre-trial detainee waiting for his case to be brought to trial.

105.    Defendants Michael Pro, Eric Dumars, David Elgin, Vincent Andrade, Anthony Green, the Merced County Public Defender's Office, and the County of Merced Board of Supervisors were specifically aware of the inordinate and excessive delay that Mr. Payne and numerous other SVPA detainees were experiencing in the processing of their cases and that Plaintiff's case and the other cases were not being brought to trial on a timely basis. Said defendants were aware of the PD's customs and practices described above that existed with respect to SVPA detainees and which were the causes of the failure to bring these cases to trial in a timely fashion.

106.    Despite knowing of the great magnitude of the delays in bringing Mr. Payne and other similarly situated SVPA detainees to trial, the Merced County Public Defender's Office and the County of Merced Board of Supervisors failed to take any reasonable measures to ensure that the constitutional rights of Mr. Payne were protected when he was a client of the Merced County Alternate Defender's Office.

107.    The above-described failures constituted deliberate indifference to the due process rights of Mr. Payne.

COMPLAINT; CASE NO. 22-78

108.    Defendants  Michael Pro, Eric Dumars, David Elgin, Vincent Andrade, Anthony Green, the Merced County Public Defender's Office, and the County of Merced Board of Supervisors knowingly refused to terminate the acts, customs, practices, and misconduct of their subordinates, which they knew were causing and would cause constitutional injury upon the SVPA detainees in their charge. Said defendants failed to take reasonable measures to institute internal measures and training programs for PD's with respect to SVPA detainees to ensure their attorneys fulfilled their ethical duties to zealously protect the interests of their clients, failed to address the long delays in getting SVPA cases to trial, failed to institute new training of their subordinates in the management of SVPA cases so as to ensure that SVPA cases got to trial in a timely fashion, and failed to discipline their subordinates for failing to get the SVPA cases to trial in a timely fashion.

109.    The above-described failures on the part of Defendants Michael Pro, Eric Dumars, David Elgin, Vincent Andrade, Anthony Green, the Merced County Public Defender's Office, and the County of Merced Board of Supervisors constituted an acquiescence in the constitutional deprivations that resulted or constituted a reckless and callous indifference to the rights of SVPA detainees, including Mr. Payne.

110.    As a result of the above deliberate acts and omissions of Defendants Michael Pro, Eric Dumars, David Elgin, Vincent Andrade, Anthony Green, the Merced County Public Defender's Office, and the County of Merced Board of Supervisors, Mr. Payne was damaged and injured as alleged above by being made to endure a wrongful 13-year pre-trial detention.

111.    The conduct of Defendants Michael Pro, Eric Dumars, David Elgin, Vincent Andrade, Anthony Green, the Merced County Public Defender's Office, and the County of Merced Board of Supervisors, as alleged above, was done with deliberate indifference to the constitutional violations endured by Mr. Payne. As such, punitive damages should be imposed, in an amount sufficient to punish the named defendants and to deter future similar conduct by these defendants and others in similar positions.

**SECOND CLAIM FOR RELIEF**

**(MUNICIPAL LIABILITY FOR VIOLATION OF CONSTITUTIONAL RIGHTS AS TO DEFENDANTS OFFICE OF THE MERCED COUNTY PUBLIC DEFENDER, COUNTY OF MERCED, AND COUNTY OF MERCED BOARD OF SUPERVISORS)**

112.    Plaintiff hereby incorporates and realleges each and every allegation set forth above as though fully set forth herein.

113.    This action is brought pursuant to 42 U.S.C. § 1983 for violation of Plaintiff's rights under the Fourteenth Amendment.

114.    Plaintiff's due process rights were violated by the egregious delay in bringing his case to trial as alleged above in the first claim for relief. As a result of the acts and omissions of the Merced County Public Defender's Office, the County of Merced, and the County of Merced Board of Supervisors, as described above, Mr. Payne's Fourteenth Amendment due process rights were violated.

115.    At the time of these constitutional violations by said defendants, the Merced County Public Defender's Office had in place, and had ratified widespread customs and practices, which permitted and encouraged attorneys in the Merced County Public Defender's Office and Alternate PD to delay bringing SVPA cases to trial, which violated the due process right of their SVPA clients, including Mr. Payne.

116.    These practices, customs, policies and procedures included:

   a.    failing to raise challenges to plea agreements that resulted in an SVPA screening and possible detention of indeterminate duration;

   b.    failing to challenge probable cause evidence;

   c.    failing to request new PCHs after such hearings were ordered pursuant to *In re Ronje*, 179 Cal.App.4th 509 (2009);

   d.    failing to regularly bring SVPA detainees to court for hearings, or to otherwise ensure that SVPA detainees were in court or that they would appear by video conference, so as to conceal from SVPA detainees their delays in processing their cases in a timely manner;

e.  failing to communicate to SVPA client/detainees the status of their cases, the strategies which were to be employed in defending their case, the likely duration of the delays, and the likelihood of success of their efforts;

f.  failing to obtain consent from SVPA client/detainees to continue hearing dates, trial dates, and other deadlines which were in their control;

g.  waiving SVPA client/detainees' appearance at hearings without securing their authority to do so;

h.  agreeing to repeated continuances sought by the prosecution;

i.  ignoring requests from SVPA clients/detainees to bring their case to trial promptly;

j.  failing to meet reasonable deadlines in SVPA cases;

k.  failing to timely secure experts, to ensure that such experts are properly prepared, and to ensure that such experts complete their work in a timely fashion;

l.  allowing experts' reports to lapse or otherwise go stale;

m.  allowing SVPA cases to sit idle for years without meaningful progress;

n.  failing to declare unavailability, such that long-delayed SVPA cases could be assigned to outside/independent counsel;

o.  failing to declare such conflicts so as to permit their SVPA detainees to file speedy trial motions after the extensive delays in the processing of their cases;

p.  failing to implement adequate training policies within the Merced County Public Defender's Office to prevent constitutional violations by their attorneys in their handling of their SVPA caseloads;

q.  declaring a conflict of interest where none existed;

r.  failing to disclose Judge Garcia's financial relationship with the Alternate PD;

