UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB PAYNE, | Case No.  1:22-cv-00157-BAM |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | |
| MERCED COUNTY PUBLIC DEFENDER'S OFFICE, et al., | (Doc. 25) |
| Defendants. | |

This matter is before the Court on Defendants County of Merced, Kathleen Crookham, Deidre F. Kelsey, John Pedrozo, and Hubert Walsh Jr.'s Motion to Dismiss First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed on May 19, 2022.  (Doc. 25.)  Plaintiff Jacob Payne ("Plaintiff") filed an opposition, (Doc. 37), and Defendants replied, (Doc. 39).  Plaintiff also filed a notice of supplemental authority regarding cases pending before the California Supreme Court.  (Doc. 54.)   Having carefully considered the briefing filed by all parties, and for the reasons detailed below, Defendants' motion to dismiss will be GRANTED IN PART and DENIED IN PART.

## I.     Background

### A.  Summary

Plaintiff's action arises from his detention for more than eleven years pending trial on the issue of whether he was a sexually violent predator ("SVP") under California Welfare and

1

1   Institutions Code section 6600, *et seq.* (Doc. 19, First Amended Complaint ("FAC") at ¶ 3.)  In

2   2007, the Merced County Superior Court detained Plaintiff on a petition alleging he qualified as a

3   SVP.  The court appointed Merced County's Alternate Public Defender, Merced Defense

4   Associates ("MDA"),[1] to represent him.  (*Id.* at ¶ 2.)  Over the next eleven years, Plaintiff's

5   Alternate Public Defender, Mr. William Davis, never visited Plaintiff at Coalinga State Hospital

6   and only represented Plaintiff at two probable cause hearings.  (*Id.* at ¶¶ 3-4.)  The superior court

7   took two years to issue a ruling on the second probable cause hearing and the matter was

8   continued for eleven years.  (*Id.* at ¶ 3.)  In November 2018, after eleven years of continuances,

9   the Alternate Public Defender declared a conflict and the court appointed attorney Doug C. Foster

10  to represent Plaintiff.  (*Id.* at ¶ 5.)  Mr. Foster brought a motion to dismiss, alleging the delay of

11  eleven years from petition to probable cause finding violated Plaintiff's right to due process.  The

12  court denied the motion, but set the matter for trial.  (*Id.* at ¶ 108.)  On February 4, 2020, less than

13  a year-and-a-half after Mr. Foster was appointed, a jury found the petition untrue.  (*Id.* at ¶¶ 5-6.)

14  Plaintiff was detained for more than thirteen years before he was released from detention -- after a

15  jury found him not to be a SVP.  (*Id.* at ¶ 9.)

16      Plaintiff filed this civil rights action under 42 U.S.C. § 1983 on February 4, 2022, (Doc.

17  1), and filed his first amended complaint on April 28, 2022, (Doc. 19.)  Plaintiff seeks to recover

18  from Thomas Pfeiff and Cindy Morse of MDA, the County of Merced, and former members of

19  the Merced County Board of Supervisors Kathleen Crookham, Deidre F. Kelsey, John Pedrozo,

20  and Hubert Walsh, Jr.  Plaintiff asserts the following claims:  (1) deliberate indifference causing a

21  constitutional violation of rights against all defendants; (2) municipal liability against Defendant

22  County of Merced; and (3) conspiracy to violate Plaintiff's constitutional rights against all

23  defendants.  As relief, Plaintiff seeks compensatory and punitive damages, along with attorneys'

24  fees and costs.  (FAC at ¶ 182.)

25      Defendants County of Merced, Kathleen Crookham, Deidre F. Kelsey, John Pedrozo, and

26

27  [1] Merced Defense Associates is reportedly a joint venture between the Law Offices of Morse & Pfeiff and
    The Garcia Law Firm, as well as its predecessor in interest to the contract for indigent defense services
28  with the County of Merced, Morse, Pfeiff & Garcia.  (FAC at ¶ 2, n. 1.)

Hubert Walsh Jr. move to dismiss Plaintiff's FAC on the following grounds:  (1) the statute of limitations for a claim under 42 U.S.C. § 1983 has expired; (2) board of supervisors members Kathleen Crookham, Deidre F. Kelsey, John Pedrozo, and Hubert Walsh Jr. have absolute immunity; (3) Plaintiff's allegations are not sufficient to justify a *Monell* claim against the County of Merced; (4) Plaintiff's allegations are not sufficient to demonstrate deliberate indifference by the County of Merced; (5) Plaintiff fails to allege conspiracy between the County and MDA; and (6) punitive damages are not recoverable in a § 1983 claim against a local agency.  (Doc. 25.)

### B.  Indigent Defense Contract

Defendant County of Merced entered into Merced County Contract No. 2003093 (the "Merced Indigent Defense Contract") with the law firm of Morse, Pfeiff & Garcia, later MDA, in 2003 for a five-year term starting in fiscal year 2003/2004 and ending with fiscal year 2007/2008. The purpose of the contract was to provide legal defense to indigent civil commitment respondents in cases where the Merced Public Defender declared a conflict.  (FAC at ¶¶ 41, 111.b.)  The Morse, Pfeiff & Garcia law firm acted as both administrator of the contract and a provider of legal services.  Prior to January 2004, the firm of Morse, Pfeiff & Garcia dissolved. Marc Garcia opened his own law office in Merced, known as the Garcia Law Firm and Defendant Pfeiff became partner in the Law Office of Morse & Pfeiff.  Concurrently, the Garcia Law Firm and the Law Offices of Morse & Pfeiff entered into a Joint Venture Agreement, signed by Defendants Pfeiff, Morse & Garcia.  The joint venture came to be known as MDA.

In July 2007, a two-year extension to the contract was approved by the County of Merced, for fiscal year 2008/2009 through fiscal year 2009/2010.  (FAC at ¶ 111.j.)  In early October 2007, attorney Marc Garcia's judicial appointment was announced. On November 20, 2007, an agreement dissolving the joint venture was signed by attorney Garcia on behalf of the Garcia Law Firm and by Defendant Pfeiff on behalf of Morse & Pfeiff.  (*Id.* at ¶ 111.k.) The joint venture agreement purported to dissolve the joint venture, but a separate one-page agreement specifying the financial terms was also executed by attorney Garcia and Defendant Pfeiff, which provided that MDA would pay Garcia $250,000 in monthly payments of $4,516 starting in January 2008, and that the payments would cease if Merced County terminated or did not renew the indigent

1   defense services contract.  (*Id.* at ¶ 111.l.)  In January 2008, after taking the bench, Judge Garcia

2   began receiving monthly payments that continued through August 2012.  (*Id.* at ¶ 111.n.)  Judge

3   Garcia presided as the judicial officer at thirty-four status conferences involving Plaintiff.

4        In October 2009, a three-year extension to the MDA contract was approved, from fiscal

5   year 2010/2011 through fiscal year 2012/2013.  In July 2011, a two-year extension was approved

6   for fiscal years 2013/2014 and 2014/2015.  (*Id.* at ¶ 111.q.)

