UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB PAYNE,<br><br>    Plaintiff,<br><br>v.<br><br>MERCED COUNTY PUBLIC DEFENDER'S OFFICE, et al.,<br><br>    Defendants. | Case No. 1:22-cv-00157-BAM<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS THOMAS PFEIFF AND CINDY MORSE'S RULE 12(b)(6) MOTION TO DISMISS<br><br>(Doc. 59) |

Currently before the Court is a motion to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Thomas Pfeiff and Cindy Morse (hereinafter "Defendants" or "Defendants Morse and Pfeiff") on May 5, 2023.[1]  (Doc. 59.) Plaintiff Jacob Payne ("Plaintiff") opposed the motion on May 27, 2023, and Defendants replied on June 5, 2023.  (Docs. 69, 70.)  Plaintiff also filed a notice of supplemental authority on September 22, 2023.  (Doc. 74.)  The Court found the motion suitable for decision without oral argument, vacated the noticed hearing, and deemed the matter submitted on the parties' papers.  (Doc. 72.)  For the reasons detailed below, Defendants' motion to dismiss will be granted in part and denied in part.

**I.  Background**

    **A.  Summary**

Plaintiff's action arises from his detention for more than eleven years pending trial on the

---

[1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Doc. 51.)

1 issue of whether he was a sexually violent predator ("SVP") under California Welfare and
2 Institutions Code section 6600, *et seq.* (*See* Second Amended Complaint ("SAC") at ¶ 1.) In
3 2007, the Merced County Superior Court detained Plaintiff on a petition alleging he qualified as a
4 SVP. The court appointed Merced County's Alternate Public Defender, Merced Defense
5 Associates ("MDA"),[2] to represent him. (*Id.* at ¶ 2.) Over the next eleven years, Plaintiff's
6 Alternate Public Defender, Mr. William Davis, never visited Plaintiff at Coalinga State Hospital
7 ("CSH") and only represented Plaintiff at two probable cause hearings. (*Id.* at ¶¶ 3-4.) The
8 superior court took two years to issue a ruling on the second probable cause hearing and the
9 matter was continued for eleven years. (*Id.* at ¶ 3.) Mr. Davis could not explain why the ruling
10 on Plaintiff's second probable cause hearing was delayed for so long, nor could he explain why
11 the matter was continued for eleven years, but he did confirm that "there was no strategic reason
12 for seeking continuances." (*Id.*) Mr. Davis also confirmed that Plaintiff was "persistent about
13 moving his case forward" after initially agreeing to a reasonable time for continuances to find
14 suitable expert witnesses. (*Id.*) In November 2018, after eleven years of continuances, the
15 Alternate Public Defender declared a conflict and the court appointed attorney Doug C. Foster to
16 represent Plaintiff. (*Id.* at ¶ 5.) Mr. Foster brought a motion to dismiss, alleging the delay of
17 eleven years from petition to probable cause finding violated Plaintiff's right to due process. The
18 court denied the motion, but set the matter for trial. (*Id.* at ¶¶ 109-10.) On February 4, 2020, less
19 than a year-and-a-half after Mr. Foster was appointed, a jury found the petition untrue. (*Id.* at ¶
20 7.) Plaintiff was detained for more than thirteen years before he was released from detention after
21 a jury found him not to be a SVP. (*Id.* at ¶ 10.)

**B. Indigent Defense Contract**

23 Defendant County of Merced entered into Merced County Contract No. 2003093 (the
24 "Merced Indigent Defense Contract") with the law firm of Morse, Pfeiff & Garcia, later MDA, in
25 2003 for a five-year term starting in fiscal year 2003/2004 and ending with fiscal year 2007/2008.

---

[2] Merced Defense Associates, or MDA, is reportedly a joint venture between the Law Offices of Morse & Pfeiff and The Garcia Law Firm, as well as its predecessor in interest to the contract for indigent defense services with the County of Merced, Morse, Pfeiff & Garcia. (SAC at ¶ 3, n. 2.)

