1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JACOB PAYNE,                          Case No.  1:22-cv-00157-BAM

12              Plaintiff,                   ORDER GRANTING DEFENDANT
                                            COUNTY OF MERCED'S MOTION FOR
13         v.                               SUMMARY JUDGMENT

14    MERCED COUNTY PUBLIC                   (Doc. 119)
      DEFENDER'S OFFICE, *et al.*,
15
                Defendants.
16

17         Currently before the Court is Defendant County of Merced's ("County") motion for

18    summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Doc. 119.)

19    Plaintiff Jacob Payne filed his opposition brief to the motion on August 11, 2025, (Doc. 126), and

20    filed untimely documents in support of his opposition on August 12, 2025, (Docs. 128, 129, 130),

21    along with a notice of errata containing Plaintiff's "Corrected Response" to the County's motion,

22    (Docs. 131, 131-1).  The County filed its reply on August 21, 2025.  (Doc. 134.)  The Court

23    deemed the matter suitable for decision without oral argument under Local Rule 230(g) and

24    vacated the hearing set for September 5, 2025.[1]  (Doc. 136.)

25         For the reasons stated below, the County's motion for summary judgment will be granted.

26    ///

27    _____

28    [1] The parties have consented to magistrate judge jurisdiction over this action for all purposes,
      including trial and entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1).

                                          1

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

2    Plaintiff asserts that his constitutional rights were violated because he was detained for

3 more than eleven years pending trial on whether he was a sexually violent predator ("SVP")

4 under California Welfare and Institutions Code section 6600, *et seq.*

5    Sexually Violent Predator Act

6    The Sexually Violent Predator Act ("SVPA") authorizes the involuntary commitment of

7 certain convicted sex offenders, or SVPs, "who are found to have mental disorders that make

8 them likely to reoffend after release from prison." *Camacho v. Superior Ct.*, 15 Cal. 5th 354, 367

9 (2023).  To be committed as an SVP, the individual must (1) have been convicted of a qualifying

10 sexually violent offense, and (2) have a diagnosed mental disorder that makes the person a danger

11 to the health and safety of others in that it is likely that the individual will engage in sexually

12 violent criminal behavior. Cal. Welf. & Inst. Code § 6600(a)(1).  If two practicing psychiatrists or

13 psychologists from the Department of State Hospitals ("DSH") agree that the individual meets the

14 statutory definition of an SVP, then DSH forwards a request for a petition for commitment by the

15 district attorney. *Id.* § 6601. After an SVP petition is filed, the state trial court judge reviews the

16 petition to determine whether it "contains sufficient facts that, if true, would constitute probable

17 cause" that the person meets the definition of an SVP.  *Id.* § 6601.5.  If the court determines that

18 the petition, on its face, supports a finding of probable cause, then the court must hold a probable

19 cause hearing within 10 days, absent good cause for extending the time period.  *Id.* §§ 6601.5,

20 6602; *Camacho*, 15 Cal. 5th at 370.  If probable cause is found, then the individual is detained in

21 a secure facility pending trial.  *Id.* §6601.5, 6602; *Camacho*, 15 Cal. 5th at 370.  "The statute does

22 not specify a fixed deadline by which trial must occur." *Camacho*, 15 Cal. 5th at 370. If the

23 individual is found at trial to be an SVP, then he is committed to a state hospital for an indefinite

24 term. *People v. Orey*, 63 Cal. App. 5th 529, 539 (2021).  However, a person who is committed as

25 an SVP must be reexamined annually by a qualified mental health professional to determine

26 whether commitment is still appropriate.  Cal. Welf. & Inst. Code § 6604.9(a), (b).

27    Underlying SVP Proceedings

28    In the Second Amended Complaint, Plaintiff alleges that the Merced County Superior

2

1    Court detained him on a petition alleging he qualified as an SVP in 2007.  (Doc. 58, Second

2    Amended Complaint ("SAC") ¶ 2.)  The court appointed Merced County's Alternate Public

3    Defender, Merced Defense Associates ("MDA"),[2] to represent him.  (*Id.*)  MDA assigned the case

4    to attorney William Davis.  Over the next eleven years, Plaintiff's Alternate Public Defender, Mr.

5    Davis, never visited Plaintiff at Coalinga State Hospital ("CSH") and only represented Plaintiff at

6    two probable cause hearings.  (*Id.* ¶¶ 3-4.)  The superior court took two years to issue a ruling on

7    the second probable cause hearing, and the matter was continued for eleven years.  (*Id.* ¶ 3.)  Mr.

8    Davis could not explain why the ruling on Plaintiff's second probable cause hearing was delayed

9    for so long, nor could he explain why the matter was continued for eleven years, but he did

10   confirm that "there was no strategic reason for seeking continuances."  (*Id.*)  Mr. Davis also

11   confirmed that Plaintiff was "persistent about moving his case forward" after initially agreeing to

12   a reasonable time for continuances to find suitable expert witnesses.  (*Id.*)

13           In November 2018, after eleven years of continuances, the Alternate Public Defender

14   declared a conflict, and the court appointed attorney Doug C. Foster to represent Plaintiff.  (SAC

15   ¶ 5.)  Mr. Foster set the matter for a speedy trial motion/motion to dismiss, arguing that the

16   eleven-year delay violated Plaintiff's right to due process.  (*Id.* ¶¶ 6, 109.)  The Superior Court

17   denied the motion but set the matter for trial.  (*Id.* ¶¶ 109-10.)

18           On February 4, 2020, less than a year-and-a-half after Mr. Foster was appointed, a jury

19   found the petition untrue.  (SAC ¶ 7.)  Plaintiff had been detained for more than thirteen years

20   before he was released from detention after a jury found him not to be an SVP.  (*Id.* ¶ 10.)

21           Indigent Defense Contract

22           According to the SAC, the County entered into Merced County Contract No. 2003093 (the

23   "Merced Indigent Defense Contract") with the law firm of Morse, Pfeiff & Garcia, later MDA, in

24   2003 for a five-year term starting in fiscal year 2003/2004 and ending with fiscal year 2007/2008.

25   The purpose of the contract was to provide legal defense to indigent civil commitment

26

27   [2] Merced Defense Associates, or MDA, is reportedly a joint venture between the Law Offices of Morse &
     Pfeiff and The Garcia Law Firm, as well as its predecessor in interest to the contract for indigent defense
28   services with the County of Merced, Morse, Pfeiff & Garcia.  (SAC ¶ 3, n. 2.)

