1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JACOB PAYNE,                              Case No.  1:22-cv-00157-BAM

12              Plaintiff,                     ORDER DENYING PLAINTIFF JACOB
                                               PAYNE'S MOTION FOR LEAVE TO FILE
13        v.                                   SURREPLY IN RESPONSE TO
                                               DEFENDANTS MORSE AND PFEIFF'S
14   MERCED COUNTY PUBLIC                      REPLY IN SUPPORT OF MOTION FOR
     DEFENDER'S OFFICE, *et al.*,              SUMMARY JUDGMENT
15
                Defendants.                    (Doc. 137)
16
                                               ORDER GRANTING THE MORSE AND
17                                             PFEIFF DEFENDANTS' MOTION FOR
                                               SUMMARY JUDGMENT
18
                                               (Doc. 115)
19

20         Currently before the Court is Defendants Cindy Morse and Thomas Pfeiff's motion for

21   summary judgment, or in the alternative partial summary judgment, pursuant to Rule 56 of the

22   Federal Rules of Civil Procedure.  (Doc. 115.)  Plaintiff Jacob Payne filed an untimely opposition

23   and untimely supporting documents on August 12, 2025, (Docs. 127-130), along with a notice of

24   errata containing Plaintiff's "Corrected Response" to Defendants' motion for summary judgment,

25   (Doc. 131-2).  Defendants Morse and Pfeiff filed a reply on August 21, 2025.  (Doc. 132.)  On

26   August 28, 2025, Plaintiff filed a motion for leave to file a surreply in response to Defendants'

27   reply.  (Doc. 137.)  The Court deemed the matters suitable for decision without oral argument

28

                                                1

1    under Local Rule 230(g) and vacated the hearings on the respective motions.[1]  (Docs. 136, 137.)

2         For the reasons stated below, Plaintiff's motion for leave to file a surreply will be denied

3    and Defendants' motion for summary judgment will be granted.

4         **I.    FACTUAL AND PROCEDURAL BACKGROUND**

5         Plaintiff asserts that his constitutional rights were violated because he was detained for

6    more than eleven years pending trial on the issue of whether he was a sexually violent predator

7    ("SVP") under California Welfare and Institutions Code section 6600, *et seq*.

8         Sexually Violent Predator Act

9         The Sexually Violent Predator Act ("SVPA") authorizes the involuntary commitment of

10   certain convicted sex offenders, or SVPs, "who are found to have mental disorders that make

11   them likely to reoffend after release from prison."  *Camacho v. Superior Ct.*, 15 Cal. 5th 354, 367

12   (2023).  To be committed as an SVP, the individual must (1) have been convicted of a qualifying

13   sexually violent offense, and (2) have a diagnosed mental disorder that makes the person a danger

14   to the health and safety of others in that it is likely that the individual will engage in sexually

15   violent criminal behavior. Cal. Welf. & Inst. Code § 6600(a)(1).  If two practicing psychiatrists or

16   psychologists from the Department of State Hospitals ("DSH") agree that the individual meets the

17   statutory definition of an SVP, then DSH forwards a request for a petition for commitment by the

18   district attorney. *Id.* § 6601. After an SVP petition is filed, the state trial court judge reviews the

19   petition to determine whether it "contains sufficient facts that, if true, would constitute probable

20   cause" that the person meets the definition of an SVP.  *Id.* § 6601.5.  If the court determines that

21   the petition, on its face, supports a finding of probable cause, then the court must hold a probable

22   cause hearing within 10 days, absent good cause for extending the time period.  *Id.* §§ 6601.5,

23   6602; *Camacho*, 15 Cal. 5th at 370.  If probable cause is found, then the individual is detained in

24   a secure facility pending trial.  *Id.* §6601.5, 6602; *Camacho*, 15 Cal. 5th at 370.  "The statute does

25   not specify a fixed deadline by which trial must occur." *Camacho*, 15 Cal. 5th at 370. If the

26   individual is found at trial to be an SVP, then he is committed to a state hospital for an indefinite

27

28   [1] The parties have consented to magistrate judge jurisdiction over this action for all purposes,
     including trial and entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1).

1  term. *People v. Orey*, 63 Cal. App. 5th 529, 539 (2021).  However, a person who is committed as

2  an SVP must be reexamined annually by a qualified mental health professional to determine

3  whether commitment is still appropriate.  Cal. Welf. & Inst. Code § 6604.9(a), (b).

4  <u>Underlying SVP Proceedings</u>

5  In the Second Amended Complaint, Plaintiff alleges that the Merced County Superior

6  Court detained him on a petition alleging he qualified as an SVP in 2007.  (Doc. 58, Second

7  Amended Complaint ("SAC") ¶ 2.)  The court appointed Merced County's Alternate Public

8  Defender, Merced Defense Associates ("MDA"),[2] to represent him.  (*Id.*)  MDA assigned the case

9  to attorney William Davis.  Over the next eleven years, Plaintiff's Alternate Public Defender, Mr.

10  Davis, never visited Plaintiff at Coalinga State Hospital ("CSH") and only represented Plaintiff at

11  two probable cause hearings.  (*Id.* ¶¶ 3-4.)  The superior court took two years to issue a ruling on

12  the second probable cause hearing, and the matter was continued for eleven years.  (*Id.* ¶ 3.)  Mr.