1         s.   failing to file petitions for writs from the Court of Appeal when the

2              Superior Court denied motions;

3         t.   failing to maintain adequate contact with clients;

4         u.   failing to tell clients that the delays were requested by the public defenders

5              rather than by the DA or Court;

6         v.   waiving PCHs and submitting PCHs on the written evaluations against the

7              clients' interest;

8         w.   failing to advise clients of their rights and of changes in the law or facts;

9              and

10        x.   failing to advocate for clients at the State Hospital to promote their success

11             in treatment.

12       117.   Deliberate indifference to the civil rights of SVPA detainees such as Mr. Payne is

13   evidenced by said defendants' ignoring the long delays in bringing SVPA cases to trial and the

14   long pre-trial detentions suffered by SVPA clients, which were obvious and known consequences

15   of the widespread practices, customs, policies and procedures described herein.

16       118.   The foregoing acts, omissions, and systemic deficiencies are and were widespread

17   customs, practices, policies and procedures of defendant County of Merced, the Merced County

18   Board of Supervisors and the Merced County Public Defender's Office, and by ratifying such,

19   these defendants permitted and encouraged attorneys in the Merced County Public Defender's

20   Office and Alternate PD to delay bringing SVPA cases to trial in a timely fashion. This caused,

21   permitted, and/or allowed under official sanction the attorneys of the Merced County Public

22   Defender's Office and the Alternate PD to believe that the long delays in bringing SVPA cases to

23   trial would not be objectively, thoroughly, and/or meaningfully investigated and that no negative

24   consequences would befall them, all with the foreseeable result that the Merced County Public

25   Defender's Office and the Alternate PD would greatly delay in bringing SVPA cases to trial and

26   thereby violate the civil rights of the SVPA detainees in their charge, including Mr. Payne.

27       119.   As a direct and proximate result of the aforementioned acts and omissions alleged

28   herein, Mr. Payne endured thirteen years of wrongful detention in violation of his due process

rights, which caused him serious and permanent injuries and which has physically,

psychologically, and emotionally impaired him permanently. A judicial finding of such a

violation is not adequate to redress the suffering experienced by Mr. Payne as a direct result.

### THIRD CLAIM FOR RELIEF

**(CONSPIRACY TO VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS AS TO
DEFENDANTS COUNTY OF MERCED AND COUNTY OF MERCED BOARD OF
SUPERVISORS)**

120.    Plaintiff hereby incorporates and realleges each and every allegation set forth

above as though fully set forth herein.

121.    Defendants County of Merced and County of Merced Board of Supervisors acted

in concert with each other and with current and/or former partners at MDA, the Alternate PD, to

violate Mr. Payne's constitutional rights, specifically his Fourteenth Amendment right to due

process under the United States Constitution.

122.    On information and belief, these Defendants had both a tacit and an explicit

agreement with MDA to achieve these unlawful ends through a combination of both lawful and

unlawful means, and the Defendants County of Merced and County of Merced Board of

Supervisors played a part in doing so. These Defendants' overt acts in furtherance of this

conspiracy against Plaintiff included, but are not limited to (a) entering into and repeatedly

renewing the County's contract with MDA to provide indigent defense services with knowledge

or reckless disregard or deliberate indifference to the fact that MDA's conduct, as described

above, resulted in the inordinate and excessive delay that Mr. Payne and numerous other SVPA

detainees were experiencing in the processing of their cases and that Plaintiff's case and the other

cases were not being brought to trial on a timely basis; (b) compensating MDA pursuant to the

County's contract with MDA despite evidence that MDA's customs and policies resulted in Mr.

Payne and numerous other SVPA detainees experiencing extensive delays in the processing of

their cases in violation of the United States Constitution, thereby ratifying these policies and

customs.

123.    At all times relevant hereto, Defendants were acting  under color of California

state law in supervising and administering MDA to provide indigent defense services.

1    124.    As direct, foreseeable, and proximate result of these Defendants' conspiracy,

2    Plaintiff suffered emotional and pecuniary harm, entitling him to compensatory, punitive, and

3    exemplary damages.

4                                **PRAYER FOR RELIEF**

5    125.    Wherefore, plaintiff Jacob Payne demands the following relief, against all the

6    Defendants with respect to each of the claims for relief above:

7              a.   Compensatory general and special damages in an amount in accordance

8                   with proof;

9              b.   Punitive and exemplary damages, against the Office of the Merced County

10                  Public Defender, the County of Merced, and the County of Merced Board

11                  of Supervisors in an amount sufficient to deter and to make an example of

12                  these defendants;

13             c.   Reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C.

14                  § 1988;

15             d.   Costs of suit necessarily incurred herein;

16             e.   Such other and further relief as the Court deems just or proper.

17                            **DEMAND FOR JURY TRIAL**

18   126.    Plaintiff Jacob Payne hereby demands a jury trial.

19                                Respectfully submitted,

20   DATED: February 4, 2022            LAW OFFICE OF ROBYN FASS WANG

21

22                           By:  */s/ Robyn Fass Wang*
                                  Robyn Fass Wang
23                                Attorney for Plaintiff
                                  JACOB PAYNE
24

25

26

27

28