7        In 2015, the Commission on Judicial Performance initiated formal proceedings against

8   Judge Garcia for violating the Judicial Code of Ethics for accepting payments from the Alternate

9   Public Defender and not disclosing them.  Judge Garcia resigned on May 15, 2015.  (*Id.* at ¶

10  111.t.)  Despite the Decision and Order of the State of California Commission on Judicial

11  Performance filed on May 18, 2015, Merced County amended and continued to renew its contract

12  with MDA on June 2, 2015, and again on June 28, 2016.  (*Id.* at ¶ 112.)

13       In 2017, Merced County did not renew MDA's contract and offered the Alternate Defense

14  contract to Ciummo and Associates, beginning on August 1, 2017.

15  **II.    Legal Standard**

16       A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim, and

17  dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts

18  alleged under a cognizable legal theory.  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42

19  (9th Cir. 2011) (quotation marks and citations omitted).  To survive a motion to dismiss, a

20  complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible

21  on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*,

22  550 U.S. 544, 555 (2007)) (quotation marks omitted); *Conservation Force*, 646 F.3d at 1242;

23  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  "A claim has facial plausibility

24  when the plaintiff pleads factual content that allows the court to draw the reasonable inference

25  that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. While the

26  plausibility requirement is not akin to a probability requirement, it demands more than "a sheer

27  possibility that a defendant has acted unlawfully." *Id.* This plausibility inquiry is "a context-

28  specific task that requires the reviewing court to draw on its judicial experience and common

1  sense." *Id.* at 679.

2  In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

3  the court must accept as true the allegations of the complaint in question, *Erickson v. Pardus*, 551

4  U.S. 89, 94 (2007), and construe the pleading in the light most favorable to the plaintiff. *Jenkins*

5  *v. McKeithen*, 395 U.S. 411, 421 (1969); *Meek v. Cty. of Riverside*, 183 F.3d 962, 965 (9th Cir.

6  1999). However, the court need not credit "labels and conclusions" or "a formulaic recitation of

7  the elements of a cause of action." *See Twombly*, 550 U.S. at 555.

8  In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits

9  thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

10  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

11  *Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

12  If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

13  amend even if no request to amend the pleading was made, unless it determines that the pleading

14  could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

15  1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

16  **III.   Analysis**

17  **A.  Judicial Notice**

18  As a threshold matter, in support of their motion to dismiss, Defendants ask the Court to

19  take judicial notice of the following court filings related to Plaintiff's SVP case: (1) Motion to

20  Dismiss [People v. Litmon (2008) 162 Cal.App.4th 383; People v. Superior Court (Vasquez)

21  (2018) 27 Cal.App.5th 36] filed by Douglas C. Foster, December 4, 2019, Case No. 150049; and

22  (2) a January 16, 2020 Minute Order from the Merced County Superior Court denying Plaintiff's

23  Motion to Dismiss. (Doc. 26; Doc. 27, Exs. 1 and 2 to Declaration of Mark T. Laluan.). These

24  court records are properly subject to judicial notice. *See* Fed. R. Evid. 201(b) (court may take

25  judicial notice of fact that is not subject to reasonable dispute because it is (1) generally known

26  within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from

27  sources whose accuracy cannot reasonably be questioned); *see also MGIC Indem. Co. v.*

28  *Weisman*, 803 F.2d 500, 504 (9th Cir.1986); *United States v. Wilson*, 631 F.2d 118, 119 (9th

1    Cir.1980); *Pierce v. Cantil-Sakauye*, No. C 13-01295 JSW, 2013 WL 4382735, at *3 (N.D. Cal.

2    Aug. 13, 2013), aff'd, 628 F. App'x 548 (9th Cir. 2016) ("On a motion to dismiss pursuant to

3    either Rule 12(b)(1) or Rule 12(b)(6), the Court may take judicial notice of court records in other

4    cases.")  Accordingly, Defendants' request for judicial notice is GRANTED.

5                    **B.  Statute of Limitations**

6            Defendants first argue that Plaintiff's FAC is barred by the applicable statute of

7    limitations for actions under 42 U.S.C. § 1983.

8            For claims brought under 42 U.S.C. § 1983, the applicable statute of limitations is

9    California's statute of limitations for personal injury actions. *See Wallace v. Kato*, 549 U.S. 384,

10   387-88 (2007); *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) ("[f]or actions under 42 U.S.C.

11   § 1983, courts apply the forum state's statute of limitations for personal injury actions."); *Jackson*

12   *v. Barnes*, 749 F.3d 755, 761 (9th Cir. 2014); *Wilson v. Garcia*, 471 U.S. 261, 280 (1985*);*

13   *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988). In California,

14   there is a two-year statute of limitations for personal injury actions such as § 1983 cases. *See* Cal.

15   Civ. Proc. Code § 335.1; *Maldonado v. Harris*, 370 F.3d 945, 954-55 (9th Cir. 2004).

16           Notwithstanding the application of the forum's state law regarding the statute of

17   limitations, including statutory and equitable tolling, in the context of a § 1983 action, it is

18   "federal law" which "governs when a claim accrues." *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir.

19   1999) (citing *Elliott v. City of Union City*, 25 F.3d 800, 801-02 (9th Cir.1994)). "A claim accrues

20   when the plaintiff knows, or should know, of the injury which is the basis of the cause of action."

21   *Id.* (citing *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996)); *see also TwoRivers v. Lewis*, 174

22   F.3d 987, 991 (9th Cir. 1999).

23           Here, Defendants argue that Plaintiff was aware of his due process injury in at least 2007

24   because the complaint alleges that he was persistent about moving his case forward from the

25   moment when William Davis was assigned as defense counsel.  Defendants alternatively argue

26   that Plaintiff, at the latest, "was certainly aware of his injury on December 4, 2019, when his new

27   attorney Douglas Foster filed a Motion to Dismiss," which alleged a violation of Plaintiff's due

28   process rights due to delays in bringing his matter to a speedy probable cause hearing.  (Doc. 25-1

1   at p. 9.)  Under either argument, Defendants conclude that Plaintiff's complaint, filed on February

2   4, 2022, is outside the two-year statute of limitations.  (*Id.* at pp. 9-10.)