The purpose of the contract was to provide legal defense to indigent civil commitment respondents in cases where the Merced Public Defender declared a conflict. The Morse, Pfeiff & Garcia law firm acted as both administrator of the contract and a provider of legal services. (SAC at ¶ 42, 120.) Prior to January 2004, the firm of Morse, Pfeiff & Garcia dissolved. Marc Garcia opened his own law office in Merced, known as the Garcia Law Firm and Defendant Pfeiff became partner in the Law Offices of Morse & Pfeiff. Concurrently, the Garcia Law Firm and the Law Offices of Morse & Pfeiff entered into a Joint Venture Agreement, signed by Defendants Pfeiff and Morse and their former partner, Marc Garcia. The joint venture came to be known as MDA. (SAC at ¶¶ 42, 112.b.)

In July 2007, a two-year extension to the contract was approved by the County of Merced, for fiscal year 2008/2009 through fiscal year 2009/2010. (SAC at ¶ 112.j.) In early October 2007, attorney Marc Garcia's judicial appointment was announced. On November 20, 2007, an agreement dissolving the joint venture was signed by attorney Garcia on behalf of the Garcia Law Firm and by Defendant Pfeiff on behalf of Morse & Pfeiff. (*Id.* at ¶ 112.k.) The joint venture agreement purported to dissolve the joint venture, but a separate one-page agreement specifying the financial terms was also executed by attorney Garcia and Defendant Pfeiff, which provided that MDA would pay Garcia $250,000 in monthly payments of $4,516 starting in January 2008, and that the payments would cease if Merced County terminated or did not renew the indigent defense services contract. (*Id.* at ¶ 112.l.) In January 2008, after taking the bench, Judge Garcia began receiving monthly payments that continued through August 2012. (*Id.* at ¶ 112.n.) Judge Garcia presided as the judicial officer at thirty-four status conferences involving Plaintiff's case, and on at least twenty-two occasions continued the case for another status conference with no good cause requested or shown. (*Id.* at ¶ 98.)

In October 2009, a three-year extension to the MDA contract was approved, from fiscal year 2010/2011 through fiscal year 2012/2013. In July 2011, a two-year extension was approved for fiscal years 2013/2014 and 2014/2015. (*Id.* at ¶ 112.q.)

In 2015, the Commission on Judicial Performance initiated formal proceedings against Judge Garcia for violating the Judicial Code of Ethics for accepting payments from the Alternate

1  Public Defender and not disclosing them.  Judge Garcia resigned on May 15, 2015.  (*Id.* at ¶¶
2  106, 112.t.)  Despite the Decision and Order of the State of California Commission on Judicial
3  Performance filed on May 18, 2015, Merced County amended and continued to renew its contract
4  with MDA on June 2, 2015, and again on June 28, 2016.  (*Id.* at ¶ 113.)

5  In 2017, Merced County did not renew MDA's contract and offered the Alternate Defense
6  contract to Ciummo and Associates, beginning on August 1, 2017.  (*Id.* at ¶¶ 107, 113.)

7  **II.     Defendants' Motion to Dismiss**

8  Plaintiff filed this civil rights action under 42 U.S.C. § 1983 on February 4, 2022, (Doc.
9  1), and filed his first amended complaint ("FAC") on April 28, 2022, (Doc. 19).  On March 22,
10 2023, the Court partially granted a motion to dismiss the FAC brought by Defendants County of
11 Merced, Kathleen Crookham, Deidre F. Kelsey, John Pedrozo, and Hubert Walsh Jr., and granted
12 Plaintiff leave to amend.  (Doc. 57.)  Plaintiff filed the SAC on April 21, 2023, which forwards a
13 claim for deliberate indifference in violation of his constitutional rights pursuant to 42 U.S.C. §
14 1983 against all defendants and a claim for municipal liability against Defendant County of
15 Merced.  (Doc. 58.)