1   respondents in cases where the Merced Public Defender declared a conflict. The Morse, Pfeiff &

2   Garcia law firm acted as both administrator of the contract and a provider of legal services. (SAC

3   ¶ 42, 120.) Prior to January 2004, the firm of Morse, Pfeiff & Garcia dissolved. Marc Garcia

4   opened his own law office in Merced, known as the Garcia Law Firm and Defendant Thomas

5   Pfeiff became partner in the Law Offices of Morse & Pfeiff. Concurrently, the Garcia Law Firm

6   and the Law Offices of Morse & Pfeiff entered into a Joint Venture Agreement, signed by

7   Defendants Pfeiff and Cindy Morse and their former partner, Marc Garcia. The joint venture

8   came to be known as MDA. (SAC ¶¶ 42, 112.b.)

9       In July 2007, a two-year extension to the contract was approved by the County, for fiscal

10   year 2008/2009 through fiscal year 2009/2010. (SAC ¶ 112.j.) In early October 2007, attorney

11   Marc Garcia's judicial appointment was announced. On November 20, 2007, an agreement

12   dissolving the joint venture was signed by attorney Garcia on behalf of the Garcia Law Firm and

13   by Defendant Pfeiff on behalf of Morse & Pfeiff. (*Id.* ¶ 112.k.) The joint venture agreement

14   purported to dissolve the joint venture, but a separate one-page agreement specifying the financial

15   terms was also executed by attorney Garcia and Defendant Pfeiff, which provided that MDA

16   would pay Garcia $250,000 in monthly payments of $4,516 starting in January 2008, and that the

17   payments would cease if Merced County terminated or did not renew the indigent defense

18   services contract. (*Id.* ¶ 112.l.) In January 2008, after taking the bench, Judge Garcia began

19   receiving monthly payments that continued through August 2012. (*Id.* ¶ 112.n.) Judge Garcia

20   presided as the judicial officer at thirty-four status conferences involving Plaintiff's case, and on

21   at least twenty-two occasions continued the case for another status conference with no good cause

22   requested or shown. (*Id.* ¶ 98.)

23       In October 2009, a three-year extension to the MDA contract was approved, from fiscal

24   year 2010/2011 through fiscal year 2012/2013. In July 2011, a two-year extension was approved

25   for fiscal years 2013/2014 and 2014/2015. (*Id.* ¶ 112.q.)

26       In 2015, the Commission on Judicial Performance initiated formal proceedings against

27   Judge Garcia for violating the Judicial Code of Ethics for accepting payments from the Alternate

28   Public Defender and not disclosing them. Judge Garcia resigned on May 15, 2015. (SAC ¶¶ 106,

112.t.)  Despite the Decision and Order of the State of California Commission on Judicial

Performance filed on May 18, 2015, Merced County amended and continued to renew its contract

with MDA on June 2, 2015, and again on June 28, 2016.  (*Id.* ¶ 113.)

In 2017, Merced County did not renew MDA's contract and offered the Alternate Defense

contract to Ciummo and Associates, beginning on August 1, 2017.  (*Id.* ¶¶ 107, 113.)

Procedural Background

Plaintiff initiated this civil rights action under 42 U.S.C. § 1983 for violation of Plaintiff's

due process rights under the Fourteenth Amendment on February 4, 2022.  (Doc. 1).  Plaintiff

filed a first amended complaint ("FAC") on April 28, 2022, against Defendants County, Pfeiff,

Morse, Kathleen Crookham, Deidre F. Kelsey, John Pedrozo, and Hubert Walsh Jr.  (Doc. 19.)

On March 22, 2023, the Court partially granted a motion to dismiss the FAC brought by

the County, Kathleen Crookham, Deidre F. Kelsey, John Pedrozo, and Hubert Walsh Jr., and

granted Plaintiff leave to amend.  (Doc. 57.)  Plaintiff filed the SAC on April 21, 2023.  (Doc.

58.)

On January 11, 2024, the Court denied a motion to dismiss the SAC brought by the

County, Kathleen Crookham, Deidre F. Kelsey, John Pedrozo, and Hubert Walsh, Jr.  (Doc. 77.)

The Court also partially granted a motion to dismiss the SAC brought by Morse and Pfeiff,

dismissing, without leave to amend, allegations relating to the performance of a lawyer's

traditional functions against them.  (Doc. 78.)

On July 21, 2025, the parties stipulated to dismiss defendants Kathleen Crookham, Deidre

F. Kelsey, John Pedrozo, and Hubert Walsh, Jr.  (Doc. 114.)  This action therefore proceeds only

on Plaintiff's claim for deliberate indifference to his due process rights under the Fourteenth

Amendment pursuant to 42 U.S.C. § 1983 against defendants Morse, Pfeiff, and the County and

his claim for municipal liability against the County.  (Doc. 58.)

The County now seeks summary judgment, arguing that Plaintiff's § 1983 action is barred

by the doctrine of collateral estoppel, his *Monell* claim should be dismissed, and his claims are

barred by the statute of limitations.  (Doc. 119-1.)

///

1    **II.    REQUESTS FOR JUDICIAL NOTICE**

2         Relevant here, the County requests the Court take judicial notice of court documents from

3    the proceedings in *People v. Jacob Joseph Payne*, Merced County Superior Court Case No.

4    150049, including petitions, hearing transcripts, briefings, and court orders.  (Doc. 122-33.)

5    A court make take judicial notice of court filings and other matters of public record.  *See Bias v.*

6    *Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442

7    F.3d 741, 746 n.6 (9th Cir. 2006).  All documents at issue are court filings and records from

8    Merced County Superior Court.  Accordingly, the County's request for judicial notice as to

9    Exhibits A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, and P is GRANTED.  The Court will take

10    judicial notice of the existence and content of the included records.

11         Similarly, Plaintiff requests the Court take judicial notice of California State Court records

12    from the County of Merced, Exhibits 1, 8, 9, 10, 11, 13, 16, 18 and 19. (Doc. 130-4.)  To the

13    extent these exhibits are state court records from the proceedings in *People v. Jacob Joseph*

14    *Payne*, Merced County Superior Court Case No. 150049, including filings, minutes, and orders,

15    Plaintiff's request for judicial notice is GRANTED.

16         Plaintiff also requests the Court take judicial notice of (1) government documents from the

17    County of Merced; and (2) and the complaint filed in the matter of *Mayfield v. County of Merced*,

18    *et al.*, 1:13-cv-01619-DAD-BAM.  (Doc. 130-4.)  Plaintiff's request for judicial notice as to these

19    records is DENIED.  The Court did not rely on these records as material or relevant in reaching

20    its determination.