13  Davis could not explain why the ruling on Plaintiff's second probable cause hearing was delayed

14  for so long, nor could he explain why the matter was continued for eleven years, but he did

15  confirm that "there was no strategic reason for seeking continuances." (*Id.*)  Mr. Davis also

16  confirmed that Plaintiff was "persistent about moving his case forward" after initially agreeing to

17  a reasonable time for continuances to find suitable expert witnesses.  (*Id.*)

18  In November 2018, after eleven years of continuances, the Alternate Public Defender

19  declared a conflict, and the court appointed attorney Doug C. Foster to represent Plaintiff.  (SAC

20  ¶ 5.)  Mr. Foster set the matter for a speedy trial motion, arguing that the eleven-year delay

21  violated Plaintiff's right to due process.  (*Id.* ¶ 6.)  The Superior Court denied the motion but set

22  the matter for trial.  (*Id.* ¶¶ 109-10.)

23  On February 4, 2020, less than a year-and-a-half after Mr. Foster was appointed, a jury

24  found the petition untrue.  (SAC ¶ 7.)  Plaintiff was detained for more than thirteen years before

25  he was released from detention after a jury found him not to be an SVP.  (*Id.* at ¶ 10.)

26

---

27  [2] Merced Defense Associates, or MDA, is reportedly a joint venture between the Law Offices of Morse &

28  Pfeiff and The Garcia Law Firm, as well as its predecessor in interest to the contract for indigent defense services with the County of Merced, Morse, Pfeiff & Garcia.  (SAC ¶ 3, n. 2.)

1          Indigent Defense Contract

2          According to the SAC, the County entered into Merced County Contract No. 2003093 (the

3   "Merced Indigent Defense Contract") with the law firm of Morse, Pfeiff & Garcia, later MDA, in

4   2003 for a five-year term starting in fiscal year 2003/2004 and ending with fiscal year 2007/2008.

5   The purpose of the contract was to provide legal defense to indigent civil commitment

6   respondents in cases where the Merced Public Defender declared a conflict.  The Morse, Pfeiff &

7   Garcia law firm acted as both administrator of the contract and a provider of legal services.  (SAC

8   at ¶ 42, 120.)  Prior to January 2004, the firm of Morse, Pfeiff & Garcia dissolved.  Marc Garcia

9   opened his own law office in Merced, known as the Garcia Law Firm and Defendant Thomas

10  Pfeiff became partner in the Law Offices of Morse & Pfeiff.  Concurrently, the Garcia Law Firm

11  and the Law Offices of Morse & Pfeiff entered into a Joint Venture Agreement, signed by

12  Defendants Pfeiff and Cindy Morse and their former partner, Marc Garcia.  The joint venture

13  came to be known as MDA.  (SAC at ¶¶ 42, 112.b.)

14          In July 2007, a two-year extension to the contract was approved by the County, for fiscal

15  year 2008/2009 through fiscal year 2009/2010.  (SAC at ¶ 112.j.)  In early October 2007, attorney

16  Marc Garcia's judicial appointment was announced. On November 20, 2007, an agreement

17  dissolving the joint venture was signed by attorney Garcia on behalf of the Garcia Law Firm and

18  by Defendant Pfeiff on behalf of Morse & Pfeiff.  (*Id.* at ¶ 112.k.) The joint venture agreement

19  purported to dissolve the joint venture, but a separate one-page agreement specifying the financial

20  terms was also executed by attorney Garcia and Defendant Pfeiff, which provided that MDA

21  would pay Garcia $250,000 in monthly payments of $4,516 starting in January 2008, and that the

22  payments would cease if Merced County terminated or did not renew the indigent defense

23  services contract.  (*Id.* at ¶ 112.l.)  In January 2008, after taking the bench, Judge Garcia began

24  receiving monthly payments that continued through August 2012.  (*Id.* at ¶ 112.n.)  Judge Garcia

25  presided as the judicial officer at thirty-four status conferences involving Plaintiff's case, and on

26  at least twenty-two occasions continued the case for another status conference with no good cause

27  requested or shown.  (*Id.* at ¶ 98.)

28          In October 2009, a three-year extension to the MDA contract was approved, from fiscal

year 2010/2011 through fiscal year 2012/2013.  In July 2011, a two-year extension was approved for fiscal years 2013/2014 and 2014/2015.  (*Id.* at ¶ 112.q.)

In 2015, the Commission on Judicial Performance initiated formal proceedings against Judge Garcia for violating the Judicial Code of Ethics for accepting payments from the Alternate Public Defender and not disclosing them.  Judge Garcia resigned on May 15, 2015.  (*Id.* at ¶¶ 106, 112.t.)  Despite the Decision and Order of the State of California Commission on Judicial Performance filed on May 18, 2015, Merced County amended and continued to renew its contract with MDA on June 2, 2015, and again on June 28, 2016.  (*Id.* at ¶ 113.)

In 2017, Merced County did not renew MDA's contract and offered the Alternate Defense contract to Ciummo and Associates, beginning on August 1, 2017.  (*Id.* at ¶¶ 107, 113.)

Procedural Background

Plaintiff initiated this civil rights action under 42 U.S.C. § 1983 for violation of his due process rights under the Fourteenth Amendment on February 4, 2022.  (Doc. 1.)  Plaintiff filed a first amended complaint ("FAC") on April 28, 2022, against Defendants County, Pfeiff, Morse, Kathleen Crookham, Deidre F. Kelsey, John Pedrozo, and Hubert Walsh Jr.  (Doc. 19.)

On March 22, 2023, the Court partially granted a motion to dismiss the FAC brought by the County, Kathleen Crookham, Deidre F. Kelsey, John Pedrozo, and Hubert Walsh Jr., and granted Plaintiff leave to amend.  (Doc. 57.)  Plaintiff filed the SAC on April 21, 2023.  (Doc. 58.)