3        In his opposition, Plaintiff challenges, as absurd, Defendants' assertion that his due

4   process claim accrued in 2007 at the same time he was assigned defense counsel.  The Court

5   agrees that Plaintiff's claim regarding a delay likely did not accrue at the time he was assigned

6   alternate defense counsel in 2007.  In 2007, Plaintiff had only just been detained on a petition

7   alleging he qualified as a SVP.  (FAC at ¶ ¶ 2, 90 ("Mr. Payne was screened and referred to the

8   District Attorney, who on February 7, 2007, filed the Petition alleging Mr. Payne met the criteria

9   of sexually violent predator ('SVP') on the basis of an earlier conviction for PC section 288(a).")

10  At that point, and in 2007, there is no suggestion of delay such that Plaintiff knew or should have

11  known of any injury stemming from the failure to bring the matter to a speedy probable cause

12  hearing.

13       As to Defendants' alternate assertion, Plaintiff has not claimed he was unaware of his due

14  process claim in 2019, when his new attorney filed a motion to dismiss in the state proceedings.

15  (*See* Doc. 37 at p. 16.)  Instead, Plaintiff contends that Defendants' statute of limitations argument

16  fails as a matter of law because, under *Heck v. Humphrey*, 512 U.S. 477 (1984), he "could not

17  bring this action until his underlying [Sexually Violent Predators Act] petition was dismissed by a

18  jury on February 4, 2020."  (*Id.*)

19       Under *Heck*, in order to "recover damages for allegedly unconstitutional conviction or

20  imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction

21  or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been

22  reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal

23  authorized to make such determination, or called into question by a federal court's issuance of a

24  writ of habeas corpus."  *Heck*, 512 U.S. at 486–87. Often referred to as the favorable termination

25  rule or the *Heck* bar, this exception to § 1983's otherwise broad scope applies whenever state

26  prisoners "seek to invalidate the duration of their confinement-either directly through an

27  injunction compelling speedier release or indirectly through a judicial determination that

28  necessarily implies the unlawfulness of the State's custody." *Wilkinson v. Dotson*, 544 U.S. 74,

1    81 (2005).

2         *Heck* applies to detainees under an involuntary civil commitment scheme such as

3    California's Sexually Violent Predators Act ("SVPA").  *Williams v. Whelan*, No. C-13-2723

4    EMC (PR), 2013 WL 6492138, at *2 (N.D. Cal. Dec. 10, 2013), citing *Huftile v. Miccio–*

5    *Fonseca*, 410 F.3d 1136, 1139–40 (9th Cir. 2005).  Indeed, a civil detainee's claim for damages

6    and/or declaratory relief "is barred by *Heck* if success on the claim would necessarily imply the

7    invalidity of the detainee's civil commitment."  *Id.*  The result is different, however, "when the

8    action is brought by a pretrial detainee." *Williams*, 2013 WL 6492138, at *2.  *Heck* does not

9    encompass the principle that "an action which would impugn an anticipated future conviction

10   cannot be brought until that conviction occurs and is set aside." *Id.*, quoting *Wallace v. Kato*, 549

11   U.S. 384, 393 (2007) (emphasis in original); *see also Rhoden v. Mayberg*, 361 F. App'x 895, 896

12   (9th Cir. 2010) (noting *Heck* inapplicable to plaintiff detained pending proceedings to determine

13   whether he should be civilly committed under SVPA because he had not been civilly committed).

14   Rather, if the criminal or civil commitment proceedings are still pending, "it is within the power

15   of the district court, and in accord with common practice, to stay the civil action until" the state

16   court proceedings have ended. *See Wallace*, 549 U.S. at 393–94.  While claims for declaratory

17   and injunctive relief that relate to pending state proceedings are normally dismissed based on

18   abstention principles under *Younger v. Harris*, 401 U.S. 37 (1971), claims for monetary damages

19   are stayed until the state proceedings are completed. *Gilbertson v. Albright*, 381 F.3d 965, 968

20   (9th Cir. 2004) (concluding that *Younger* principles apply to actions at law as well as for

21   injunctive or declaratory relief that relate to pending state proceedings, but "federal courts should

22   not dismiss actions where damages are at issue; rather, damages actions should be stayed until the

23   state proceedings are completed"); *see also Williams,* 2013 WL 6492138, at *3 (staying action

24   seeking damages (and declaratory relief) for claims regarding the slowness of the civil

25   commitment proceedings under SVPA until the plaintiff's SVPA proceedings concluded);

26   *Rhoden*, 361 F. App'x 895, 896 ("district court properly dismissed . . . claims for declaratory and

27   injunctive relief" brought by civil detainee awaiting trial, but finding "claims for money damages

28   should have been stayed until the state court proceedings are completed"); *Rhoden v. Mayberg*,

No. 1:08-cv-00100-LJO-DLB (PC), 2010 WL 2679921, at *2 (E.D. Cal. July 2, 2010) (staying §

1983 action for money damages pending completion of state civil commitment proceedings

pursuant to SVPA); *cf. Klein v. Longwell*, No. 1:15-cv-00830-LJO-MJS (PC), 2015 WL 4394997,

at *1-2 (E.D. Cal. July 16, 2015) (explaining *Heck* bar would be applicable in § 1983 action if

plaintiff had been adjudicated a SVP, but if SVP commitment proceedings remained ongoing,

then district court required to abstain from addressing plaintiff's claims seeking non-monetary

relief); *Williams v. King*, No. 1:13-cv-01253-MJS (PC), 2018 WL 453519, at *3 (E.D. Cal. Jan.

17, 2018), report and recommendation adopted, No. 1:13-cv-01253-DAD-MJS (PC), 2018 WL

1001262 (E.D. Cal. Feb. 7, 2018), aff'd, 730 F. App'x 569 (9th Cir. 2018) (applying *Younger*

abstention and dismissing § 1983 action seeking declaratory relief where plaintiff awaiting a civil

commitment trial under SVPA for twelve years); *but see Butler v. Woods*, No. 21-CV-00867-VC,

2022 WL 17248996, at *1 (N.D. Cal. Nov. 28, 2022) (concluding that under *Heck,* plaintiff could

not have brought his section 1983 claims for delay in bringing his case to trial before he

succeeded on his habeas petition).