16 Defendants Morse and Pfeiff now move to dismiss the SAC, asserting that (1) Plaintiff
17 cannot properly allege a § 1983 claim against them because they were not state officers, acting
18 under color of law; (2) Plaintiff has failed to show a causal connection between the deprivation of
19 his rights and the conduct of Defendants Morse and Pfeiff; (3) Plaintiff has failed to state a cause
20 of action under 42 U.S.C. § 1983 for deliberate indifference to constitutional violations; (4)
21 Plaintiff has failed to allege sufficient facts to implicate the doctrine of equitable tolling to save
22 his untimely claims; and (5) Plaintiff has failed to plead sufficient facts to constitute an award of
23 punitive damages.  (Docs. 59, 59-1.)

24 **III.    Legal Standard**

25 A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim, and
26 dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts
27 alleged under a cognizable legal theory.  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42
28 (9th Cir. 2011) (quotation marks and citations omitted).  To survive a motion to dismiss, a

4

complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (quotation marks omitted); *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and construe the pleading in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Meek v. Cty. of Riverside*, 183 F.3d 962, 965 (9th Cir. 1999). However, the court need not credit "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *See Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

**IV. Analysis**

**A. Judicial Notice**

As a threshold matter, in support of their motion to dismiss, Defendants ask the Court to take judicial notice of the following: (1) Plaintiff's complaint filed on February 4, 2022; (2)

Plaintiff's SAC filed on April 21, 2023; (3) the Court's Order dated March 22, 2023, partially granting the County of Merced's motion to dismiss; and (4) Plaintiff's motion to dismiss filed in Merced County Superior Court on December 4, 2019. (Doc. 59-2.)

As to matters filed on the Court's docket, including the complaint, SAC, and Order Granting in Part and Denying in Part Motion to Dismiss First Amended Complaint, the request for judicial notice is unnecessary and is DENIED as moot. *See*, *e.g.*, *McKeon v. Cent. Valley Cmty. Sports Found.*, No. 1:18-cv-00358-BAM, 2021 WL 5450276, at *1 n.1 (E.D. Cal. Nov. 22, 2021); *Harris by & through Lester v. Cty. of Sacramento*, No. 2:17-CV-02346- MCE-AC, 2018 WL 3752176, at *3 n.3 (E.D. Cal. Aug. 8, 2018) (finding request for judicial notice of a pleading on the court's own docket unnecessary); *Vang v. Lopey*, No. 2:16-cv-2172-JAM-CMK, 2017 WL 1540330, at *1 n.1 (E.D. Cal. Apr. 28, 2017) ('The Court does not need to take judicial notice of documents on its own docket."); *Ennis v. Mortg. Tree Lending, Inc.*, No. 2:08-cv-01301 GEB-EFB, 2009 WL 3642786, at *1 n.1 (E.D. Cal. Oct. 30, 2009) (denying motion for judicial notice as moot where documents were part of docket in the action).

However, the motion to dismiss filed in Merced County Superior Court by Douglas C. Foster, December 4, 2019, Case No. 150049, is a court record properly subject to judicial notice. *See* Fed. R. Evid. 201(b) (court may take judicial notice of fact that is not subject to reasonable dispute because it is (1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned); *see also MGIC Indem. Co. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir.1980); *Pierce v. Cantil-Sakauye*, No. C 13-01295 JSW, 2013 WL 4382735, at *3 (N.D. Cal. Aug. 13, 2013), aff'd, 628 F. App'x 548 (9th Cir. 2016) ("On a motion to dismiss pursuant to either Rule 12(b)(1) or Rule 12(b)(6), the Court may take judicial notice of court records in other cases.") Accordingly, Defendants' request for judicial notice of the motion to dismiss filed on December 4, 2019, is GRANTED. (Doc. 59-2, Ex. D.)

**B. Defendants Morse and Pfeiff may be held liable under Section 1983.**

Defendants contend that Plaintiff cannot properly allege a § 1983 claim against them because they were not state actors, acting under color of law—whether as private actors or as

private counsel.  (Doc. 59-1 at pp. 13-17; Doc. 70 at pp. 1-2.)