21    **III.    EVIDENTIARY OBJECTIONS**

22         The County submits objections to certain of Plaintiff's evidence submitted in opposition

23    to the motion for summary judgment.  (Doc. 134.)  This evidence includes the Register of Actions

24    for Ciro Camacho, the Register of Actions for James Brown, the Register of Actions for Durward

25    Jones, II, and portions of the declaration of Jacob Payne in opposition to summary judgment.

26    (*Id.*)

27         It is not this Court's practice to rule on evidentiary matters individually in the context of

28    summary judgment, unless otherwise noted.  *See Capitol Records, LLC v. BlueBeat, Inc.*, 765 F.

1    Supp. 2d 1198, 1200 n. 1 (C.D. Cal. 2010) (noting that it is often unnecessary and impractical for

2    a court to methodically scrutinize and give a full analysis of each evidentiary objection on a

3    motion for summary judgment); *Burch v. Regents of the Univ. of Cal*., 433 F. Supp. 2d 1110,

4    1118–22 (E.D. Cal. 2006).  "[O]bjections to evidence on the ground that it is irrelevant,

5    speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all

6    duplicative of the summary judgment standard itself" and "[the court] cannot rely on irrelevant

7    facts, and thus relevance objections are redundant." *Burch* 433 F. Supp. 2d at 1119.

8        Unless otherwise noted, the Court overrules relevance and materiality objections at this

9    stage, without prejudice.  The Court also finds it unnecessary to rule on the County's objections

10    to the evidence described above, including certain portions of the declaration of Jacob Payne in

11    opposition to summary judgment as "sham testimony," (*see* Doc. 134).  Unless otherwise noted,

12    the Court has not relied on that evidence either as relevant or material in reaching its

13    determination.

14        **IV.**     **MOTION FOR SUMMARY JUDGMENT**

15          **A. Undisputed Material Facts**

16        The facts set forth below are uncontroverted.[3]  As necessary, the Court discusses further

---

[3] In determining which facts are undisputed, the Court relies on the parties' Joint Statement of Undisputed Facts, (Doc. 119-3), and the Statement of Undisputed Facts in Support County of Merced's Motion for Summary Judgment or, in the alternative, Partial Summary Judgment, (Doc. 119-2).

Plaintiff failed to properly respond to the Statement of Undisputed Facts in Support of County of Merced's Motion for Summary Judgment or, in the alternative, Partial Summary Judgment.  Local Rule 260(b) requires as follows:

> Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial. The opposing party may also file a concise "Statement of Disputed Facts," and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication.

L.R. 260(b).  Plaintiff did not reproduce Defendant's itemized facts, admit or deny those facts, or provide a statement of disputed facts.  Because Plaintiff has not complied with Rule 260(b), the Court deems Plaintiff to have admitted the facts in Defendant's statement.  *See*, *e.g.*, *Felix v. Cazores*, No. 1:24-cv-00332-JLT-SKO, 2025 WL 2718634, at *5 (E.D. Cal. Sept. 24, 2025) ("Because Plaintiff has not

1  factual details in its analysis.  The parties' legal conclusions, arguments, and assertions are not

2  considered facts.

3      On February 7, 2007, the District Attorney's Office for Merced County filed a Petition for

4  Commitment as a Sexually Violent Offender Pursuant to WIC §6600, *et seq.* against Plaintiff in

5  the Superior Court of California, County of Merced.  (Doc. 119-3, Joint Statement of Undisputed

6  Facts ("JSUF") 1.)  On February 13, 2007, the Merced Public Defender's Office declared a

7  conflict and on February 16, 2007, the Superior Court appointed conflict counsel, William Davis,

8  a contract attorney with MDA to represent Plaintiff.[4]  (JSUF 2.)  The Superior Court found

9  probable cause existed on July 13, 2007.  (JSUF 4.)

10     On September 15, 2016, a second probable cause hearing was held.  (JSUF 5.)

11     In 2017, the law firm Ciummo & Associates was awarded the indigent defense contract

12  for conflicts cases for the County of Merced and has held the contract from 2017 to the present.

13  (JSUF 6.)  Ciummo & Associates contracted with Mr. Davis to continue his representation of

14  Plaintiff when the indigent defense contract was awarded to Ciummo & Associates in 2017.

15  (JSUF 7.)

16     On July 13, 2018, the Superior Court issued a ruling on the second probable cause hearing

17  ───────────────

18  complied with Rule 260(b), the Court deems Plaintiff to have admitted those facts."); *Brito v. Barr*, No.
    2:18-cv-00097-KJM-DB, 2020 WL 4003824, at *6 (E.D. Cal. July 15, 2020) (explaining court's

19  prerogative to treat a failure to comply with Local Rule 260(b) by not responding to defendant's statement
    of undisputed facts as an outright admission).  However, where Plaintiff's evidence submitted in support

20  of his opposition to the County's motion for summary judgment brings the County's proffered facts into
    dispute, the Court nonetheless has considered any such evidence in its discussion and analysis.  *See Felix*,

21  2025 WL 2718634, at *5.

22     To the extent Plaintiff "assumes the Court has read Plaintiff's facts set forth in Plaintiff's
    Opposition to Morse and Pfeiff's MSJ, and incorporates them," (Doc. 131-1 at 7), the Court will not

23  undertake to scour the record for triable issues of fact. *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011,
    1017 (9th Cir. 2010), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th

24  Cir. 2016).  The parties bear the burden of supporting their motions and oppositions with the papers they
    wish the Court to consider and/or by specifically referencing any other portions of the record for

25  consideration. *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The
    district court need not examine the entire file for evidence establishing a genuine issue of fact, where the

26  evidence is not set forth in the opposing papers with adequate references so that it could conveniently be
    found.").

27

28  [4] MDA, also known as Morse & Pfeiff and Morse, Pfeiff & Garcia, held the conflicts contract for indigent
    defense for the County of Merced from July 2003 through August 2017.  (JSUF 3.)

1   and found probable cause.  (JSUF 8.)

2        On October 23, 2018, Plaintiff filed a Request for a Marsden Motion and Request for the

3   Court to appoint counsel to file a *Vasquez/Litmon* Motion.  In his request, Plaintiff argued, *inter*

4   *alia*, that he "told his attorney he wanted a speedy trial, but did not get it."  (Doc. 119-2,

5   Statement of Undisputed Facts in Support County of Merced's Motion for Summary Judgment

6   ("DSUF"), 1; Doc. 122-9, Ex. I, at 3.)  Plaintiff filed another Request for a Marsden Motion on

7   November 27, 2018.  (JSUF 9.)

8        On November 27, 2018, Mr. Davis declared a conflict and the Superior Court appointed

9   attorney Doug C. Foster, from Ciummo & Associates, to represent Plaintiff.  (JSUF 10.)