On January 11, 2024, the Court denied a motion to dismiss the SAC brought by the County, Kathleen Crookham, Deidre F. Kelsey, John Pedrozo, and Hubert Walsh, Jr.  (Doc. 77.) The Court also partially granted a motion to dismiss the SAC brought by Morse and Pfeiff, dismissing, without leave to amend, allegations relating to the performance of a lawyer's traditional functions against them.  (Doc. 78.)

On July 21, 2025, the parties stipulated to dismiss defendants Kathleen Crookham, Deidre F. Kelsey, John Pedrozo, and Hubert Walsh, Jr.  (Doc. 114.)  This action therefore proceeds only on Plaintiff's claim for deliberate indifference to his due process rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against defendants Morse, Pfeiff, and the County and

his claim for municipal liability against the County.  (Doc. 58.)

Defendants Morse and Pfeiff now seek summary judgment, arguing that Plaintiff's claims against them do not culminate in liability pursuant to a § 1983 claim for deliberate indifference to constitutional violations.  Specifically, Defendants contend that (1) Plaintiff's claims against them are barred by the doctrine of qualified immunity, (2) Plaintiff cannot present facts to show that they each consciously disregarded and deprived Plaintiff of a known constitutional right or had any personal involvement in any such deprivation, and (3) under the doctrine of collateral estoppel, Plaintiff is barred from asserting claims that his constitutional rights were violated as he previously asserted such claims during his underlying SVP proceedings by way of a motion to dismiss that was substantively denied by the Merced County Superior Court.  (Doc. 115 at 2, 10-11.)

## II.    PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY

On August 28, 2025, Plaintiff file a motion for leave to file a surreply to reportedly new facts and argument in Defendants' reply in support of their motion for summary judgment.  (Doc. 137.)  Plaintiff asserts that Defendants introduced new facts and arguments in their reply brief regarding Plaintiff's counsel's failure to timely submit Plaintiff's response to Defendants' motion for summary judgment.  (*Id.* at 3.)  Per Plaintiff, Defendants argue that the Court should disregard Plaintiff's response to the summary judgment motion in its entirety.  (*Id.*)

The Court finds a surreply unnecessary to address the purportedly new facts and argument regarding Plaintiff's untimely opposition to the motion for summary judgment.  The timing of Plaintiff's opposition is neither dispositive nor material to the Court's resolution of the motion for summary judgment.  Accordingly, Plaintiff's motion for leave to file surreply is DENIED.

## III.    REQUEST FOR JUDICIAL NOTICE

Relevant here, Defendants request the Court take judicial notice of court documents, orders, motions, transcripts, and briefings in the Merced County Superior Court, Case No. 150049.  (Doc. 118-6, Ex. U, Request for Judicial Notice.)  A court make take judicial notice of court filings and other matters of public record.  *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).  All

1    documents at issue are court filings and records from Merced County Superior Court.

2    Accordingly, Defendants' request for judicial notice as to Exhibits D, E, F, G, H, I J, and K is

3    GRANTED.  The Court will take judicial notice of the existence and content of the included

4    records.

5        Similarly, Plaintiff requests the Court take judicial notice of California State Court records

6    from the County of Merced, Exhibits 1, 8, 9, 10, 11, 13, 16, 18 and 19. (Doc. 130-4, Ex. 24,

7    Request for Judicial Notice in Support of Plaintiff's Oppositions to Defendants' Motions for

8    Summary Judgment.)  To the extent these exhibits are state court records from the proceedings in

9    *People v. Jacob Joseph Payne*, Merced County Superior Court Case No. 150049, including

10   filings, minutes, and orders, Plaintiff's request for judicial notice is GRANTED.

11       Plaintiff also requests the Court take judicial notice of (1) government documents from the

12   County of Merced; and (2) and the complaint filed in the matter of *Mayfield v. County of Merced*,

13   *et al.*, 1:13-cv-01619-DAD-BAM.  (Doc. 130-4.)  Plaintiff's request for judicial notice as to these

14   records is DENIED.  The Court did not rely on these records as material or relevant in reaching

15   its determination.

16       **IV.    EVIDENTIARY OBJECTIONS**

17       Defendants have file objections to certain of Plaintiff's evidence.  (Doc. 132-2.)  It is not

18   this Court's practice to rule on evidentiary matters individually in the context of summary

19   judgment, unless otherwise noted.  *See Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d

20   1198, 1200 n. 1 (C.D. Cal. 2010) (noting that it is often unnecessary and impractical for a court to

21   methodically scrutinize and give a full analysis of each evidentiary objection on a motion for

22   summary judgment); *Burch v. Regents of the Univ. of Cal*., 433 F. Supp. 2d 1110, 1118–22 (E.D.

23   Cal. 2006).  "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or

24   argumentative, or that it constitutes an improper legal conclusion are all duplicative of the

25   summary judgment standard itself" and "[the court] cannot rely on irrelevant facts, and thus

26   relevance objections are redundant." *Burch* 433 F. Supp. 2d at 1119.  Unless otherwise noted, the

27   Court overrules relevance and materiality objections at this stage, without prejudice.

28   ///

1      **V.     MOTION FOR SUMMARY JUDGMENT**

2      **A.  Undisputed Material Facts**

3      The facts set forth below are uncontroverted.[3]  As necessary, the Court discusses further

4 factual details in its analysis.  The parties' legal conclusions, arguments, and assertions are not

5 considered facts.

6      On July 13, 2018, the Superior Court issued a ruling on Plaintiff's second probable cause

7 hearing and found probable cause.  (Doc. 115-3, Joint Statement of Stipulated Facts ("JSUF")

8 23.)