    With these principles in mind, if Plaintiff had filed the instant § 1983 action seeking

monetary relief while the civil commitment proceedings were still pending, then it would have

been within the power of the district court to stay the civil action until Plaintiff's state court

proceedings had concluded.  *Gilbertson* 381 F.3d 965, 968; *Rhoden*, 361 F. App'x 895, 896;

*Williams,* 2013 WL 6492138, at *2.  This is consistent with the Ninth Circuit's determination in

*Mills v. Cty. of Covina*, 921 F.3d 1161 (9th Cir. 2019), cited by Defendants, which held that

"where . . . a § 1983 claim accrues pre-conviction, the *possibility* that *Heck* may require dismissal

of that 'not-yet-filed, and thus utterly indeterminate, § 1983 claim,' is not sufficient to trigger

tolling under California Code of Civil Procedure § 356."[2]  921 F.3d at 1168.  Accordingly,

Plaintiff's argument that *Heck* would have prevented him from bringing this § 1983 damages

action until his underlying SVPA petition was dismissed lacks merit.  Accepting the unchallenged

---

[2] Under California Code of Civil Procedure § 356, "[w]hen the commencement of an action is stayed by injunction or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action."

1   assertion that Plaintiff was aware of his claims no later than December 2019, Plaintiff's complaint

2   filed on February 4, 2022, falls outside the two-year statute of limitations period.

3       Plaintiff alternatively argues that if the Court finds that the complaint was not filed within

4   the statute of limitations period, then California's doctrine of equitable tolling should apply to

5   give Plaintiff an additional two years to file his claims. (Doc. 37 at p. 18.) Plaintiff relies on the

6   Ninth Circuit's decision in *Jones v. Blanas*, *supra*, to support his assertion that he is entitled to

7   equitable tolling. (Doc. 37 at p. 18.) In *Jones,* the Ninth Circuit considered whether California's

8   equitable tolling of the statute of limitations based on the disability of imprisonment applied to

9   civil detainees, including those detainees confined awaiting SVPA adjudication. 393 F.3d at 927-

10  29. The Ninth Circuit explained that its "rationale for the 'actual, uninterrupted incarceration'

11  rule in the context of tolling for criminal imprisonment is equally applicable to the context of civil

12  confinement: civil detainees, like their criminal counterparts, suffer from 'more limited ability to

13  investigate their claims, to contact lawyers and to avail themselves of the judicial process.'" *Id.* at

14  929. The Court therefore held that an individual civilly detained is entitled to California's

15  disability tolling provision afforded to criminally confined inmates if the "civil detainee [ ] has

16  pursued his claim in good faith." *Id.* at 930.

17      Plaintiff does not identify factual allegations in the complaint to demonstrate that he made

18  a good faith effort to pursue his claims while detained. Based on the Court's own review of the

19  allegations in the FAC, it cannot be determined definitively that Plaintiff would be entitled to

20  tolling. (*See* FAC ¶¶ 89-109; Ex. B to FAC, Decl. of William A Davis at ¶ 4 ("Mr. Payne's

21  probable cause hearing was delayed many times for many different reasons. I explained the

22  reasons for the various delays to Mr. Payne and he grudgingly agreed to the continuances.") The

23  FAC does not demonstrate that Plaintiff pursued his claims after initially agreeing to a reasonable

24  time for continuances to find suitable expert witnesses, (FAC at ¶ 3), nor does it identify any

25  actions taken by Plaintiff during the eleven years he was represented by Mr. Davis to protect his

26  due process rights. Further, there is nothing in the FAC indicating that Plaintiff pursued his

27  claims in good faith following denial of the motion to dismiss in state court. The Court also

28  acknowledges Defendants' argument that the allegations in the FAC are distinguishable from

10

*Jones* because Plaintiff had the benefit of counsel and there are no facts indicating that Plaintiff was denied access to a law library.  Because Plaintiff does not plead any additional facts to suggest the statute of limitations should be tolled, Plaintiff's claims are time barred and Defendants' motion to dismiss will be granted.  *See Ilaw v. Daughters of Charity Health Sys.*, No. 11-CV-02752-LHK, 2012 WL 381240, at *4 (N.D. Cal. Feb. 6, 2012), aff'd sub nom. 585 F. App'x 572 (9th Cir. 2014) ("Where the running of the statute of limitations appears on the face of a complaint, a plaintiff must allege facts to support a plausible claim that the equitable tolling doctrine applies in order to survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6).").  Nevertheless, Plaintiff may be able to amend his complaint to allege a plausible entitlement to tolling.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) (holding that "leave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect'").

For these reasons, Defendants' motion to dismiss based on the statute of limitations is GRANTED without prejudice.  Plaintiff is granted leave to amend to allege facts that may establish entitlement to equitable tolling of the statute of limitations.

### C. Defendants Crookham, Kelsey, Pedrozo, and Walsh, Jr.

Defendants Crookham, Kelsey, Pedrozo, and Walsh, Jr. contend that the are entitled to absolute immunity for their legislative activities, including approving the MDA contract for indigent defense in Merced County.  (Doc. 25-1 at pp. 10-11.)

"It is well established that federal, state, and regional legislators are entitled to absolute immunity from civil liability for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998).  However, "not all governmental acts by a local legislator, or even a local legislature, are necessarily legislative in nature." *Cinevision Corp. v. Cty. of Burbank*, 745 F.2d 560, 580 (9th Cir. 1984). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. The Ninth Circuit has established a four-factor test to determine whether an act is legislative and therefore entitled to immunity: (1) "whether the act involves ad hoc decisionmaking, or the formulation of policy"; (2) "whether the act applies to a few individuals, or to the public at large"; (3) "whether the act is formally

1    legislative in character"; and (4) "whether it bears all the hallmarks of traditional legislation."

2    *Kaahumanu v. Cnty. of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2013). "The first two factors are

3    largely related, as are the last two factors, and they are not mutually exclusive." *Cmty. House v.*

4    *City of Boise*, 623 F.3d 945, 960 (citing *Kaahumanu*, 315 F.3d at 1220). In addition, "the inquiry

5    into whether the officials' actions were legislative must be 'stripped of all considerations of intent

6    and motive.'" *Id.* (quoting *Bogan*, 523 U.S. at 55).