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988). Private parties are not generally acting under color of state law for the purposes of § 1983. *Price v. Hawaii*, 939 F.2d 702, 707–08 (9th Cir. 1991) ("Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power. It also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed").  However, "private parties may act under color of state law when they exercise powers traditionally held by the state."  *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 751 (9th Cir. 2020) (referencing *West*, 487 U.S. 42 (1988) and its holding that "a private contract physician rendering treatment services for prisoners at a state prison acted under color of law").  "[P]rivate parties may act under color of state law when they perform actions under which the state owes constitutional obligations to those affected."  Id. at 753.

In this case, the Court finds that Defendants Morse and Pfeiff are analogous to public defenders, having contracted with Defendant County of Merced to provide indigent defense services.³  The Supreme Court held in *Polk County v. Dodson*, 454 U.S. 312 (1981), that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." 454 U.S. at 325; *Taitano v. Cty. of Contra Costa*, No. C 11-1396 RMW (PR), 2011 WL 2193389, at *1 (N.D. Cal. June 6, 2011) ("A public defender does not act under color of state law, an essential element of an action under 42 U.S.C. § 1983, when performing a lawyer's traditional functions, such as entering pleas, making motions, objecting at trial, cross-examining witnesses, and making closing arguments.").  Under *Polk County*, "[a]lternate defenders, who handle cases when the public defender is not available, also

---

³ The contract indicated that the representation would be "of the kind usually and customarily provided by a public defender as a complete legal defense service in criminal cases for indigent defendants."  (SAC at ¶ 125.)

7

would not be acting under color of state law." *Taitano,* 2011 WL 2193389, at *1. Consistent with *Polk County*, Defendants Morse and Pfeiff are not state actors for purposes of § 1983 to the extent they are alleged to have engaged in traditional lawyer functions, such as failing to inform Plaintiff of his right to a speedy trial and his right to appear on his own behalf, failing to meaningfully challenge Plaintiff's civil commitment, failing to object to hearsay relied on at Plaintiff's probable cause hearings, and failing to timely bring Plaintiff's Sexually Violent Predator Act ("SVPA") petition to trial. (SAC at ¶ 188.) Accordingly, insofar as Plaintiff's allegations relate to the performance of a lawyer's traditional functions against Defendants Morse and Pfeiff, the motion to dismiss is GRANTED. Dismissal is without leave to amend as this deficiency cannot be cured by the allegation of additional facts. *Lopez*, 203 F.3d at 1130.

This determination does not end the Court's inquiry, however, because *Polk County* left open the possibility that a public defender may be liable under § 1983 for "administrative and possibly investigative functions." *Polk County*, 454 U.S. at 324–25 (noting that a public defender acted under state law when making hiring and firing decisions on behalf of the State); *Tatiano*, 2011 WL 2193389, at *1. The Ninth Circuit affirmed this possibility in *Miranda v. Clark County*, 319 F.3d 465 (9th Cir. 2003), determining that a plaintiff's complaint stated a valid claim against a public defender's office based on an alleged policy of allocating resources on the basis of apparent guilt or innocence and an alleged policy of assigning the least-experienced attorneys to capital cases without providing any training. 319 F.3d at 469-71. The Ninth Circuit explained that, in determining how office resources were to be spent, the public defender's office was performing an administrative role that "materially differ[ed] from the relationship inherent in a public defender's representation of an individual client." *Id.* at 469. The Ninth Circuit also determined that the allegation of "a deliberate pattern and policy of refusing to train lawyers for capital cases known to the county administrators to exert unusual demands on attorneys" was sufficient to create a claim of deliberate indifference to constitutional rights in the failure to train lawyers to represent clients accused of capital offenses. *Id.* at 471.