10        On December 4, 2019, Plaintiff filed a Motion to Dismiss for violation of the right to due

11   process under the Fourteenth Amendment pursuant to *People v. Litmon* and *People v. Vasquez.*

12   (JSUF 11.)  In his state court Motion to Dismiss, Plaintiff argued that his due process rights under

13   the Fourteenth Amendment were violated due to the excessive and unjustifiable delays in

14   bringing his case to a "speedy probable cause hearing" and that he had not had a trial.  (DSUF 3,

15   Doc. 122-12, Plaintiff's Motion to Dismiss, Ex. L at 3, 4.)  Plaintiff also argued he had been

16   housed at Coalinga for a period of twelve years, and that under the *Barker* factors his due process

17   right to a speedy trial had been violated.  (DSUF 4; Doc. 122-12, Ex. L at 11-17.)  Plaintiff

18   further argued that he told Davis he wanted to go to trial.  (DSUF 5; Doc. 122-12, Ex. L at 16.)

19   Plaintiff also argued that Davis's handling of the second probable cause hearing in 2016 itself was

20   a basis to dismiss the petition.  (DSUF 6; Doc. 122-12, Ex. L at 9.)

21        On January 9, 2020, the Superior Court found no due process violation under the

22   Fourteenth Amendment for failure to bring Plaintiff's case to trial in a detailed opinion stated on

23   the record.  (JSUF 12; DSUF 7, Doc. 122-14, Reporter's Transcript, Ex. N at 13-26.)  After

24   concluding the trial delay portion of the motion and finding that Plaintiff's right to a trial had not

25   been violated, the Superior Court then turned to Plaintiff's argument with respect to the handling

26   of the second probable cause hearing and directed the prosecution and the defense to provide

27   supplemental briefing.  (DSUF 8; Doc. 122-14, Ex. N, Reporter's Transcript, p. 25, 28.)

28        On January 16, 2020, the Superior Court ruled on Plaintiff's motion to dismiss the SVP

1    petition related to the second probable cause hearing, after supplemental briefing, and denied the

2    motion.  (JSUF 13.)   Plaintiff's case was then set for an immediate trial which began on January

3    28, 2020.  He was released on February 6, 2020, following his trial.  (DSUF 10; Doc. 122-1, Ex.

4    A at 9-11; Doc. 122-16, Ex. P at 8-9.)

5         On February 4, 2022, Plaintiff filed the civil complaint in this action pursuant to 42 U.S.C.

6    § 1983 for violation of his due process rights under the Fourteenth Amendment for the alleged

7    failure to timely bring Plaintiff's SVPA petition to trial.  (JSUF 14.)

8                    **B.  Legal Standards for Summary Judgment**

9         Summary judgment is appropriate when "there is no genuine dispute as to any material

10    fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is

11    "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

12    *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome

13    of the suit under the governing law." *Id.*

14         The party seeking summary judgment "always bears the initial responsibility of informing

15    the district court of the basis for its motion, and identifying those portions of the pleadings,

16    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

17    which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

18    *Catrett*, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies

19    depending on whether the issue on which summary judgment is sought is one in which the

20    movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty*

21    *Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at

22    trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for

23    the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will

24    have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an

25    absence of evidence to support the nonmoving party's case." *Id.*

26         If the movant satisfies its initial burden, the nonmoving party must go beyond the

27    allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative

28    evidence from which a jury could find in [its] favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th

1   Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice.

2   *Id.* at 929; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)

3   ("When the moving party has carried its burden under Rule 56[ ], its opponent must do more than

4   simply show that there is some metaphysical doubt as to the material facts.") (citation omitted).

5   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-

6   moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First*

7   *Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

8         In resolving a summary judgment motion, "the court does not make credibility

9   determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he

10   evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn

11   in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the

12   nonmoving party must produce a factual predicate from which the inference may reasonably be

13   drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),

14   aff'd, 810 F.2d 898 (9th Cir. 1987).  "Conclusory, speculative testimony in affidavits and moving

15   papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*,

16   509 F.3d at 984.

17         In reaching its decision on the motion for summary judgment, the Court carefully

18   reviewed and considered all arguments, points and authorities, declarations, exhibits, statements

19   of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties.

20   Omission of reference to an argument, document, paper, or objection is not to be construed to the

21   effect that this Court did not consider the argument, document, paper, or objection. This Court

22   thoroughly reviewed and considered the evidence it deemed admissible, material, and

23   appropriate.

24                   **C.  Discussion and Analysis**

25         The County argues that Plaintiff is barred by the doctrine of collateral estoppel from

26   relitigating the issue of whether his due process right to a speedy trial was violated because the

27   Superior Court denied the claim in a reasoned opinion set forth on the record in Plaintiff's state

28   court case. Further, because Plaintiff's municipal liability (*Monell*) claim rests entirely on the

1    alleged underlying constitutional violation, the municipal liability claim must be dismissed. The

2    County also argues that Plaintiff's claims are barred by the statute of limitations and equitable

3    tolling does not apply. (Doc. 119-1 at 8-9.)

4                              1.  Collateral Estoppel[5]

5         The County first argues Plaintiff's § 1983 action is barred by the doctrine of collateral

6    estoppel because Plaintiff's case is based entirely on his claim that he was denied a right to a

7    speedy trial in violation of the Fourteenth Amendment and this is the same exact claim he

8    advanced in his motion to dismiss in the underlying SVP action, and the Superior Court expressly

9    found there was no due process violation. (Doc. 119-1 at 19-20.) Specifically, the County asserts

10   that "[u]nder the doctrine of collateral estoppel, Plaintiff's SAC is barred because his claim for

11   violation of his due process right to a speedy trial is the same issue that has already been

12   adjudicated and decided against him." (Doc. 119-1 at 20.)

13        Plaintiff counters that the County erroneously argues that his § 1983 claims are barred by

14   his motion to dismiss the SVP proceedings against him, which was denied by the Merced County

15   Superior Court. (Doc. 131-1 at 7.) Plaintiff asserts there are questions of fact whether the motion

16   to dismiss involved identical issues to the present complaint, whether the motion to dismiss was

17   fully litigated, and whether proceedings were fair. (*Id.*)

18        "Collateral estoppel precludes relitigation of issues argued and decided in prior

19   proceedings." *Lucido v. Super. Ct. of Mendocino Cnty.*, 51 Cal. 3d 335, 341 (1990). State court

20   judgments may preclude the relitigation of an identical issue that arises in a subsequent federal

21   civil rights action. *Allen v. McCurry*, 449 U.S. 90, 103–04 (1980). "State law . . . governs the

22   application of collateral estoppel to a state court judgment in a federal civil rights action. *Mills v.