9      On October 23, 2018, Plaintiff filed a Request for a Marsden Motion and Request for

10 Counsel to file a Vasquez/Litmon motion.  (JSUF 24.)  Prior to the filing of his Marsden Motion,

11 Plaintiff never brought to the Court's attention any issues with William Davis' representation of

12 him.  (JSUF 25.)

13      On December 4, 2019, Plaintiff filed a Motion to Dismiss for violation of right to due

14 process under the Fourteenth Amendment for the delays in bringing his matter to a speedy

15 probable cause hearing and trial. (Doc. 115-2, Statement of Undisputed Facts in Support of the

16 Morse and Pfeiff Defendants' Motion for Summary Judgment ("DSUF") 48; Exs. F and G.)

17      On January 9, 2020, the Superior Court ruled in part on Plaintiff's Motion to Dismiss and

18 found no due process violation under the Fourteenth Amendment for failure to bring Plaintiff's

19 case to trial.  (JSUF 26.)

20      On January 16, 2020, the Superior Court ruled on Plaintiff's motion to dismiss the SVP

21 petition, after supplemental briefing, and denied the motion.  (JSUF 27.)

22      Plaintiff did not appeal the rulings on his Motion to Dismiss filed in Merced County

23 Superior Court.  (JSUF 31.)

24 ///

---

25 [3] In determining which facts are undisputed, the Court relies on the parties' Joint Statement of
26 Stipulated Facts Relating to the Morse and Pfeiff Defendants' Motion for Summary Judgment, or
in the Alternative, Partial Summary Judgment (Doc. 115-3), the Statement of Undisputed Facts in
27 Support of the Morse and Pfeiff Defendant's Motion for Summary Judgment, or in the
Alternative Partial Summary Judgment, (Doc. 115-2), and Plaintiff's Response and Objections to
28 Morse & Pfeiff Defendant's Statement of Undisputed Facts, (Doc. 130-5.)

1                     **B. Legal Standards for Summary Judgment**

2          Summary judgment is appropriate when "there is no genuine dispute as to any material

3  fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is

4  "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

5  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome

6  of the suit under the governing law." *Id.*

7          The party seeking summary judgment "always bears the initial responsibility of informing

8  the district court of the basis for its motion, and identifying those portions of the pleadings,

9  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

10  which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

11  *Catrett*, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies

12  depending on whether the issue on which summary judgment is sought is one in which the

13  movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty*

14  *Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at

15  trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for

16  the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will

17  have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an

18  absence of evidence to support the nonmoving party's case." *Id.*

19          If the movant satisfies its initial burden, the nonmoving party must go beyond the

20  allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative

21  evidence from which a jury could find in [its] favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th

22  Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice.

23  *Id.* at 929; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)

24  ("When the moving party has carried its burden under Rule 56[ ], its opponent must do more than

25  simply show that there is some metaphysical doubt as to the material facts.") (citation omitted).

26  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-

27  moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First*

28  *Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

1    In resolving a summary judgment motion, "the court does not make credibility

2    determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he

3    evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn

4    in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the

5    nonmoving party must produce a factual predicate from which the inference may reasonably be

6    drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),

7    aff'd, 810 F.2d 898 (9th Cir. 1987). "Conclusory, speculative testimony in affidavits and moving

8    papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*,

9    509 F.3d at 984.

10    In reaching its decision on the motion for summary judgment, the Court carefully

11    reviewed and considered all arguments, points and authorities, declarations, exhibits, statements

12    of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties.

13    Omission of reference to an argument, document, paper, or objection is not to be construed to the

14    effect that this Court did not consider the argument, document, paper, or objection. This Court

15    thoroughly reviewed and considered the evidence it deemed admissible, material, and

16    appropriate.

### C.  Discussion and Analysis

#### 1.  Collateral Estoppel

19    Defendants argue that the doctrine of collateral estoppel bars Plaintiff from re-litigating

20    the question of whether his due process rights were violated.  (Doc. 115-1 at 32.)

21    "Collateral estoppel precludes relitigation of issues argued and decided in prior

22    proceedings." *Lucido v. Super. Ct. of Mendocino Cnty.*, 51 Cal. 3d 335, 341 (1990).  State court

23    judgments may preclude the relitigation of an identical issue that arises in a subsequent federal

24    civil rights action. *Allen v. McCurry*, 449 U.S. 90, 103–04 (1980). "State law . . . governs the

25    application of collateral estoppel to a state court judgment in a federal civil rights action.  *Mills v.*

26    *City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019); *Presley v. Morrison*, 950 F. Supp. 1298,

27    1305 (E.D. Pa. 1996) ("Federal courts should apply the state's collateral estoppel law in

28    determining whether a § 1983 claim is precluded by a prior state judicial proceeding.").

1    Under California law, issue preclusion applies when "(1) the issue sought to be relitigated

2    [is] identical to the issue decided in the earlier action; (2) the issue [was] actually litigated and (3)

3    necessarily decided in the earlier action; (4) the earlier decision [was] final and made on the

4    merits; and (5) the party against whom issue preclusion is asserted [was] a party to the earlier

5    action or in privity with such a party."  *Wige v. city of Los Angeles*, 713 F.3d 1183, 1185 (9th Cir.

6    2013) (citing *Lucido*, 51 Cal. 3d at 341); *see also Rodriguez v. City of Bakersfield*, No. 1:23-CV-

7    01286-KES-CDB, 2025 WL 1433817, at *9 (E.D. Cal. May 19, 2025).