7         Defendants argue that the four-factors set out in *Kaahumanu* weigh in favor of treating the

8    action of the approving the MDA contract for indigent defense in Merced County as legislative

9    action.  Specifically, Defendants assert that approval of the MDA contract was not ad hoc, but a

10   policy decision to fund the representation of indigent defendants with several levels of conflict

11   counsel.  Defendants point to Plaintiff's allegations that characterize these defendants as

12   exercising "policymaking authority on behalf of the County of Merced" in approving the MDA

13   Contract.  (FAC at ¶¶ 52, 60, 68, 76.)  Defendants also assert that the MDA contract applied to all

14   indigent defendants in Merced County, not just Plaintiff.  Defendants also assert that the MDA

15   contract required the approval of the Merced County Board of Supervisors by formal legislative

16   act through a vote of the supervisors and the contract bore the hallmarks of traditional legislation

17   because it impacted the county budget by funding indigent conflict defense for Merced County.

18   (Doc. 25-1 at p. 11.)

19         Plaintiff counters that whether Defendants Crookham, Kelsey, Pedrozo, and Walsh are

20   entitled to absolute immunity is a question of fact inappropriate on a motion to dismiss.  To

21   support this argument, Plaintiff relies primarily on *Trevino By & Through Cruz v. Gates*, 23 F.3d

22   1480, 1482 (9th Cir. 1994).  (Doc. 37 at p. 19.)  *Trevino*, however, does not stand for the

23   proposition that consideration of absolute legislative immunity is inappropriate or otherwise

24   improper at the motion to dismiss stage.  In fact, *Trevino* involved an interlocutory appeal from

25   the denial of a motion to dismiss based solely upon a claim of absolute legislative immunity.  *Id.*

26   at 1482.  The Ninth Circuit undertook the relevant analysis to determine whether the action of city

27   council members in voting to approve payment of a punitive damages award was legislative in

28   nature.  *Id.* Based on the relevant considerations, the Ninth Circuit concluded that the council

1  members' decisions to pay punitive damage awards pursuant to statute fell outside the types of

2  legislative actions receiving the cloak of absolute immunity.  The court therefore affirmed the

3  district court's denial of the motion to dismiss on the ground of absolute immunity.  *Id*. at 1483.

4      As to Defendants' assertions that they are entitled to absolute immunity, Plaintiff does not

5  engage in a substantive analysis of whether the actions of the former board of supervisor

6  defendants were legislative or administrative in nature, arguing that the acts could be found either

7  legislative or administrative in nature.  (Doc. 37 at pp. 19-20.)  Plaintiff's analysis is not

8  instructive.  The Court therefore turns to its own analysis of the relevant *Kaahumanu* factors.

9          1.  <u>Ad Hoc Decisionmaking or Formulation of Policy</u>

10     Ad hoc decisions are "taken based on the circumstances of the particular case" and do

11  "not effectuate policy or create a binding rule of conduct."  *Kaahumanu*, 315 F.3d at 1220.  In

12  other words, an ad hoc decision "is made 'with a particular end or purpose, as distinguished from

13  a coordinated policy."  *Cmty. House*, 623 F.3d at 961 (internal quotations omitted). "Budgetary

14  decisions such as a decision to eliminate an employment position, typically involve the

15  formulation of policy. On the other hand, decisions directed toward specific individuals, such as a

16  decision to indemnify a government employee, are normally considered to be ad hoc." *Id.*

17  (citations omitted).

18     Here, there is nothing to suggest that the former supervisors' actions in approving the

19  MDA contract were *ad hoc* decisions with respect to a specific individual, but were policy

20  decisions to fund the representation of indigent defendants.  The FAC itself characterizes the

21  former supervisors' actions as exercising "policymaking authority on behalf of the County of

22  Merced" in approving the MDA Contract.  (FAC at ¶¶ 52, 60, 68, 76.)  Accordingly, this factor

23  supports a finding that the former supervisors' acts were legislative.

24          2.  <u>Application to a Few Individuals or to the Public at Large</u>

25     Legislative immunity is disfavored for acts that apply to a few individuals rather than the

26  public at large. *Kaahumanu*, 315 F.3d at 1222.  However, "[i]t is sufficient that the act affects a

27  discrete group of people or places." *Cmty. House*, 623 F.3d at 960 (citing *Kaahumanu*, 315 F.3d

28  at 1220).  The MDA contract impacted the representation of all indigent defendants requiring

13

1   conflict counsel in Merced County, not simply a single person or a few individuals.  This factor

2   therefore supports a finding that the former supervisors' acts were legislative.

3           3.   Formal or Traditional Legislation/Bearing the Hallmarks of Traditional Legislation

4           Defendants contend that the MDA contract bore the hallmarks of traditional legislation

5   because it impacted the county budget by funding indigent conflict defense for Merced County.

6   (Doc. 25-1 at p. 11.)  Defendants also contend that their approval of the MDA contract required a

7   formal vote of the supervisors and their "acts of voting … were, in form, quintessentially

8   legislative."  *Bogan*, 523 U.S. at 55.  Although this fact weighs in favor of legislative immunity, it

9   does not decide the issue.  *Kaahumanu*, 315 F.3d at 1223.  The Ninth Circuit has advised that a

10  court "must look beyond the formal character of the act to see whether it 'contain[s] matter which

11  is properly to be regarded as legislative in its character and effect.'"  *Id.* (quoting *Cinevision*, 745

12  F.2d at 580) (internal quotations omitted).

13          In the present case, the supervisors are not accused of unlawful acts in the context of

14  official legislation, but rather in their supervisory and managing role of the indigent defense

15  contract with MDA.  The FAC alleges that the former supervisors were responsible for

16  "overseeing, managing, directing and/or controlling the Indigent Defense Contract with MDA."

17  (FAC at ¶¶ 51, 59, 67, 75.)  It goes on to allege that these defendants, in carrying out their

18  oversight of the contract, "met with defendants Morse and Pfeiff, and/or other unknown

19  representatives of MDA, to discuss the operation and management of the Alternate Public

20  Defender's Office and the implementation of the Merced Indigent Services Contract."  (FAC at

21  ¶¶ 53, 61, 69, 77.)  These meetings are alleged to include "discussions of the Contract Attorneys

22  supervised by MDA, their case load, individual cases handled by MDA – including Mr. Payne's

23  case—the backlog of work, the understaffing of the Alternate Public Defender's Office, and the

24  extended time periods that SVPA clients were detained."  (FAC at ¶¶ 54, 62, 70, 78.)