Here, Defendants Morse and Pfeiff did not appear as counsel for Plaintiff or otherwise represent him in the SVP proceedings. (SAC at ¶¶ 23, 35.) Their liability is based, in part, on

their roles as administrators of the contract and supervisors of the contract attorneys hired to fulfill the terms of the indigent defense contract. (*Id.* at ¶¶ 23, 35.) To that end, the SAC alleges that Defendants Morse and Pfeiff were required to "generate written practices and procedures to govern all attorneys providing services" under the contract, to ensure that each attorney providing services under the agreement be provided professional training, to secure budget allocations for specific units, personnel needs, and cases within the office, and to undertake all necessary measures to ensure that any case assigned to MDA would be brought to trial in a timely manner. (*Id.* at ¶¶ 25, 37.) The SAC also alleges that Defendants Morse and Pfeiff "knowingly refused to terminate the acts, customs, practices, and misconduct of their subordinates, which they knew were causing and would cause constitutional injury upon the SVPA detainees in their charge." (*Id.* at ¶ 195.) Additionally, the SAC alleges that Defendants Morse and Pfeiff "failed to take reasonable measures to institute internal measures and training programs for Alternate Public Defenders with respect to SVPA detainees to ensure their attorneys fulfilled their ethical duties to zealously protect the interests of their clients, failed to address the long delays in getting SVPA cases to trial, failed to institute new training of their subordinates in the management of SVPA cases so as to ensure that SVPA cases got to trial in a timely fashion, and failed to discipline their subordinates for failing to get the SVPA cases to trial in a timely fashion." (*Id.*) These allegations suggest that Defendants were "not performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding," and were instead performing administrative functions. *See Polk County*, 454 U.S. at 325; *Miranda,* 319 F.3d at 469; *see also Williams v. Garcia*, No. 2:21-cv-08077-MEMF (PLAx), 2023 WL 2139655, at *8 (C.D. Cal. Feb. 17, 2023) (concluding that the failure to expedite SVP trials and "[i]nstitute tighter controls over supervisors" is more akin to the administrative "hiring and firing decisions" for which public defenders may be held liable). The Court therefore finds that Defendants Morse and Pfeiff qualify as state actors for purposes of § 1983 when performing essentially an administrative role on behalf of the County of Merced.

Defendants Morse and Pfeiff rely on *Gausvik v. Perea*, 239 F.Supp.2d 1047 (E.D. Wash. 2022), to argue that they are not state actors for purposes of § 1983. (Doc. 59-1 at p. 16.) In

*Gausvik*, the court determined that a private law firm and its attorneys, who contracted with the county to provide public defender services, were not state actors for § 1983 purposes. The court explained that plaintiff's dispute was with how the private attorney discharged his functions as a lawyer on behalf of the plaintiff and reasoned, consistent with *Polk County*, that a public defender is not a "state actor" when he acts a lawyer on behalf of an indigent criminal defendant. *Id.* at p. 1065-66. The *Gausvik* court further surmised that the failure to supervise and train defenders to properly discharge their lawyerly functions resulting in ineffective assistance of counsel was indistinguishable from lawyerly functions themselves, therefore falling under the ambit of *Polk County*. *Id.*

The Court agrees with *Gausvik* to the extent it holds that public defenders are not state actors when acting as lawyers on behalf of indigent criminal defendants. *Id.* at p. 1065-66. However, the Court finds *Gausvik* unpersuasive and distinguishable related to the alleged failure to supervise and train public defenders. Defendants here are alleged not only to have failed to supervise and train alternate public defenders, but also are alleged to be involved in budget allocation, and in the failure to address the long delays in getting SVPA cases to trial and in the failure to discipline their subordinates. *Gausvik* is also inconsistent with case law, noted above, likening the "failure to expedite SVP trials" and the failure to "[i]nstitute tighter controls over supervisors" more akin to the administrative "hiring and firing decisions" for which public defenders may be held liable. *See Williams*, 2023 WL 2139655, at *8. Accordingly, insofar as Defendants Morse and Pfeiff qualify as state actors for purposes of § 1983 when performing administrative functions, the motion to dismiss is DENIED.