23   City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019); *Presley v. Morrison*, 950 F. Supp. 1298,

---

[5] As a preliminary matter, Plaintiff suggests the County's motion for summary judgment premised on
collateral estoppel should be denied because the County chose not to raise collateral estoppel in their
12(b)(6) motion to dismiss. (Doc. 131-1 at 8-9.) Plaintiff cites no authority to support his suggestion that
the defense cannot now be raised. The County pled collateral estoppel as an affirmative defense to the
SAC. (Doc. 79 at 24.) Furthermore, as the County points out, this Court has found that a motion for
summary judgment under Rule 56 is a proper way to establish claim preclusion and issue preclusion.
*Piazza v. Brackett*, No. 11-cv-1536-BAM, 2015 WL 3507359, at *5 (E.D. Cal. June 3, 2015) (*citing Robi
v. Five Platters, Inc.*, 918 F.2d 1439, 1441–1442 (9th Cir.1990)).

1305 (E.D. Pa. 1996) ("Federal courts should apply the state's collateral estoppel law in determining whether a § 1983 claim is precluded by a prior state judicial proceeding.").

Under California law, issue preclusion applies when "(1) the issue sought to be relitigated [is] identical to the issue decided in the earlier action; (2) the issue [was] actually litigated and (3) necessarily decided in the earlier action; (4) the earlier decision [was] final and made on the merits; and (5) the party against whom issue preclusion is asserted [was] a party to the earlier action or in privity with such a party." *Wige v. City of Los Angeles*, 713 F.3d 1183, 1185 (9th Cir. 2013) (citing *Lucido*, 51 Cal. 3d at 341); *see also Rodriguez v. City of Bakersfield*, No. 1:23-CV-01286-KES-CDB, 2025 WL 1433817, at *9 (E.D. Cal. May 19, 2025).

Plaintiff contends that the Superior Court's grant of a motion to dismiss is not collateral estoppel, relying on *Butler v. Woods*, No. 21-cv-00867-VC, 2022 WL 17248996, at *1 (N.D. Cal. Nov. 28, 2022). In *Butler*, the state habeas court had previously found that the plaintiff's due process rights were violated by the long delay in bringing his SVP case to trial, and that the public defender, district attorney, and trial court were all responsible for the delay to varying degrees. *Id.* The habeas court then granted the plaintiff's habeas petition, dismissed his SVP petition, and ordered him released. In his subsequent § 1983 action in federal court, the plaintiff argued that collateral estoppel barred the defendants, who were not parties to the habeas action, from re-litigating the question of whether plaintiff's due process rights were violated. *Id.* The *Butler* court applied offensive collateral estoppel and found that it did not apply primarily because the defendants—against whom issue preclusion was asserted—were not parties to the habeas proceeding or in privity with a party and did not have a full and fair opportunity to litigate the plaintiff's claims. *Id.*

Plaintiff's reliance on *Butler* is misplaced. *Butler* involved *offensive* collateral estoppel in which the *plaintiff* argued that collateral estoppel barred the *defendants* from re-litigating the issue of whether his due process rights were violated. Here, however, it is the defendant County arguing that collateral estoppel bars Plaintiff from re-litigating whether his due process rights were violated, an issue Plaintiff previously litigated in the state court motion to dismiss. As discussed below, Plaintiff—the party against whom issue preclusion is asserted—was a party to

the state court proceeding and had a full and fair opportunity to litigate his due process claim,

unlike the defendants in *Butler*.  Offensive collateral does not apply in the present circumstances.

The Court now turns to the requirements for defensive collateral estoppel.

Identical Issue

To meet the first requirement, the issue sought to be precluded must be identical to an

issue decided in a prior proceeding. *See Lucido*, 51 Cal. 3d at 341.  "The 'identical issue'

requirement addresses whether 'identical factual allegations' are at stake in the two proceedings,

not whether the ultimate issues or dispositions are the same." *Id.*; *see also Hernandez v. City of

Pomona*, 46 Cal. 4th 501, 511-12 (2009) ("For purposes of collateral estoppel, an issue was

actually litigated in a prior proceeding if it was properly raised, submitted for determination, and

determined in that proceeding.").

There is no genuine dispute that the issue sought to be litigated here—whether Plaintiff's

due process right to a speedy trial under the Fourteenth Amendment was violated—is identical to

one of the issues decided in the state court proceeding,[6] and the underlying factual allegations are

the same.  In his state court motion to dismiss, Plaintiff argued that his confinement at Coalinga

State Hospital pursuant to the SVP petition for more than twelve years constituted a violation of

his Fourteenth Amendment due process rights.  (DSUF 3; Doc. 122-12, Ex. L at 5, 6.)

Specifically, Plaintiff argued that the delay in ruling on the second probable cause hearing, and

the delay in bringing his case to trial, violated his Fourteenth Amendment due process rights.

(Doc. 122-12, Ex. L at 6 (delay in second probable cause hearing caused him to be committed in

the absence of probable cause)*;*11 (arguing that his case "definitively" met the burden of

demonstrating a speedy trial violation).)  These are the same allegations Plaintiff is asserting in

the instant action. (SAC ¶¶ 1, 10, 13, 138, 141,142, 185, 188, 201 [allegations that Plaintiff's

rights were violated by the failure to bring his case to trial]; SAC ¶¶ 3, 142 [two-year delay in

---

[6] Although Plaintiff's claims are for deliberate indifference and municipal liability, the allegations in the SAC make it clear that Plaintiff seeks to re-litigate the same issue of whether his due process rights were violated by the failure to bring his SVP case to trial.  *See, e.g.*, SAC ¶¶ 1, 10, 13, 138, 141,142, 185 ("This action is brought pursuant to 42 U.S.C. § 1983 for violation of Mr. Payne's due process rights under the Fourteenth Amendment."), 188, 201 ("Plaintiff's due process rights were violated by the egregious delay in bringing his case to trial . . . Mr. Payne's Fourteenth Amendment due process rights were violated.").

1  ruling on the second probable cause hearing].)