8    Defendants assert that on December 4, 2019, after the County awarded Ciummo &

9    Associates with the contract, Plaintiff filed a Motion to Dismiss in Merced County, alleging his

10   rights to due process under the Fourteenth Amendment were violated due to the excessive and

11   unjustifiable delays in bringing his matter to a speedy probable cause hearing and trial.  (Doc.

12   115-1 at 32.)  Defendants indicate that in his motion, Plaintiff also argued that his "right to a

13   speedy trial" was hindered.  (*Id.* at 32-33.)  On January 9, 2020, the Superior Court denied

14   Plaintiff's Motion to Dismiss and found his due process rights had not been violated.  On January

15   16, 2020, the Court also ruled on Plaintiff's motion to dismiss related to the second probable

16   cause hearing and denied the motion.  (*Id.*)  After Plaintiff lost his motion to dismiss, he did

17   nothing in response.  He did not file an appeal.  Defendants argue that as shown in the Motion to

18   Dismiss, "Plaintiff had a full and fair opportunity to litigate his claims in the SVP Proceedings,

19   and took advantage of that opportunity by filing his Motion to Dismiss, which was thereafter

20   decided by the [Superior] Court by way of a denial, and which Plaintiff chose not to appeal.  As

21   such, Plaintiff is barred from bringing the same claims in this action."  (*Id.* at 33.)

22   In opposition, Plaintiff "incorporates . . . his argument in response to the County of

23   Merced's Motion for Summary Judgment on the issue of collateral estoppel."  (Doc. 131-2 at 26.)

24   Defendants reply that Plaintiff inappropriately refers to his opposition to the County's

25   motion.  (Doc. 132 at 11.)  Regardless, Defendants respond to Plaintiff's argument that triable

26   issues of fact exist relating to whether the Superior Court ruled on the same issue as claimed in

27   the present action -- whether the prior motion to dismiss was fully litigated, and whether the

28   proceedings were "fair."  (*Id.*)  Defendants assert that "[a] simple reading of Plaintiff's Motion to

11

1    Dismiss shows that the same facts and issues of law were involved relating to allegations that his

2    due process rights were violated due to the excessive and unjustifiable delays in having his case

3    heard." (*Id.*)  Defendants further assert that the Superior Court "unequivocally found that

4    Plaintiff's due process rights had not been violated and Plaintiff did not file an appeal." (*Id.*)

5    Defendants therefore conclude that Plaintiff is barred from bringing the same claims in this

6    action. (*Id.*)

7         As the Court has explained in detail in its order on the County's motion for summary

8    judgment, which was issued concurrently with this order, Plaintiff is barred by the doctrine of

9    collateral estoppel from re-litigating the issue of whether his due process rights under the

10   Fourteenth Amendment were violated due to the delay in bringing his SVP case to trial.  Given

11   Plaintiff's failure to include separate arguments in response to Defendants' motion, and in the

12   interest of judicial economy, the Court incorporates by reference its analysis and findings in

13   ruling on the County's motion for summary judgment, as listed below.  The Court nonetheless

14   will briefly review the elements of collateral estoppel and the parties' arguments.

15        <u>Identical Issue</u>

16        To meet the first requirement for collateral estoppel, the issue sought to be precluded must

17   be identical to an issue decided in a prior proceeding. *See Lucido*, 51 Cal. 3d at 341.  "The

18   'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the

19   two proceedings, not whether the ultimate issues or dispositions are the same." *Id.*; *see also*

20   *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 511-12 (2009) ("For purposes of collateral

21   estoppel, an issue was actually litigated in a prior proceeding if it was properly raised, submitted

22   for determination, and determined in that proceeding.").

23        There is no genuine dispute that the issue sought to be litigated here—whether Plaintiff's

24   due process right to a speedy trial under the Fourteenth Amendment was violated—is identical to

25   one of the issues decided in the state court proceeding,[4] and the underlying factual allegations are

26

27   [4] Although Plaintiff's claims are for deliberate indifference and municipal liability, the allegations in the
     SAC make it clear that Plaintiff seeks to re-litigate the same issue of whether his due process rights were
     violated by the failure to bring his SVP case to trial. *See, e.g.*, SAC ¶¶ 1, 10, 13, 138, 141,142, 185 ("This
28   action is brought pursuant to 42 U.S.C. § 1983 for violation of Mr. Payne's due process rights under the

1    the same.  In his state court motion to dismiss, Plaintiff argued that his confinement at Coalinga

2    State Hospital pursuant to the SVP petition for more than twelve years constituted a violation of

3    his Fourteenth Amendment due process rights.  (Doc. 116-6, Ex. F at 5, 6.)  Specifically, Plaintiff

4    argued that the delay in ruling on the second probable cause hearing, and the delay in bringing his

5    case to trial, violated his Fourteenth Amendment due process rights.  (*Id.* at 6 (delay in second

6    probable cause hearing caused him to be committed in the absence of probable cause);11 (arguing

7    that his case "definitively" met the burden of demonstrating a speedy trial violation).)  These are

8    the same allegations Plaintiff is asserting in the instant action. (SAC ¶¶ 1, 10, 13, 138, 141,142,

9    185, 188, 201 [allegations that Plaintiff's rights were violated by the failure to bring his case to

10   trial]; SAC ¶¶ 3, 142 [two-year delay in ruling on the second probable cause hearing].)

11          In opposing the County's motion for summary judgment, Plaintiff argued that there are

12   questions of fact whether the state court motion to dismiss involved identical issues to the present

13   complaint, asserting that the motion did not involve identical issues or identical facts.  (Doc. 131-

14   1 at 7, 11.)  To that end, Plaintiff parsed the language of the motion to dismiss to contend that it

15   discussed only the delays in bringing Plaintiff's matter to a speedy probable cause hearing, not

16   trial.  (*Id.* at 11-12.)