25  Additionally, these defendants "requested and received regular memoranda, emails, reports,

26  budget requests, and other written correspondence and documents from defendants Morse and

27  Pfeiff and/or other members of the Alternate Public Defender's Office regarding the management

28  and operation of the MDA Contract attorneys including the status of the civil detention

proceedings of Mr. Payne."  (FAC at ¶¶ 55, 63, 71, 79.)  These defendants are alleged to have specific knowledge regarding Plaintiff's civil detention proceedings and the long delays in getting his case to trial.  (*Id.*)  It is the alleged failure to effectively supervise and manage, combined with the specific knowledge of the delay in civil commitment proceedings, not the failure to legislate, that is the subject of this action.  These factors therefore weigh against absolute legislative immunity.

Defendants argue, albeit with respect to the County of Merced, that because the Merced County Public Defender's Office declared a conflict of interest, the County of Merced could not influence the decisions of MDA in representing indigent defendants.  Defendants cite the terms of the agreement, which explicitly provide that "at no time shall the exercise of ATTORNEY's judgment in the performance of the legal service on behalf of ATORNEY's client be subject to the direction of control of COUNTY or any representative of COUNTY."  (FAC, Ex. A, p. 13, lines 5-8.)  Defendants also contend that Plaintiff wrongly characterizes the receipt of reports and data on costs regarding the number of defendants, including SVPAs, represented by MDA as creating trial supervisory duties on the part of the County and that the contractual language cited in the FAC shows that the reports provided by MDA concerned accounting for the overall costs of MDA representing indigent defendants as conflict counsel, not decisions made by defense counsel at trial.  (Doc. 25-1 at pp. 13-14.)

The Court recognizes the contract prohibition against influencing the decisions of MDA in representing indigent defendants, but the allegations in the FAC suggest knowledge of the extended time periods that SVPA clients were detained and the obligation of the legislators to ensure effective management and operation of the MDA contract.[3]  Moreover, for purposes of the motion to dismiss, the Court must accept as true the factual allegations of the FAC and construe the pleading in the light most favorable to Plaintiff.  Further, administering contracts is generally

---

[3] Indeed, the MDA contract allows the County to terminate the agreement for cause based, among other reasons, upon "[i]mproperly performed services" and "[f]ailure by ATTORNEY to administer the delivery of legal services hereunder in full compliance with any and all constitutional, legal and professional obligations or requirements, and/or duties and responsibility governing ATTORNEY's conduct under this Agreement."  (FAC, Ex. A, p.22, line 17; p. 23, lines 17-20.)

1    an executive function. *See Community House, Inc. v. City of Boise*, 623 F.3d 945, 960 (9th

2    Cir.2010) (recognizing that "monitoring or administering a municipal contract is generally an

3    executive function.").  Accordingly, the Court finds that the former supervisors are not shielded

4    from liability by absolute legislative immunity at the motion to dismiss stage.  *Cf. Williams v.*

5    *Garcia*, No. 2:21-CV-08077-MEMF (PLAx), 2023 WL 2139655, at *8 (C.D. Cal. Feb. 17, 2023)

6    (denying legislative immunity to board of supervisor defendants on motion to dismiss where

7    allegations concerned actions taken in their capacity as supervisors of the public defenders' office

8    and involved their alleged failure to effectively manage, train, and discipline, not their failure to

9    legislate); *Zavala v. Brown*, No. CV2184472SJOASX, 2019 WL 2949029, at *4 (C.D. Cal. Apr.

10   23, 2019) (denying legislative immunity on motion to dismiss where former county supervisor

11   responsible for monitoring, supervising and managing performance of public defender's office in

12   action involving unlawful 13-year detention of plaintiff awaiting trial on civil commitment

13   petition).

14          **D.  *Monell* Claim Against Defendant County of Merced**

15          Plaintiff brings his second claim for relief against the County of Merced for *Monell*

16   liability under § 1983.  (FAC at ¶¶ 167-76.)

17          Under the Supreme Court's decision in *Monell v. New York City Dept. of Social Servs.,*

18   436 U.S. 658, 689–91 (1977), a government entity may be held liable under 42 U.S.C. § 1983,

19   but "such liability must be founded upon evidence that the government unit itself supported a

20   violation of constitutional rights and not on the basis of the respondeat superior doctrine or

21   vicarious liability." *Jones v. Cnty. of Sacramento*, No. 2:20-cv-00838-TLN-CKD, 2023 WL

22   2278562, at *7 (E.D. Cal. Feb. 28, 2023).

23          Policy, Custom, or Practice

24          Municipal liability only attaches when execution of a government's policy or custom

25   inflicts the plaintiff's injury. *See Monell*, 436 U.S. at 694 ("it is when execution of a

26   government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

27   may fairly be said to represent official policy, inflicts the injury that the government as an entity

28   is responsible under § 1983"); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S.

397, 403 (1997) (requiring a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury).  A "policy" is a "deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008).  A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal citations and quotations omitted).  The federal pleading rules for municipal liability state that claims must identify the policy/custom, explain how the specific policy/custom was deficient, how the policy/custom caused plaintiff harm, and how the policy/custom amounted to deliberate indifference (i.e., how the deficiency was obvious and the constitutional injury was likely to occur). *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009); *Jones*, 2023 WL 2278562, at *7.

The County of Merced asserts that the FAC does not state a cognizable *Monell* claim because it does not identify a specific policy.  (Doc. 25-1 at p. 12.)  Yet, Defendants admit that approval of the MDA contract was a policy decision by the County of Merced to fund the representation of indigent defendants with several levels of conflict counsel.  (*Id.* at p. 11.)  Arguably, allegations of the County's "decision to continue the Contract with MDA for 14 years despite the obvious failure of MDA to comply with the Contract or with the statutory and Constitutional mandate that persons held under the SVPA civil commitment statute receive a trial within a meaningful time" also was a policy decision.  (FAC at ¶ 136.)

Defendants reiterate their argument that because the Merced County Public Defender's Office declared a conflict of interest, then the County of Merced could not "create, ratify, or supervise trial decisions of conflict counsel."  (*Id.* at p. 12.)  Defendants again rely on the language of the agreement, cited above, which provides that "at no time shall the exercise of ATTORNEY's judgment in the performance of the legal service on behalf of ATORNEY's client be subject to the direction of control of COUNTY or any representative of COUNTY."  (*Id.* at 12-

13; FAC, Ex. A, p. 13, lines 5-8.)  As Plaintiff points out, however, the FAC does not allege that the County of Merced supervised the trial decisions of counsel.  Instead, the FAC is premised on long delays in bringing SVPA cases to trial, the long pre-trial detention suffered by MDA's SVPA clients, and the County of Merced's repeated amendment of the MDA agreement despite knowledge of the delays and constitutional violations.