**C. Plaintiff has adequately alleged a causal connection between Defendants' alleged conduct and his deprivation.**

Defendants Morse and Pfeiff argue that Plaintiff has failed to adequately and specifically allege how they "personally and separately deprived him of a constitutional right." (Doc. 59-1 at p. 17.)

Section 1983 requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of*

10

*Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In other words, to state a claim for relief under § 1983, Plaintiff must link each named Defendant with some affirmative act or omission that demonstrates a violation of his federal rights.

Plaintiff contends that Defendants' argument ignores allegations in the SAC "describing how Defendants Morse and Pfeiff each personally and separately agreed to hide their payments to Judge Garcia from the County of Merced and from their clients, including Mr. Payne, while he was presiding over their cases."  (Doc. 69 at p. 16, citing SAC ¶¶ 110, 111.)  Plaintiff also contends that the SAC alleges that Defendants Morse and Pfeiff "each personally and separately accepted more than $13 million in payments on behalf of their law firm MDA, while providing monthly reports that identified the name of their client, Mr. Payne, to the County as an SVP for over a decade." (*Id.* at pp. 16-17.)  Defendants contend that these allegations do not specifically allege how these actions are directly linked to Plaintiff's alleged unlawful detention.

Notwithstanding this argument, the Court finds that the SAC includes factual allegations that link the conduct or omissions of Defendants Morse and Pfeiff to a violation of Plaintiff's constitutional rights to a speedy SPVA trial.  *Miranda*, 319 F.3d at 470 (where public defender was deemed state actor performing administrative role in resource allocation policy, remaining question was whether the alleged policy resulted in deprivation of the plaintiff's constitutional rights to effective representation of counsel); *Williams*, 2023 WL 2139655, at *8  (where public defender defendants were performing administrative function in failing to expedite SVP trials and institute tighter controls over supervisors, remaining question was whether the alleged policy resulted in deprivation of the plaintiff's constitutional rights) (citing *Miranda*, 319 F.3d at 470). Here, Plaintiff alleges that Defendants Morse and Pfeiff had duties under the indigent defense contract to ensure that competent and diligent counsel were available for indigent defendants and to develop training programs for Alternate Public Defenders.  (SAC at ¶¶ 21, 25b., 33, 37.b.) The

SAC further alleges that Defendants' failure to institute training programs for SVPA attorneys to ensure that Plaintiff's trial would take place in a timely manner and the failure to ensure that Plaintiff received competent and diligent counsel allowed Plaintiff "to be held as a pre-trial detainee for such an inordinately long period of time that his due process rights were violated." (SAC at ¶ 188.) Implicit in the allegations is that Defendants Morse and Pfeiff financially benefitted from delay in SVPA trials by obtaining continued payments under the Merced Indigent Defense Contract.

Additionally, the SAC alleges that Defendants Morse and Pfeiff met regularly with the County of Merced to discuss and carry out the administration of the indigent defense contract and that these meetings included discussions about the Alternate Public Defender's case load, including its SVP cases, individual cases handled by the Alternate Public Defender, including Plaintiff's case, and the extended periods that SVP detainees were being detained as they awaited trial. (SAC at ¶¶ 28, 40.) The SAC alleges that based on these obligations under the indigent defense service contract, Defendants Morse and Pfeiff were specifically aware that their subordinates and Alternate Public Defenders were not providing diligent counsel to their SVPA clients and that the failure to bring those clients to trial violated their constitutional rights. (SAC at ¶¶ 189-90.)

Defendants acknowledge that Plaintiff's claim against them arises "out of their alleged failure to provide any 'supervision on Mr. Payne's case or training to his contract attorney.'" (Doc. 70 at p. 7.) A "failure to train" or "failure to supervise" theory can be the basis for liability under § 1983 where the failure amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact. *See Miranda*, 319 F.3d at 471; *Canell v. Lightner*, 143 F.3d 1210, 1213-14 (9th Cir. 1998); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387–90 (1989). To establish a failure-to-train/supervise claim, a plaintiff must show that in light of the duties assigned to specific employees, the need for more or different training or supervision was obvious, and the inadequacy of the training or supervision was so likely to result in violations of constitutional rights, that the supervisor can reasonably be said to have been deliberately indifferent to the need. *See Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (standard for

failure to train theory of liability); *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) (stating the standard for failure to train liability is also the standard for failure to supervise liability). In order to demonstrate that the need for additional or different supervision was obvious, a plaintiff must usually demonstrate that there has been a pattern of constitutional violations by the inadequately supervised subordinate. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011).