2  Plaintiff made the following arguments in his state court motion to dismiss, which are the

3  same as allegations in the SAC:  (1) Plaintiff's right to due process right to a speedy trial under

4  the Fourteenth Amendment was violated (DSUF 11; Doc. 122-12, Ex. L at 5, 11; SAC ¶¶ 1, 6, 13,

5  119, 137-38, 185, 188-92, 200-207); (2) Plaintiff's due process rights were violated by the

6  prejudicial delay in that he was detained at Coalinga for more than a decade without a trial

7  (DSUF 12; Doc. 122-12, Ex. L at 4, 5, 7, 11, 12, 17; SAC ¶ 1); (3) Plaintiff was not present for a

8  majority of his court appearances and his case was continued in excess of 100 times with no good

9  cause shown (DSUF 13; Doc. 122-12, Ex. L at 4, 12, 13, 14, 15; SAC ¶¶ 95, 98, 99); (4) Davis

10  did not appear in court on multiple occasions (DSUF 14; Doc. 122-12, Ex. L at 12; SAC ¶ 95);

11  (5) Plaintiff denied waiving time for his first probable cause hearing (DSUF 15; Doc. 122-12, Ex.

12  L at 12; SAC ¶¶ 93-96); (6)  Plaintiff's attorney made no attempt to communicate with his client.

13  (DSUF 17;  Doc. 122-12, Ex. L at 15; SAC ¶¶ 4, 102 ("In eleven years of representing Mr. Payne,

14  his Alternate Public Defender, William Davis, never visited him at Coalinga State Hospital . . .

15  .")); (7) There was a two-year delay between the September 15, 2016 (second) probable cause

16  hearing and the probable cause ruling issued in 2018 (DSUF 18; Doc. 122-12, Ex. L at 15; SAC

17  ¶¶ 3, 105, 108, 142); (8) Plaintiff told his attorney over the years that he demanded to go to trial

18  (DSUF 19; Doc. 122-12, Ex. L at 16; SAC ¶ 101); (9) Plaintiff's attorney gave Plaintiff multiple

19  excuses for not going to trial, including excessive caseload, precedence of criminal cases,

20  scheduling conflicts, fiscal instability regarding funding for experts, witness availability,

21  courtroom availability, and the DA's case load (DSUF 20; Doc. 122-12, Ex. L at 16; SAC ¶ 118);

22  and (10) Plaintiff's case was continued for over a decade without his consent (DSUF 21; Doc.

23  122-12, Ex. L at 17; SAC ¶¶ 95-96).

24  Plaintiff argues that there are questions of fact whether the state court motion to dismiss

25  involved identical issues to the present complaint, asserting that the motion did not involve

26  identical issues or identical facts.  (Doc. 131-1 at 7, 11.)  To that end, Plaintiff parses the language

27  of the motion to dismiss and contends that it discussed only the delays in bringing Plaintiff's

28  matter to a speedy probable cause hearing, not trial.  (*Id.* at 11-12.)

1     The Court finds Plaintiff's attempt to create a dispute of fact by suggesting he never

2     litigated a speedy trial motion in the state court proceeding both disingenuous and inconsistent

3     with his allegations in this case.  For example, in the SAC, Plaintiff alleges: (1) "Mr. Foster set

4     the matter for a *speedy trial motion*, arguing that the eleven-year delay violated Mr. Payne's right

5     to due process," (SAC ¶ 6) (emphasis added); (2) "In December 2019, Mr. Foster *filed a speedy*

6     *trial motion*, alleging that the delays of the prior eleven years violated Mr. Payne's right to due

7     process," (*id.* ¶ 173) (emphasis added); (3) "When the Superior Court denied Mr. Payne's *speedy*

8     *trial motion . . .* (*id.* ¶ 174) (emphasis added); (4) "As a result of the court's comments, Mr. Payne

9     believed that the Superior Court's denial of his *speedy trial motion* shut the door to any

10    vindication of the harm he suffered due to the delay of his case," (*id.* ¶ 175) (emphasis added);

11    and (5) "Mr. Foster was originally appointed only to file the *speedy trial motion* on Mr. Payne's

12    behalf," (*id.* 55, n. 48) (emphasis added).

13    Further, there can be no material dispute that Plaintiff argued in his state court motion to

14    dismiss that his case definitively met the burden of demonstrating a speedy trial violation.

15    Plaintiff's motion to dismiss included an analysis under *Barker v. Wingo*, 407 U.S. 514, 529

16    (1972) for determining whether a speedy trial violation in the context of SVP proceedings

17    violated due process.  (Doc. 122-12, Ex. L at 11.)  Plaintiff argued in his state court motion to

18    dismiss that "[t]he burden of demonstrating a speedy trial violation under *Barker's* multi-factor

19    test lies with the defendant" and his case "definitively meets this burden."  (*Id.*)  There also is no

20    genuine dispute that the Superior Court "evaluated the trial delay issue" (*see* Doc. 131-1 at 14)

21    and found no due process violation under the Fourteenth Amendment for failure to bring

22    Plaintiff's case to trial.  (JSUF 12; DSUF 7, Doc. 122-14, Reporter's Transcript, Motion to

23    Dismiss, Ex. N at 13-26.)

24    Plaintiff also attempts to create a dispute of fact by arguing the state court motion to

25    dismiss nowhere alleged that Judge Garcia was on MDA's payroll for years while he presided

26    over Plaintiff's case.  (Doc. 131-1 at 12.)  This argument is not persuasive, nor is it sufficient to

27    create a genuine dispute of material fact.  Plaintiff admits in his briefing that "it was public

28    knowledge and commonly known in Merced that Judge Garcia had been removed as a result of

16

1   his secret payments from MDA," (*id.*), which belies any suggestion that the state court was

2   unaware of these purported facts when evaluating Plaintiff's speedy trial motion.

3          Plaintiff also attempts to create a dispute by arguing that there were "no facts alleged that

4   Merced Superior Court had allowed extended unexplained delays [in] every SVP case on its

5   docket and thus did not fulfill its role as captain of the ship." (Doc. 131-1 at 12.) This argument

6   also is not persuasive. Plaintiff admits that "it is reasonable to infer that the judge determining

7   the earlier motion to dismiss was aware that other SVP cases in Merced had similarly been

8   allowed to languish for years with little or no progress." (Doc. 131-1 at 13.) Further, Plaintiff's

9   state court motion to dismiss included allegations concerning delays occasioned by the Superior

10  Court and systemic delays resulting from the public defender system. (Doc. 122-12, Ex. L at 12-

11  14, 15.) Critically, the Superior Court found no due process due violation under the Fourteenth

12  Amendment for the failure to bring Plaintiff's case to trial based on a determination that the delay

13  was primarily attributable to Plaintiff's defense strategy, and not other systemic delays. The

14  Superior Court judge explained:

15         On balance, I find that while the length of the delay is presumptively prejudicial
           and triggers the *Barker* inquiry, the remaining three factors -- the lack of any
16         assertion of a speedy trial by Payne; the lack of prejudice other than the time at the
           state hospital to which Payne consented; and the reason for the delay which is
17         primarily attributable to Payne's defense strategy -- weigh in favor of the State and
           against Payne. The motion to dismiss is denied. The Court finds no due process
18         violation under the Fourteenth Amendment of the Constitution for the failure to
           bring Payne's trial.
19

20  (Doc. 122-14, Ex. N at 25.)