17          As found by this Court, Plaintiff's attempt to create a dispute of fact by suggesting he

18   never litigated a speedy trial motion in the state court proceeding is both disingenuous and

19   inconsistent with his allegations in this case.  For instance, in the SAC, Plaintiff alleges: (1) "Mr.

20   Foster set the matter for a *speedy trial motion*, arguing that the eleven-year delay violated Mr.

21   Payne's right to due process," (SAC ¶ 6) (emphasis added); (2) "In December 2019, Mr. Foster

22   *filed a speedy trial motion*, alleging that the delays of the prior eleven years violated Mr. Payne's

23   right to due process," (*id.* ¶ 173) (emphasis added); (3) "When the Superior Court denied Mr.

24   Payne's *speedy trial motion* . . . (*id.* ¶ 174) (emphasis added); (4) "As a result of the court's

25   comments, Mr. Payne believed that the Superior Court's denial of his *speedy trial motion* shut the

26   door to any vindication of the harm he suffered due to the delay of his case," (*id.* ¶ 175)

27   _____

28   Fourteenth Amendment."), 188, 201 ("Plaintiff's due process rights were violated by the egregious delay
     in bringing his case to trial . . . Mr. Payne's Fourteenth Amendment due process rights were violated.").

1   (emphasis added); and (5) "Mr. Foster was originally appointed only to file the *speedy trial*

2   *motion* on Mr. Payne's behalf," (*id.* 55, n. 48) (emphasis added).

3        Further, there can be no material dispute that Plaintiff argued in his state court motion to

4   dismiss that his case definitively met the burden of demonstrating a speedy trial violation.

5   Plaintiff's motion to dismiss included an analysis under *Barker v. Wingo*, 407 U.S. 514, 529

6   (1972) for determining whether a speedy trial violation in the context of SVP proceedings

7   violated due process.  (Doc. 116-6, Ex. F at 11.)  Plaintiff argued in his state court motion to

8   dismiss that "[t]he burden of demonstrating a speedy trial violation under *Barker's* multi-factor

9   test lies with the defendant" and his case "definitively meets this burden."  (*Id.*)  There also is no

10  genuine dispute that the Superior Court "evaluated the trial delay issue," (*see* Doc. 131-1 at 14),

11  and found no due process violation under the Fourteenth Amendment for failure to bring

12  Plaintiff's case to trial.  (JSUF 26; Doc. 116-7, Reporter's Transcript, Motion to Dismiss, Ex. G at

13  13-26.)

14       In opposing the County's motion for summary judgment, Plaintiff also attempted to create

15  a dispute of fact by arguing the state court motion to dismiss nowhere alleged that Judge Garcia

16  was on MDA's payroll for years while he presided over Plaintiff's case.  (Doc. 131-1 at 12.)  As

17  indicated by the Court, this argument is not persuasive, nor is it sufficient to create a genuine

18  dispute of material fact.  Plaintiff admitted in his briefing in opposition to the County's motion

19  that "it was public knowledge and commonly known in Merced that Judge Garcia had been

20  removed as a result of his secret payments from MDA," (*id.*), which belies any suggestion that the

21  state court was unaware of these purported facts when evaluating Plaintiff's speedy trial motion.

22       In opposing the County's motion for summary judgment, Plaintiff also attempted to create

23  a dispute by arguing that there were "no facts alleged that Merced Superior Court had allowed

24  extended unexplained delays [in] every SVP case on its docket and thus did not fulfill its role as

25  captain of the ship."  (Doc. 131-1 at 12.)  The Court also found that this argument is not

26  persuasive.  Plaintiff admits that "it is reasonable to infer that the judge determining the earlier

27  motion to dismiss was aware that other SVP cases in Merced had similarly been allowed to

28  languish for years with little or no progress."  (Doc. 131-1 at 13.)  Further, Plaintiff's state court

14

1    motion to dismiss included allegations concerning delays occasioned by the Superior Court and

2    systemic delays resulting from the public defender system.  (Doc. 116-6, Ex. F at 12-14, 15.)

3    Critically, the Superior Court found no due process due violation under the Fourteenth

4    Amendment for the failure to bring Plaintiff's case to trial based on a determination that the delay

5    was primarily attributable to Plaintiff's defense strategy, and not other systemic delays.  The

6    Superior Court judge explained:

> On balance, I find that while the length of the delay is presumptively prejudicial
> and triggers the *Barker* inquiry, the remaining three factors -- the lack of any
> assertion of a speedy trial by Payne; the lack of prejudice other than the time at
> the state hospital to which Payne consented; and the reason for the delay which is
> primarily attributable to Payne's defense strategy -- weigh in favor of the State
> and against Payne. The motion to dismiss is denied. The Court finds no due
> process violation under the Fourteenth Amendment of the Constitution for the
> failure to bring Payne's trial.

12    (Doc. 116-7, Ex. G at 25.)

13        <u>Actually Litigated</u>

14        Second, the issue must have been actually litigated in the previous hearing.  *Lucido*, 51

15    Cal. 3d at 341.  The Ninth Circuit has found that "an issue is actually litigated when an issue is

16    raised, contested, and submitted for determination." *Janjua v. Neufeld*, 933 F.3d 1061, 1066 (9th

17    Cir. 2019); *see also Wilson v. City of Fresno*, 763 F. Supp. 3d 1073, 1098 (E.D. Cal. 2025).

18        In his opposition to the County's motion for summary judgment, Plaintiff claimed that

19    there was "no full litigation of any speedy trial motion, because there was no speedy trial

20    motion." (Doc. 131-1 at 13.)  As discussed, this argument is not persuasive.  The issue of

21    whether Plaintiff was denied a speedy trial was actually litigated, as Plaintiff sought to dismiss

22    the SVP petition because of an alleged speedy trial violation (Doc. 116-6, Ex. F at 4-5, 11), the

23    People of the State of California contested the dismissal motion (*see* Doc. 116-7, Ex. G at 6-7, 9-

24    10), and the Superior Court reached a determination on the speedy trial issue, which was stated on

25    the record, (*id.* at 13-25).