Defendants reference the FAC's allegations in ¶¶ 119-143 to assert that they do not describe practices, customs, policies, and procedures attributable to Public Defender policy, but instead refer to decisions within the "purview of MDA alone, professional expectations of counsel by the California Bar Association for legal practitioners both generally and in criminal defense, and those actions taken by Mr. Davis at the various hearings while exercising the traditional functions of legal defense counsel."  (*Id.* at p. 13.)

Defendants' argument is not persuasive.  The allegations identified by Defendants set forth various terms of the MDA contract, including the obligation of MDA to provide reports to the County and also the obligation of MDA to perform its indigent representation functions in accordance with relevant professional standards.  (FAC at ¶¶ 119-34.)  Critically, the cited allegations also allege that the MDA contract granted the County of Merced various rights, including: the right to review the caseload and types of cases handled by MDA on a monthly basis; the right to review the qualifications and experience of all attorneys providing services under the Contract; the right to review detailed cost reporting of SVP cases specifically on an annual basis; the right to meet with MDA every six months or request a meeting more frequently if warranted; and the power to terminate the agreement if any of the requirements of the MDA contract -- including the obligation to comply with all state and federal laws and the Constitution of the United States as well the obligation to maintain certain professional standards—were not met.  (FAC at ¶ 135.)

Defendants also suggest that liability cannot be premised on the traditional functions of defense counsel.  It is well-settled that attorneys do "not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (upholding dismissal of a § 1983 claim brought

by a pro se prisoner against a public defender alleging that the defender failed to adequately

represent him in criminal proceedings); *accord Miranda v. Clark County of Nevada*, 319 F.3d

465, 468 (9th Cir. 2003) (upholding dismissal of a § 1983 complaint against public defender on

the basis that public defender's function was to represent his client, not the interests of the state or

the county).  In this case, however, Plaintiff has not named his alternate public defender as a

defendant, and his *Monell* claim is premised on allegations regarding policies, practices, and

customs of the County of Merced.[4]

Defendants further contend that "other than the alleged facts of this case alone, there are

no facts amounting to a custom" or a "custom ratified by the County." (Doc. 25-1 at pp. 12, 14.)

This is not correct.  The FAC alleges asserted practices and customs that MDA had in place,

including "agreeing to repeated continuances," "ignoring requests from SVPA clients/detainees to

bring their case to trial promptly," and "allowing SVPA cases to sit idle for years without

meaningful progress."  (FAC at ¶ 171.)  According to the FAC, amendment of the contract on

seven separate occasions by the County of Merced over the course of 14 years resulted in

approval and ratification of the decisions, customs, and practices of MDA, which included

"repeatedly violating SVP detainees' Constitutional right to due process and a speedy trial."

(FAC at ¶ 137.)

The Ninth Circuit has found "municipal liability on the basis of ratification when the

officials involved adopted and expressly approved of the acts of others who caused the

constitutional violation." *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996), holding modified by

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001).  Of importance, the FAC alleges that although

known to it, the County of Merced ignored the "long delays in bringing SVPA cases to trial and

the long pre-trial detention suffered by SVPA clients."  (FAC at ¶ 172.)  Taken together, the FAC

alleges widespread and systemic deficiencies, which "permitted and encouraged the attorneys in

the Merced County Alternate Public Defender's Office to delay bringing SVPA cases to trial in a

---

[4] Plaintiff alleges that Defendants Morse and Pfeiff, partners at MDA, were acting under color of state law.
(Doc. 37 at pp. 21-22.)  The Court does not find it appropriate to address this argument given that
Defendants Morse and Pfeiff have not joined the motion to dismiss.

timely fashion." (FAC at ¶ 175.)  A systemic breakdown may give rise to *Monell* liability.  *See*, *e.g.*, *Jones*, 2023 WL 2278562, at *8.  Further, *Monell* liability may be premised on allegations that the County of Merced, through its alternate public defender offices, had a pervasive practice and custom.  *See Alter by & through Alter v. Cnty. of San Diego*, No. 21-CV-01709-LL-KSC, 2022 WL 10756705, at *7–8 (S.D. Cal. Oct. 18, 2022).

The Court recognizes that "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918.  The FAC here includes other examples of the failure to provide alleged SVP detainees with their constitutional right to a timely trial, including another case involving MDA Attorney William Davis, Plaintiff's former representative, and one involving the Merced County Public Defender, a division of the County.  (FAC at ¶¶ 114-115.)

At this procedural posture, the Court finds that Plaintiff has adequately specified the policies, customs, or practices which allegedly gave rise to Plaintiff's constitutional injuries. *See Alter*, 2022 WL 10756705, at *7–8 (finding cognizable *Monell* claim based on allegations that County,  "through its public defender and alternative public defender offices had a pervasive practice and custom of failing to ensure that [Defendant County's] attorneys who were assigned to represent [mentally disordered offender] clients review the requisite [mentally disordered offender] statutes ... to determine whether their clients were eligible for involuntary commitment under the … law, "and Plaintiff's allegations went beyond his own experience).

Deliberate Indifference

Defendants argue that Plaintiff's allegations are not sufficient to identify conduct by the County of Merced to show deliberate indifference.  (Doc. 25-1 at p. 14.)

"It is not sufficient for a plaintiff to identify a custom or policy, attributable to the municipality, that caused his injury." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016) (citation omitted).  A plaintiff must also demonstrate that the custom or policy was adhered to with "deliberate indifference to the constitutional rights of its inhabitants." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989).  Where a § 1983 plaintiff can establish that the

1    facts available to county policymakers "put them on actual or constructive notice that the

2    particular omission is substantially certain to result in the violation of the constitutional rights of

3    their citizens, the dictates of *Monell* are satisfied." *Castro*, 33 F.3d at 1076 (citation omitted).

4    Here, the FAC includes factual allegations that the County of Merced was aware of the

5    inordinate and excessive delays that Plaintiff and other SVPA detainees were experiencing and

6    failed to act or take reasonable measures to ensure that their constitutional rights were protected

7    while represented by MDA.  (FAC at ¶¶157-161.)  The FAC further alleges that the County of

8    Merced's "decision to continue the Contract with MDA for 14 years despite the obvious failure of

9    MDA to comply with the Contract or with the statutory and Constitutional mandate that persons

10   held under the SVPA civil commitment statute receive a trial within a meaningful time, resulted

11   in ongoing—and foreseeable—violations of civil detainees' right to a timely trial."  (FAC at ¶

12   136.)