As discussed above, the SAC alleges a systemic breakdown in the representation and a pattern and practice of Defendants in failing to train and supervise alternate public defenders in the management of SVPA cases despite knowing of the extended periods that Plaintiff and other SVP detainees were being detained as they awaited trial   This is sufficient to create a claim of deliberate indifference to constitutional rights in the failure to train and supervise lawyers to represent SVPA clients.  *See Miranda*, 319 F.3d at 471 (concluding allegations of deliberate pattern and policy of refusing to train lawyers for capital cases known to county administrators to exert unusual demands on attorneys sufficient to create a claim of "deliberate indifference to constitutional rights" in the failure to train lawyers to represent clients accused of capital offenses).

**D.  Plaintiff states a claim for deliberate indifference to constitutional violations.**

The parties agree that to show deliberate indifference, Plaintiff must demonstrate that Defendants Morse and Pfeiff "were on actual or constructive notice that their omission would likely result in a constitutional violation." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1145 (9th Cir. 2012).  The parties disagree, however, as to whether Plaintiff has adequately alleged actual or constructive notice.  Defendants contend that Plaintiff has not and cannot allege that Defendant Morse and Pfeiff had actual or constructive notice of any omission on their part, let alone that such alleged omission would result in a constitutional violation. (Doc. 59-1 at p. 18.)  Plaintiff counters that the SAC alleges more than sufficient facts to show Defendants Morse and Pfeiff were on both actual and constructive notice. (Doc. 69 at p. 14.)

Here, the SAC alleges that Defendants Morse and Pfeiff monitored Plaintiff's civil commitment proceedings from at least as early as 2009, when an MDA Contract Attorney was

1 appointed, at least until the MDA contract was terminated by the County of Merced in September
2 2017. (SAC at ¶¶ 26, 38.) The SAC also alleges that Defendants Pfeiff and Morse met regularly
3 with the County of Merced to discuss and carry out the administration of the Merced Indigent
4 Defense Contract and these meetings included discussions about the Alternate Public Defender's
5 case load, including its SVP cases, individual cases handled by the Alternate Public Defender,
6 including Plaintiff's case, and the extended periods that SVP detainees were being detained as
7 they awaited trial. (SAC at ¶¶ 28, 40.) As Plaintiff suggests, it is reasonable to infer from their
8 reporting to the County that Defendants Morse and Pfeiff were aware of Plaintiff's lengthy
9 detention and that of other SVPA detainees. And, implicit in the allegations is that Defendants
10 Morse and Pfeiff financially benefitted from the trial delays. The SAC also alleges that in light of
11 the requirements of the indigent defense contract, Defendants Morse and Pfeiff were on
12 constructive notice that their failure to provide supervision or training would likely result in a
13 breach of their obligations under the contract and, in turn, a violation of Plaintiff's and other
14 SVPA detainees' constitutional rights.

15       The Court concludes that the SAC contains factual allegations from which it could be
16 reasonably inferred that Defendants Morse and Pfeiff had actual or constructive notice that their
17 omissions would result in a constitutional violation sufficient to state a claim for deliberate
18 indifference.