21         <u>Actually Litigated</u>

22         Second, the issue must have been actually litigated in the previous hearing. *Lucido*, 51

23  Cal. 3d at 341. The Ninth Circuit has found that "an issue is actually litigated when an issue is

24  raised, contested, and submitted for determination." *Janjua v. Neufeld*, 933 F.3d 1061, 1066 (9th

25  Cir. 2019); *see also Wilson v. City of Fresno*, 763 F. Supp. 3d 1073, 1098 (E.D. Cal. 2025).

26         Plaintiff claims that there was "no full litigation of any speedy trial motion, because there

27  was no speedy trial motion." (Doc. 131-1 at 13.) As discussed above, this argument is not

28  persuasive. The issue of whether Plaintiff was denied a speedy trial was actually litigated, as

1    Plaintiff sought to dismiss the SVP petition because of an alleged speedy trial violation (Doc.

2    122-12, Ex. L at 4-5, 11), the People of the State of California contested the dismissal motion (*see*

3    Doc. 122-14, Ex. N at 6-7, 9-10), and the Superior Court reached a determination on the speedy

4    trial issue, which was stated on the record, (*id.* at 13-25).

5        Plaintiff additionally argues that the issue was not "fully litigated" because Plaintiff was

6    not present at the hearing on the motion to dismiss and the record submitted was limited.  (Doc.

7    131-1 at 14.)  However, the parties fully litigated the issue in the Superior Court, to include a

8    hearing on the motion to dismiss.  Plaintiff had an opportunity to fully brief and provide both

9    written and oral argument in support of that motion.  *See Pellerin v. Nevada County*, 635 F.

10    App'x 345 (9th Cir. 2015) (concluding state court decision denying motion to dismiss criminal

11    prosecution was final decision on the merits and that collateral estoppel precluded arrestee's §

12    1983 claims in federal court).  Further, Plaintiff waived his personal appearance at the hearing.

13    (Doc. 122-14, Ex. N at 3 ["He is affirmatively waiving his presence today."].)

14        Plaintiff also claims that the "resulting record is devoid of details as to how the court

15    actually reached its holding."  (Doc. 131-1 at 15.)  This claim is unsupported.  The Superior Court

16    rendered an extensive ruling on the record, which detailed the procedural history of the case,

17    included an evaluation of the *Barker* due process factors, and explained its finding of no due

18    process violation under the Fourteenth Amendment of the Constitution for the failure to bring

19    Plaintiff to trial.  (Doc. 122-14, Ex. N. at 13-26.)

20        Plaintiff additionally argues that there is "a question of material fact as to whether the

21    forum that determined the first proceeding was fair."  (Doc. 131-1 at 12-13.)  Plaintiff suggests

22    that a reasonable jury could find that the underlying proceeding was not fair because the judge

23    who denied the motion to dismiss appeared three times as the Deputy District Attorney in

24    Plaintiff's case and was aware that Judge Garcia "had appeared on Plaintiff's case more than 30

25    times, had been removed from the bench, and had been receiving secret payments from MDA

26    while presiding over MDA's cases."  (*Id.*)  Plaintiff also asserts that there is a question of fact

27    whether the judge could fairly determine whether his colleagues could be relied on to monitor

28    MDA or whether the judge could fairly evaluate his colleagues' failure to rule on the second

1    probable cause hearing for two years.  (*Id.*)

2         The Court does not find Plaintiff's argument persuasive or raise an issue of fact.  Plaintiff

3    presents no evidence of unfairness or bias, the Court declines to question the impartiality of the

4    Superior Court judge, and a jury would not be called upon to evaluate a judge's statement of

5    impartiality in this § 1983 action alleging deliberate indifference to constitutional rights by

6    Defendants Morse and Pfeiff and municipal liability of the County.  Moreover, at the outset of the

7    motion to dismiss hearing, the Superior Court judge stated on the record that he was not biased,

8    explaining as follows:

9         I wanted to disclose that three Minute Orders reflect that I appeared as a Deputy
          District Attorney on behalf of other attorneys, including Mr. Colby, and those dates
10        were January 11, 2011, February 8, 2011, and April 17, 2015. [¶] I'm disclosing
          these appearances but do not find that self-recusal is appropriate.  I am not biased
11        for or against any party or attorney involved in this case.  I was never assigned to
          prosecute this SVP petition nor do I recall any conversation with any Deputy
12        District Attorney regarding the substance of this case.

13   (Doc. 122-14, Ex. N at 4.)  Plaintiff's counsel did not object.  (*Id.* at 5.)

14        As a final matter, Plaintiff complains that there was no appearance of fairness, because

15   "Defendant Morse, who personally received an equal share of the profit from the MDA contract,

16   was married to District Attorney Morse."  (Doc. 131-1 at 13.)  However, as the County points out,

17   this is not evidence that Plaintiff's state court proceeding was unfair.

18        <u>Necessarily Decided</u>

19        Third, the issue must have been "necessarily decided" in the previous hearing. *Lucido*¸ 51

20   Cal. 3d at 341.  To be "necessarily decided," the issue must "not have been 'entirely unnecessary'

21   to the judgment in the initial proceeding." *Wilson*, 763 F. Supp. 3d at 1098 (quoting *Lucido*, 51

22   Cal. 3d at 342).

23        The issue of whether Plaintiff was denied the right to a speedy trial was necessarily

24   decided because it was one of the primary bases for Plaintiff's motion to dismiss the SVP

25   petition.  (Doc. 122-12, Ex. L at 11.)

26        <u>Final Decision on the Merits</u>

27        Fourth, "the previous proceeding [must] have been final and decided on the merits."

28   *Wilson*, 763 F. Supp. 3d at 1098.  A 'final judgment' for purposes of collateral estoppel can be

1   any prior adjudication of an issue in another action that is determined to be 'sufficiently firm' to

2   be accorded conclusive effect." *Luben Industries, Inc. v. United States*, 707 F.2d 1037, 1040 (9th

3   Cir. 1983) (citing *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th

4   Cir.1979)). In assessing finality for collateral estoppel purposes, courts consider whether the

5   decision was avowedly tentative, whether the parties were fully heard, whether the court

6   supported its decision with a reasoned opinion, and whether the decision was subject to appeal or

7   was appealed.  *Id.*; *see also Pellerin*, 635 F. App'x 345, at 347 (granting preclusive effect of a

8   ruling on a motion to dismiss).