26        Plaintiff additionally argued in his opposition to the County's motion that the issue was

27    not "fully litigated" because Plaintiff was not present at the hearing on the motion to dismiss and

28    the record submitted was limited.  (Doc. 131-1 at 14.)  However, the parties fully litigated the

issue in the Superior Court, to include a hearing on the motion to dismiss.  Plaintiff had an

opportunity to fully brief and provide both written and oral argument in support of that motion.

*See Pellerin v. Nevada County*, 635 F. App'x 345 (9th Cir. 2015) (concluding state court decision

denying motion to dismiss criminal prosecution was final decision on the merits and that

collateral estoppel precluded arrestee's § 1983 claims in federal court).  Further, Plaintiff waived

his personal appearance at the hearing.  (Doc. 116-7, Ex. G at 3 ["He is affirmatively waiving his

presence today."].)

Plaintiff also claimed that the "resulting record is devoid of details as to how the court

actually reached its holding."  (Doc. 131-1 at 15.)  As found by this Court in the County's motion

for summary judgment, this claim is unsupported.  The Superior Court rendered an extensive

ruling on the record, which detailed the procedural history of the case, included an evaluation of

the *Barker* due process factors, and explained its finding of no due process violation under the

Fourteenth Amendment of the Constitution for the failure to bring Plaintiff to trial.  (Doc. 116-7,

Ex. G at 13-26.)

Plaintiff additionally argued that there is "a question of material fact as to whether the

forum that determined the first proceeding was fair."  (Doc. 131-1 at 12-13.)  Plaintiff suggests

that a reasonable jury could find that the underlying proceeding was not fair because the judge

who denied the motion to dismiss appeared three times as the Deputy District Attorney in

Plaintiff's case and was aware that Judge Garcia "had appeared on Plaintiff's case more than 30

times, had been removed from the bench, and had been receiving secret payments from MDA

while presiding over MDA's cases."  (*Id.*)  Plaintiff also asserts that there is a question of fact

whether the judge could fairly determine whether his colleagues could be relied on to monitor

MDA or whether the judge could fairly evaluate his colleagues' failure to rule on the second

probable cause hearing for two years.  (*Id.*)

As the Court explained, it does not find Plaintiff's argument persuasive or raise an issue of

fact.  Plaintiff presents no evidence of unfairness or bias, the Court declines to question the

impartiality of the Superior Court judge, and a jury would not be called upon to evaluate a judge's

statement of impartiality in this § 1983 action alleging deliberate indifference to constitutional

rights and municipal liability.  Moreover, at the outset of the motion to dismiss hearing, the

Superior Court judge stated on the record that he was not biased, explaining as follows:

> I wanted to disclose that three Minute Orders reflect that I appeared as a Deputy
> District Attorney on behalf of other attorneys, including Mr. Colby, and those
> dates were January 11, 2011, February 8, 2011, and April 17, 2015. [¶] I'm
> disclosing these appearances but do not find that self-recusal is appropriate.  I am
> not biased for or against any party or attorney involved in this case.  I was never
> assigned to prosecute this SVP petition nor do I recall any conversation with any
> Deputy District Attorney regarding the substance of this case.

(Doc. 116-7, Ex. G at 4.)  Plaintiff's counsel did not object.  (*Id.* at 5.)

   As a final matter, Plaintiff complained that there was no appearance of fairness, because

"Defendant Morse, who personally received an equal share of the profit from the MDA contract,

was married to District Attorney Morse."  (Doc. 131-1 at 13.)  However, this is not evidence that

Plaintiff's state court proceeding was unfair.

   Necessarily Decided

   Third, the issue must have been "necessarily decided" in the previous hearing. *Lucido*¸ 51

Cal. 3d at 341.  To be "necessarily decided," the issue must "not have been 'entirely unnecessary'

to the judgment in the initial proceeding." *Wilson*, 763 F. Supp. 3d at 1098 (quoting *Lucido*, 51

Cal. 3d at 342).

   The issue of whether Plaintiff was denied the right to a speedy trial was necessarily

decided because it was one of the primary bases for Plaintiff's motion to dismiss the SVP

petition.  (Doc. 116-6, Ex. F at 11.)

   Final Decision on the Merits

   Fourth, "the previous proceeding [must] have been final and decided on the merits."

*Wilson*, 763 F. Supp. 3d at 1098.  A 'final judgment' for purposes of collateral estoppel can be

any prior adjudication of an issue in another action that is determined to be 'sufficiently firm' to

be accorded conclusive effect." *Luben Industries, Inc. v. United States*, 707 F.2d 1037, 1040 (9th

Cir. 1983) (citing *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th

Cir.1979)). In assessing finality for collateral estoppel purposes, courts consider whether the

decision was avowedly tentative, whether the parties were fully heard, whether the court

supported its decision with a reasoned opinion, and whether the decision was subject to appeal or

1  was appealed.  *Id.*; *see also Pellerin*, 635 F. App'x 345, at 347 (granting preclusive effect of a

2  ruling on a motion to dismiss).