13   Defendants assert that the County of Merced cannot held liable under a theory of

14   deliberate indifference because MDA personnel were not employees under the supervision of the

15   County.  (Doc. 25-1 at p. 15.)  Defendants correctly note that a municipality cannot be held liable

16   under § 1983 under a respondent superior theory. *Monell*, 436 U.S. at 691.  However, even for

17   purposes of *Monell* liability claims, a plaintiff must show municipal defendants acted in a

18   deliberate or reckless indifference to the rights of others.  *Ortiz v. Cnty. of Trinity*, No. 2:21-CV-

19   02248-KJM-AC, 2023 WL 158672, at *4 (E.D. Cal. Jan. 11, 2023).  The FAC adequately alleges

20   that the constitutional deprivations at issue were the result of the choices and decisions of the

21   County of Merced while contracting for and monitoring indigent defense services. The Court

22   therefore finds that Plaintiff has alleged a policy, custom, or practice of the County of Merced

23   that was deliberately indifferent to the rights of Plaintiff and other SVP detainees sufficient to

24   substantiate a section 1983 claim at the pleading stage.

25   Defendants also ask the Court to give strong consideration to *Gausvik v. Perez*, 239 F.

26   Supp. 2d 1047, 1061 (E.D. Wash. 2002), which found a contract public defender not a state actor

27   for purposes of section 1983, and that the county could not be held liable for selection or funding

28   of the contract public defender. In *Gausvik*, the court determined that the county had discharged

its basic constitutional obligation by contracting to provide legal services to indigent criminal

defendants.  The Court has considered *Gausvik*, but does not find it persuasive.  *Gausvik* involved

a claim of ineffective assistance of counsel, not a systemic breakdown of oversight or deprivation

of constitutional rights. *See*, *e.g.*, *Wilbur v. City of Mount Vernon*, 989 F. Supp. 2d 1122, 1133

(W.D. Wash. 2013) (finding *Gausvik* unpersuasive in cases involving municipalities' liability

under section 1983 for systemic Sixth Amendment violations).

For these reasons, Defendants' motion to dismiss the *Monell* and deliberate indifference

claims against the County of Merced is DENIED.

**E.  Conspiracy to Violate Plaintiff's Constitutional Rights**

Plaintiff's third claim for relief alleges a conspiracy to violate Plaintiff's constitutional

rights as to Defendants County of Merced, Pfeiff, Morse, Crookham, Kelsey, Pedrozo and Walsh,

Jr.  (FAC at ¶¶ 177-81.)

For a conspiracy claim, the plaintiff must allege specific actions in furtherance of a

conspiracy, including a "meeting of the minds" to deprive him of his constitutional rights and a

deprivation resulting from the alleged conspiracy. *See Woodrum v. Woodward County, Okl.*, 866

F.2d 1121, 1126 (9th Cir.1989).

Here, Plaintiff's mere allegation, without factual support, that Defendants "had both a tacit

and an explicit agreement" to violate Plaintiff's Fourteenth Amendment right to due process

under the United States Constitution is not sufficient.  Plaintiff's allegations concerning renewal

of MDA's contract do not demonstrate a conspiracy to deprive Plaintiff of his constitutional

rights.  (FAC at ¶ 179.)  While Plaintiff alleges the defendants all had personal knowledge of

certain facts, he does not allege sufficient factual support of a "meeting of the minds" to deprive

Plaintiff (or similarly situated individuals) of his constitutional rights.  *See Litmon v. Santa Clara*

*Cnty.*, No. C 00-20345 RMW (PR), 2008 WL 2242307, at *5 (N.D. Cal. May 29, 2008).

Accordingly, the Court dismisses Plaintiff's third claim for relief with leave to amend.

**F.  Punitive Damages**

Defendants assert that the Court should strike Plaintiff's demand for punitive damages,

arguing that punitive damages in a section 1983 claim against a local agency, such as a county or

1    municipality, are not recoverable.

2           Municipalities and local governments are "immune from punitive damages under [section]

3    1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266, 271 (1981); *Morton v. Cnty. of*

4    *San Diego*, No. 21-CV-1428-MMA (KSC), 2022 WL 1407124, at *11 (S.D. Cal. May 4, 2022)

5    ("[I]t is well-established that public entities are immune from punitive damages under § 1983 and

6    California law.").  Accordingly, to the extent the FAC seeks punitive damages against the County

7    of Merced (or the Merced County Board of Supervisors in their official capacities), any such

8    request is dismissed without leave to amend.[5]

9    **IV.     Conclusion and Order**

10          For the reasons stated, Defendants' motion to dismiss is GRANTED IN PART and

11   DENIED IN PART as follows:

12          1.  Defendants' motion to dismiss based on the statute of limitations is GRANTED

13              without prejudice.  To the extent he is able to do so in good faith, Plaintiff is granted

14              leave to amend to allege facts that may establish entitlement to equitable tolling of the

15              statute of limitations;

16          2.  Defendants' motion to dismiss based on absolute legislative immunity is DENIED;

17          3.  Defendants' motion to dismiss the *Monell* and deliberate indifference claims against

18              the County of Merced are DENIED;

19          4.  Defendants' motion to dismiss Plaintiff's third claim for relief regarding conspiracy is

20              GRANTED with leave to amend;

21          5.  Defendants' motion to dismiss Plaintiff's claims for punitive damages against the

22              County of Merced, or the Merced County Board of Supervisors in their official

23              capacities, is GRANTED without leave to amend; and

24   ///

25   _____

26   [5] Plaintiff's FAC seeks punitive and exemplary damages against Defendants Crookham, Kelsey, Pedrozo,
     and Walsh, Jr.  (*See* FAC at ¶ 182.b.)  These defendants are named in their individual and official

27   capacities.  (*See* FAC ¶¶ 56, 64, 72, 80.)  Punitive damages are not available against individual defendants
     in their official capacity. *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996) (defendants in official

28   capacity are immune from punitive damages).

1     Plaintiff may file an amended complaint not later than thirty (30) days from the electronic

2   filing date of this Order. Defendants shall file a responsive pleading not later than twenty-one

3   (21) days after Plaintiff files an amended complaint.

4

5   IT IS SO ORDERED.

6     Dated:   **March 22, 2023**                    /s/ *Barbara A. McAuliffe*

7                                          UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24