19       **E. Statute of Limitations and Equitable Tolling**

20       Defendants contend that this Court previously recognized that Plaintiff's claims fell
21 outside the two-year statute of limitations and allowed Plaintiff to amend his complaint to allege
22 equitable tolling. Defendants now argue that Plaintiff has failed to allege sufficient facts to
23 implicate the doctrine of equitable tolling. (Doc. 59-1 at p. 19) In opposition, Plaintiff generally
24 incorporates by reference his arguments in responding to the County of Merced's motion to
25 dismiss. (Doc. 69 at pp. 18-19.) The parties are familiar with these arguments, which are further
26 detailed in the Court's concurrent order on Defendant County of Merced's motion to dismiss the
27 SAC. For the same reasons discussed in the Court's order denying Defendant County of
28 Merced's motion to the dismiss the SAC, Defendants' motion to dismiss on statute of limitations

and equitable tolling grounds is DENIED.[4]

As to Defendants' specific assertions regarding equitable tolling, the Court has explained that because equitable tolling is a fact-specific question, it must be resolved in a motion for summary judgment. *See Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206–07 (9th Cir. 1995) (a motion for summary judgment is the proper procedure to evaluate the expiration of the statute of limitations when the inquiry turns on disputed facts; the equitable-tolling doctrine generally is not amenable to resolution in a motion to dismiss under Rule 12(b)(6); "[i]n fact, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim"); *see also Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1004 (9th Cir. 2006) ("Generally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Fed. R. Civ. P. 12(b)(6) motion to dismiss (where review is limited to the complaint) if equitable tolling is at issue."); *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993) ("California's fact-intensive test for equitable tolling is more appropriately applied at the summary judgment or trial stage of litigation."); *Saragoza v. Doe No. 1*, No. 1:23-cv-00355-BAM (PC), 2023 WL 4239228, at *1 (E.D. Cal. June 28, 2023) (Equitable tolling is typically a "fact-intensive" inquiry that "is more appropriately [considered] at the summary judgment or trial stage of litigation.") (quoting *Cervantes*, 5 F.3d at 1276).

### F.  Punitive Damages

Defendants argue that Plaintiff has failed to allege facts sufficient to constitute an award of punitive damages against them. The Court disagrees.  Under federal law, "[p]unitive damages may be awarded in 42 U.S.C. § 1983 cases if a defendant's conduct is driven by an evil motive or intent, or when it involves a reckless or callous indifference to the constitutional rights of others." *Booke v. Cty. of Fresno*, 98 F. Supp. 3d 1103, 1131 (E.D. Cal. 2015).  The SAC contains factual allegations from which it could be reasonably inferred that Defendants Morse and Pfeiff acted

---

[4] Given the Court's determination, it is unnecessary to reach Plaintiff's additional argument that delayed discovery postponed accrual of his claims that are alleged to be caused by the customs, practices, and policies of Defendants.  (Doc. 69 at p. 20.)

with at least "reckless or callous indifference" to Plaintiff's constitutional rights.  For example, the SAC alleges, among other things, that the Alternate Public Defender's contract was negotiated with consideration for the number of cases on which the court would appoint the Alternate Public Defender and the prolonging of Mr. Payne's case helped the Alternate Public Defender maintain an appearance of a greater number of cases.  (SAC at ¶ 97.)  The SAC also alleges that Defendants Morse and Pfeiff were aware of the inordinate and excessive delay that Plaintiff and other SVPA detainees were experiencing in the processing of their cases and that Plaintiff's case and the other cases were not being brought to trial on a timely basis. (*Id.* at ¶ 193.)  The SAC also alleges that despite knowing of the delays in bringing Plaintiff to trial, Defendants failed to take any reasonable measures to ensure that Plaintiff's constitutional rights were protected and refused to terminate or correct the acts of subordinates, which they knew were causing constitutional injury.  (*Id.* at ¶¶ 192-93, 195.)  Accordingly, Defendants' motion to dismiss Plaintiff's request for punitive damages is DENIED.

### V. Conclusion and Order

For the reasons stated, Defendants' motion to dismiss, (Doc. 59), is granted in part without leave to amend and denied in part.  Defendants shall file an Answer to Plaintiff's second amended complaint within twenty-one days of the service of this order.

IT IS SO ORDERED.

Dated:   **January 11, 2024**              /s/ *Barbara A. McAuliffe*
                                    UNITED STATES MAGISTRATE JUDGE