9   Here, the Superior Court denied the motion to dismiss on the record in a reasoned opinion

10  (albeit in an oral ruling).  The parties were fully heard at a hearing on the motion, and Plaintiff

11  presented his arguments in briefing and oral argument.  The SVP action concluded after a jury

12  found him not to be an SVP and Plaintiff was released from detention.  (SAC ¶ 10.)

13  Plaintiff now contends that there is a question of fact regarding whether determination of

14  the issues raised by the motion was actually final.  (Doc. 131-1 at 15.)  However, it is undisputed

15  that the motion to dismiss was denied.  (JSUF 13.)  The decision was not tentative.

16  Plaintiff also argues that the denial of the speedy trial motion was not a final decision

17  because it would have been an issue on appeal if Plaintiff lost his SVP jury trial, but because he

18  won his jury trial, there was no chance to appeal.  (Doc. 131-1 at 16.)  As Plaintiff admits, there

19  was no need for an appeal as the SVP action concluded when Plaintiff won his jury trial.  *See*

20  *Orozco v. Barger*, No. 2:23-cv-04047-FLA (JCX), 2024 WL 3384242, at *5 (C.D. Cal. July 8,

21  2024) (noting issue preclusion applies to interlocutory rulings if the prior adjudication was

22  sufficiently firm to be given a conclusive effect and determining SVP action concluded when

23  superior court judge rendered final verdict and ordered plaintiff discharged).  Even if Plaintiff

24  could not appeal the denial of his dismissal motion, the Superior Court's order was sufficiently

25  firm and on the merits so as to be accorded conclusive effect.  *See Pellerin*, 635 F. App'x 345, at

26  348 (concluding that while plaintiff did not have right to appeal denial of motion to dismiss,

27  Superior Court's order was sufficiently firm and on the merits to be accorded conclusive effect

28  with respect to § 1983 claims).

1          <u>Party Against Whom Issue Preclusion is Asserted</u>

2          Fifth, the party against whom preclusion is sought must be the same as, or in privity with,

3    the party to the former proceeding.  *Lucido,* 51 Cal. 3d at 341.

4          Plaintiff argues this requirement is not met because "[i]t goes without saying that the

5    parties in both proceedings were not identical."  (Doc. 131-1 at 7).  However, only the party

6    *against* whom issue preclusion is asserted need be a party in the earlier action or in privity with

7    such party.  *Wige*, 713 F.3d at 1185 ("[T]he party against whom issue preclusion is asserted must

8    have been a party to the earlier action or in privity with such a party.").  There can be no possible

9    dispute that the requirement is met in this case as the party against whom the County asserts issue

10   preclusion—Plaintiff—was a party in the earlier SVPA action.

11         <u>Integrity of Judicial System and Promotion of Judicial Economy</u>

12         As a final matter, the granting of preclusion must be consistent with preserving the

13   integrity of the judicial system and the promotion of judicial economy.  *Wilson*, 763 F. Supp. 3d

14   at 1098 (citing *Lucido*, 51 Cal. 3d at 343).

15         Here, public policy favors application of the doctrine, as it would preserve the integrity of

16   the judicial system and scarce judicial resources by preventing Plaintiff from pursuing a repetitive

17   challenge regarding his due process right to a speedy trial.  Revisiting the issue would undermine

18   the goals of comity and judicial economy.  *See Miroth v. County of Trinity*, No. 2:22-cv-00460-

19   KJM-JDP, 2025 WL 2912274, at *6 (E.D. Cal. Oct. 14, 2025).

20         Plaintiff claims, however, that if the County is able to use the doctrine of collateral

21   estoppel then it would "undermine the court's public policy of preserving judicial integrity"

22   because the attorneys providing conflict indigent representation "flagrantly" violated California's

23   ethical rules of practice, and the County was "unconcerned with how MDA handled the indigent

24   Defense Contract, and Pfeiff's secret deal that resulted in Judge Garcia's removal from the

25   bench."  (Doc. 131-1 at 16-17.)  Plaintiff presents no evidence that the attorneys flagrantly

26   violated California's ethical rules of practice or that Judge Garcia did anything to delay Plaintiff's

27   case based on dissolution payments from MDA.

28   ///

1

2.  Municipal Liability

2       Plaintiff's remaining claim asserts municipal liability against the County, alleging the

3   County had practices, customs, policies, and procedures that permitted and encouraged MDA to

4   delay bringing SVPA cases to trial, which violated the due process right of SVPA clients,

5   including Plaintiff.  (SAC ¶¶ 201-08).

6       Under the Supreme Court's decision in *Monell v. New York City Dept. of Social Servs.*,

7   436 U.S. 658, 689–91 (1977), a government entity may be held liable under 42 U.S.C. § 1983,

8   but "such liability must be founded upon evidence that the government unit itself supported a

9   violation of constitutional rights and not on the basis of the *respondeat superior* doctrine or

10  vicarious liability." *Jones v. County. of Sacramento*, No. 2:20-cv-00838-TLN-CKD, 2023 WL

11  2278562, at *7 (E.D. Cal. Feb. 28, 2023).

12      Plaintiff's claim for *Monell* liability fails as a matter of law because Plaintiff cannot

13  relitigate the issue of whether his Fourteenth Amendment due process right to a speedy trial was

14  violated.  There can be no *Monell* claim in the absence of an underlying constitutional violation.

15  *See Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) ("*Monell* claims ...

16  require a plaintiff to show an underlying constitutional violation."); *Miroth* 2025 WL 2912274, at

17  *7 ("Because the state court litigation precludes the Miroths from relitigating the issues at the

18  center of their case against the individual county defendants, it also precludes them from litigating

19  claims against the county itself.")

20

3.  Statute of Limitations and Equitable Tolling

21      The County argues that Plaintiff's claims are barred by the statute of limitations and his

22  untimely claims are not salvaged by equitable tolling.  (Doc. 119-1 at 25.)   Given the Court's

23  determination regarding collateral estoppel, it is unnecessary to reach this issue.

24      **V.    CONCLUSION AND ORDER**

25      For the reasons stated, it is HEREBY ORDERED as follows:

26      1.  Defendant County of Merced's motion for summary judgment, (Doc. 119), is

27          GRANTED.

28  ///

2.  The Clerk of the Court is directed to enter judgment in favor of Defendant County of Merced and against Plaintiff Jacob Payne, and to close this case.

IT IS SO ORDERED.

Dated:   __**January 15, 2026**__                    ____/s/ *Barbara A. McAuliffe*____
                                                                    UNITED STATES MAGISTRATE JUDGE