3       Here, the Superior Court denied the motion to dismiss on the record in a reasoned opinion

4  (albeit in an oral ruling).  The parties were fully heard at a hearing on the motion, and Plaintiff

5  presented his arguments in briefing and oral argument.  The SVP action concluded after a jury

6  found him not to be an SVP and Plaintiff was released from detention.  (SAC ¶ 10.)

7       In his opposition to the County's motion for summary judgment, Plaintiff contended that

8  there is a question of fact regarding whether determination of the issues raised by the motion was

9  actually final.  (Doc. 131-1 at 15.)  However, it is undisputed that the motion to dismiss was

10 denied.  (JSUF 26, 27.)  The decision was not tentative.

11      Plaintiff also argued that the denial of the speedy trial motion was not a final decision

12 because it would have been an issue on appeal if Plaintiff lost his SVP jury trial, but because he

13 won his jury trial, there was no chance to appeal.  (Doc. 131-1 at 16.)  As Plaintiff admits, there

14 was no need for an appeal as the SVP action concluded when Plaintiff won his jury trial.  *See*

15 *Orozco v. Barger*, No. 2:23-cv-04047-FLA (JCX), 2024 WL 3384242, at *5 (C.D. Cal. July 8,

16 2024) (noting issue preclusion applies to interlocutory rulings if the prior adjudication was

17 sufficiently firm to be given a conclusive effect and determining SVP action concluded when

18 superior court judge rendered final verdict and ordered plaintiff discharged).  Even if Plaintiff

19 could not appeal the denial of his dismissal motion, the Superior Court's order was sufficiently

20 firm and on the merits so as to be accorded conclusive effect.  *See Pellerin*, 635 F. App'x 345, at

21 348 (concluding that while plaintiff did not have right to appeal denial of motion to dismiss,

22 Superior Court's order was sufficiently firm and on the merits to be accorded conclusive effect

23 with respect to § 1983 claims).

24      Party Against Whom Issue Preclusion is Asserted

25      Fifth, the party against whom preclusion is sought must be the same as, or in privity with,

26 the party to the former proceeding.  *Lucido,* 51 Cal. 3d at 341.

27      In his opposition to the County's motion, Plaintiff argued this requirement is not met

28 because "[i]t goes without saying that the parties in both proceedings were not identical."  (Doc.

131-1 at 7).  However, only the party *against* whom issue preclusion is asserted need be a party in the earlier action or in privity with such party.  *Wige*, 713 F.3d at 1185 ("[T]he party against whom issue preclusion is asserted must have been a party to the earlier action or in privity with such a party.").  There can be no possible dispute that the requirement is met in this case as the party against whom the County (and Morse and Pfeiff) asserts issue preclusion—Plaintiff—was a party in the earlier SVPA action.

        Integrity of Judicial System and Promotion of Judicial Economy

        As a final matter, the granting of preclusion must be consistent with preserving the integrity of the judicial system and the promotion of judicial economy.  *Wilson*, 763 F. Supp. 3d at 1098 (citing *Lucido*, 51 Cal. 3d at 343).

        Here, public policy favors application of the doctrine, as it would preserve the integrity of the judicial system and scarce judicial resources by preventing Plaintiff from pursuing a repetitive challenge regarding his due process right to a speedy trial.  Revisiting the issue would undermine the goals of comity and judicial economy.  *See Miroth v. County of Trinity*, No. 2:22-cv-00460-KJM-JDP, 2025 WL 2912274, at *6 (E.D. Cal. Oct. 14, 2025).

        In opposing the County's motion for summary, Plaintiff claimed that if the County is able to use the doctrine of collateral estoppel then it would "undermine the court's public policy of preserving judicial integrity" because the attorneys providing conflict indigent representation "flagrantly" violated California's ethical rules of practice, and the County was "unconcerned with how MDA handled the indigent Defense Contract, and Pfeiff's secret deal that resulted in Judge Garcia's removal from the bench."  (Doc. 131-1 at 16-17.)  As the Court determined, Plaintiff presents no evidence that the attorneys flagrantly violated California's ethical rules of practice or that Judge Garcia did anything to delay Plaintiff's case based on dissolution payments from MDA.

                    2.  Qualified Immunity and § 1983 Liability

        Defendants additionally argue that Plaintiff's claims against them do not culminate in liability pursuant to a § 1983 claim for deliberate indifference to constitutional violations, Plaintiff's claims against them are barred by the doctrine of qualified immunity, and Plaintiff

1   cannot present facts to show that they each consciously disregarded and deprived Plaintiff of a

2   known constitutional right or had any personal involvement in any such deprivation.  Given the

3   Court's determination regarding collateral estoppel, it is unnecessary to reach these arguments.

4   **VI.    CONCLUSION AND ORDER**

5       For the reasons stated, it is HEREBY ORDERED as follows:

6   1.  Plaintiff Jacob Payne's Motion for Leave to File Surreply in Response to Defendants

7       Morse and Pfeiff's Reply in Support of Motion for Summary Judgment, (Doc. 137), is

8       DENIED.

9   2.  The Morse and Pfeiff Defendants' Motion for Summary Judgment, (Doc. 115), is

10      GRANTED.

11  3.  The Clerk of the Court is directed to enter judgment in favor of Defendants Cindy

12      Morse and Thomas Pfeiff and against Plaintiff Jacob Payne, and to close this case.

13
14  IT IS SO ORDERED.

15      Dated:   **January 15, 2026**             /s/ *Barbara A. McAuliffe*

16                                      UNITED STATES MAGISTRATE JUDGE

17
18
19
20
21
22
23
24
25
26
27
28

20